# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### MOBILE DIVISION

|  |  |
|---|---|
| SHAWN COREY CARTER,<br><br>     Plaintiff,<br><br>         v.<br><br>ANTHONY BUZBEE, DAVID<br>FORTNEY, ANTHONY G. BUZBEE LP<br>(d/b/a THE BUZBEE LAW FIRM) and<br>JANE DOE,<br><br>     Defendants. | Case No. |

---

## PLAINTIFF SHAWN COREY CARTER'S
## COMPLAINT AND DEMAND FOR JURY TRIAL

---

**William G. Somerville**
**W. Patton Hahn**
**Jade E. Sipes**
**Baker, Donelson, Bearman, Caldwell & Berkowitz, PC**
**1901 Sixth Avenue North, Ste. 2600**
**Birmingham, Alabama 35226**
**wsomerville@bakerdonelson.com**
**phahn@bakerdonelson.com**
**jsipes@bakerdonelson.com**

*Attorneys For Plaintiff Shawn Carter*

**Introduction**

1.  A. False;

    B. Malicious;

    C. Strategically and tactically calculated and timed to inflict maximum pain and suffering on Mr. Carter; and

    D. In conspiracy with multiple attorneys, including defendants Anthony Buzbee and David Fortney, who – like her – were soullessly motivated by greed, in abject disregard of the truth and the most fundamental precepts of human decency.

2.  These are the only truthful and fair descriptions of Jane Doe's and her lawyers' malevolent efforts to assassinate the impeccable and lifetime-earned character of Shawn Corey Carter, who is professionally known as Jay-Z, but more importantly is known as Dad, and husband, and son – and a human being who did nothing to deserve or elicit the wanton, depraved attack that Jane Doe, in conspiracy with her lawyers, launched to extort Mr. Carter beginning on November 5, 2024, through a menacing "private" "demand letter."

3.  Doe and her lawyers, Anthony Buzbee, David Fortney and Anthony G. Buzbee LP (d/b/a The Buzbee Law Firm) (collectively, "Defendants"), then brought before the world an in-court complaint, the impossibility – and indeed absurdity – of which was surpassed only by its vile malevolence, in a desperate attempt to leverage Mr. Carter into an extortionate payoff which these malicious actors presented as the only path for Mr. Carter to prevent the public prosecution of a lawsuit by Doe.

4.  When their initial extortionate demand letter failed to yield the financial windfall they sought, and **_after_** Doe told Buzbee (with whom she had never spoken before the demand letter was drafted and sent) that Mr. Carter "did not sexually assault [her]," Buzbee "pushed [her]

towards going forward with the false story against Mr. Carter . . . to make the case better and get

them [the lawyer's and her] more money . . . ."  Specifically:  "Buzbee brought Jay-Z into it."

5.    Buzbee then went forward with naming Mr. Carter, with full knowledge by him, as

imparted to him by Doe, that Mr. Carter had never assaulted Doe, and Doe's entire story as it

related to Mr. Carter was completely fabricated.

6.    Doe has now voluntarily admitted directly to representatives of Mr. Carter that the

story brought before the world in court and on global television was just that: a false, malicious

story.  She has admitted that Mr. Carter did not assault her; and that indeed it was Buzbee himself

– whom she met for the first time at a coffee shop in Houston on the day of her maliciously false

NBC News interview (which is discussed in detail below) – who pushed her to go forward with

the false narrative of the assault by Mr. Carter in order to leverage a maximum payday.

7.    To compound this egregious harm, just last Friday Buzbee's and Fortney's co-

counsel – a prominent New York attorney in the now dismissed false action against Mr. Carter –

threatened Mr. Carter's counsel to double-down with yet another false public statement by Doe if

Mr. Carter publicly revealed her admissions, and Buzbee's and Fortney's misdeeds, in Mr. Carter's

pending California lawsuit against Buzbee.

8.    Fortunately, and clearly unexpectedly from their perspective, Doe, Buzbee and

Fortney were met with nothing but righteous resolve at every turn by Mr. Carter.  He stood

steadfast; publicly decried the lies being put forth against him; and beat the evil conspiracy among

malicious Doe and her malevolent, soulless lawyers, driving them back into the shadows from

which they came, resulting in the voluntary dismissal with prejudice, without settlement, of their

false and malicious complaint on February 14, 2025.

9.      Mr. Carter does not commence this action lightly.    Following Jane Doe's admissions that she fabricated her claims against Mr. Carter, her lawyers have continued to seek to hide this reality,  including through further extortionate threats and demands by Buzbee, Fortney and their New York co-counsel on February 28.  Even after all this, Mr. Carter does not expose his malicious and wrongful accuser's identity in this complaint, seeking to maintain her anonymity as "Doe."  But the extortion and abuse of Mr. Carter by Doe and her lawyers must stop.

10.      Therefore, Mr. Carter brings this lawsuit to hold Doe accountable for her willful defamation *per se* and her malicious prosecution of knowingly false allegations against Mr. Carter that Doe and her co-conspirator attorneys have falsely and maliciously peddled.

## PARTIES

11.      Plaintiff Shawn Corey Carter (p/k/a Jay-Z) is a citizen of the State of California residing in the State of California.

12.      Defendant Anthony Buzbee is an attorney and resident of the State of Texas. He is a principal of Defendant Anthony G. Buzbee L.P. (d/b/a The Buzbee Law Firm) (the "Buzbee Law Firm"). Defendant David Fortney is an attorney, is affiliated with The Buzbee Law Firm, and is a resident of the State of Texas.

13.      Defendant The Buzbee Law Firm is a law firm that is organized under the laws of the State of Texas and that operates its principal place of business from Harris County, Texas. No members of Defendant The Buzbee Law Firm's limited partnership reside in the State of California. Buzbee's and Fortney's conduct described in this Complaint were taken on behalf of themselves and on behalf of Defendant The Buzbee Law Firm.

14.      Defendant Jane Doe is a citizen of the State of Alabama residing in this District. Doe sued Mr. Carter in the United States District Court for the Southern District of New York

under a "Jane Doe" pseudonym.  She later further published her malicious lies on NBC News without revealing her name.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

16.    Mr. Carter is a citizen of the State of California. Buzbee, Fortney and The Buzbee Law Firm are citizens of the State of Texas, and Doe is a citizen of the State of Alabama.

17.    Venue in this district is appropriate under 28 U.S.C. § 1391 because Doe resides in this judicial district, and Buzbee and Fortney provided legal services to her, and spoke and met with her, within this District.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

I.    **After Hiring The Buzbee Law Firm, Doe Falsely Accuses Mr. Carter of Sexual Assault in Written Correspondence, Court Filings, and on Global Television**

18.    Doe appears to be suffering from personal and financial hardship. She lost custody of her children, and her parents, who, on information and belief, support Doe, recently filed for bankruptcy protection. Desperate to obtain a payday, Doe hired the Buzbee law firm—which has a long history of whipping up a media frenzy with vague and sensational claims against public figures—to extort payments from Mr. Carter under the threat of devastating harm to his reputation.

19.    As discussed below, Doe first attempted to extort Mr. Carter through an extortionate demand letter and an anonymous lawsuit, both from Buzbee. When Mr. Carter refused to capitulate to Doe's baseless demands, Doe doubled down by using the justice system to attempt to ruin Mr. Carter by formally naming Mr. Carter in a complaint making horrific, false allegations. And when that also failed, Doe resorted to defaming Mr. Carter on global television.

20.    A simple Google or other public record search of Doe by Buzbee and Fortney would have cast doubt on her credibility by revealing that, among other things:  (a) less than 90 days before sending the demand letter, she had been in court on mental health related issues in connection with her second degree assault charge, and had her bail revoked for failing a drug test; (b) she has several mental health disorders, and takes multiple medications according to testimony from her psychiatrist laid bare in public court records; and (c) she made three other sexual assault allegations which were either dropped or dismissed by courts.

### A. Doe Sues Sean Combs, Combs' Entities, and "Does 1-10" Alleging That She Was Sexually Assaulted at an Afterparty Following the 2000 MTV Video Music Awards

21.    On October 20, 2024, Doe sued Sean "Diddy" Combs and his business entities, as well as "Does 1-10."[1] Exhibit 1 (Original Complaint).

22.    Although Doe's lawsuit also implicates unnamed *Celebrity A*" and "*Celebrity B*," Doe did not formally name them as parties. *Id*., at ¶¶ 48-52. Instead, Doe only sued "Does 1-10" as defendants.

23.    In her original Complaint, Doe alleges that when she was 13 years old, a friend dropped her off at Radio City Music Hall in New York City so she could try to attend the Video Music Awards ("VMAs") on September 7, 2000. *Id*., at ¶ 34. Although she was unable to talk her way into the VMAs, a limousine driver purporting to work for Combs invited her to an "afterparty." *Id*., at ¶¶ 36-37. Later that evening, the limousine driver took her to a large white house with a gated U-shaped driveway about 20 minutes away. *Id*., at ¶¶ 39-40.

---

[1] Doe's Complaint masks her identity with a pseudonym.

24.     After accepting a drink, Doe claims that she felt woozy and lightheaded and found what she believed to be an empty room. *Id.*, at ¶¶ 45-47. Doe alleges that Combs and "Celebrity A" sexually assaulted her while "Celebrity B" watched. *Id.*, at ¶¶ 48-52.

25.     It has become evident that Doe did not initiate this legal action with a legitimate purpose. Instead, the lawsuit was filed with the intent to extort Mr. Carter.

**B. Doe Sends Mr. Carter an Extortionate Letter Falsely Accusing Him of Sexual Assault**

26.     A few weeks after filing her complaint, Doe, through Buzbee, sent Mr. Carter an extortionate letter dated November 5, 2024, containing false allegations of vile conduct by Mr. Carter.[2]

27.     Some of the allegations in Doe's letter were from the public complaint Doe filed against Combs and "Does 1-10" (which contained inconsistencies that were later changed when the complaint was amended), with the obvious implication being that she would amend her complaint to add Mr. Carter if he refused to pay.

28.     Doe threatened to "take a different course" if Mr. Carter did not commit to a "confidential mediation" to "resolve this delicate and important matter" by the deadline of November 19, 2024, giving Mr. Carter only a two-week window before she would go public with her false allegations. To avoid both public and criminal exposure, Buzbee stated that his client "want[s] something of substance" by way of a settlement.

29.     However, Doe had ***already*** sued Mr. Carter, albeit as one of the "Does 1-10." Doe's plan was thus clear. She was demanding that Mr. Carter either: (a) pay "something of substance" to stop her from making public the wildly false allegations of sexual assault that would subject Mr. Carter to opprobrium and irreparably harm his reputation, family, career, and livelihood, or (2)

---

[2] Doe did not reveal her name in the demand letter.

endure that financial and personal ruin. Doe's statements and correspondence made clear the immediate and extensive threat of exposure if Mr. Carter failed to pay.

### C. Doe Amends Her Lawsuit to Falsely Allege That Mr. Carter Sexually Assaulted Her

30.     Unwilling to capitulate to Doe and Buzbee's extortion, on November 18, 2024, Mr. Carter filed a lawsuit against Buzbee for Extortion and Intentional Infliction of Emotional Distress. Mr. Carter explained that Buzbee was "shamelessly attempting to extort exorbitant sums from him or else publicly file wildly horrific allegations against him."

31.     On December 8, 2024, humiliated by Mr. Carter's lawsuit, Buzbee encouraged Doe to file, and Buzbee and Fortney filed, a First Amended Complaint, revealing what Mr. Carter knew all along—that one of the "Does" was a placeholder for Mr. Carter if he did not pay her ransom. Exhibit 2 (FAC).

32.     In Doe's First Amended Complaint, Doe makes wild, horrific, but utterly false allegations against Mr. Carter, substituting him for "Celebrity A" from the earlier complaint.

### D. Doe Goes on Global Television Falsely Accusing Mr. Carter of Sexual Assault

33.     On December 13, 2024, NBC News broadcasted portions of an exclusive interview of Doe, which was conducted with Fortney by her side. NBC News honored Doe's request to mask her identity. NBC News published a story excerpting interviews it held with Doe. *See* Chloe Melas, et al., *Jay-Z rape accuser comes forward to NBC News, acknowledges inconsistencies in her allegations*, NBC News, https://www.nbcnews.com/news/us-news/jay-z-rape-accuser-comes-forward-nbc-newsacknowledges-inconsistencies-rcna183435 (Dec. 13, 2024, 7:27 PM) (Exhibit 3).

34.     During the interview—which was set up by Buzbee, was given on a voluntary basis, and in the presence of Fortney—Doe lied about Mr. Carter to a ***global television audience***. In

addition to attempting to explain the impossible—how she, as a 13-year-old from upstate New York, wound up in Manhattan at a private VMAs afterparty with countless celebrities—Doe told NBC News how she spoke with musicians Benji Madden and his brother at the afterparty. She recalled talking to Benji Madden "about his tattoo, … [of] 'The Last Supper,'" because she has a "religious background so it was something to talk about." Exhibit 4 (Dec. 13, 2024, NBC News Tr., at 3:20-4:2).

35.    Doe repeated her claims that, while at the afterparty, she had a drink "that made her feel woozy," after which "Combs and Mr. Carter took turns raping her" while an unidentified female celebrity watched. *Id.*, at 4:7-15.

36.    Doe told NBC that following the alleged sexual assault, she found her way to a gas station where she called her father who picked her up and drove her home. She states her father did not ask her what happened, what she did, or where she was. Instead, they rode home in silence for 5 hours and 47 minutes.

## II.    All of Doe's Allegations Against Mr. Carter Were Demonstrably False

37.    Doe's allegations about Mr. Carter are false and defamatory, and her mendacity is clear, including to the reporters at NBC News.

38.    *First*, although Doe stated that the assault occurred at a residence, Mr. Carter was at no such residence. Indeed, NBC News located photos of Mr. Carter from that evening showing him at a party at a commercial location — the now-closed Lotus nightclub in New York City. Exhibit 3 (NBC Article). Of course, a private nightclub cannot be mistaken for "a large white residence with a gated U-shaped driveway" that included "a large living room or foyer," "a hallway containing several rooms off of it," and a bedroom. Even Buzbee admitted to NBC that Doe does not claim the assault occurred at Lotus nightclub. *Id.*

39.    **Second**, Doe told NBC that she spent "20 minutes in the limo" before arriving at the residence. However, when pressed about these details in a follow-up interview with NBC, Doe admitted she did not know where she was going or even how long the drive took. *Id.* Worse, she conceded to NBC that she "guessed about the length of time the trip had taken in the lawsuit." *Id.*

40.    **Third**, as to her description of a supposed conversation with Benji Madden during her interview with NBC News, a representative for Madden confirmed to NBC News that neither he nor his brother Joel attended the 2000 VMAs and that they (and their band Good Charlotte) were on tour in the Midwest at that time. When confronted with this evidence, she conceded she "made a mistake in identifying" them and that not all the faces at the after-party were clear. *Id.*

41.    **Fourth**, regarding her long pre-dawn drive home with her father, Doe's father told NBC News that he does not recall picking up Doe, which (unsurprisingly) would have been "something that would definitely stick in my mind." He said that he learned of the alleged assault when Doe was interviewed by NBC News in December and that he did remember once picking Doe up in the middle of the night, but it "was a local drive." Based on "their address [in Rochester, New York]," Doe's father would have driven at least 5 hours and 47 minutes to pick her up.

42.    And there are countless other falsehoods in Doe's allegations. For instance, despite alleging that it took 20 minutes to get from Radio City Music Hall to the afterparty (FAC, at ¶ 44), there are no houses matching Doe's description within 20 minutes of Radio City Music Hall. And although she implies that Combs hosted the afterparty, none of Combs' properties match Doe's description of the location of the afterparty.

43.    Moreover, Doe alleges that after the VMAs began, "much of the crowd moved inside, but [Doe], without a ticket, remained outside with others and watched the VMAs on a jumbotron." FAC, at ¶ 40. But the broadcast of the VMAs conclusively shows that there was no

jumbotron. Indeed, the producer of the 2000 VMAs and the NYPD confirmed that there was no jumbotron since their permit application was denied.

44.     Even if Doe was outside the VMAs as she claims, she could not have approached celebrity limousines because they were only outside of Radio City Music Hall briefly for celebrity pick up and drop off. In any event, the celebrity limousines were separated from fans by police barricades—as publicly available video of the event clearly shows.

45.     NBC confronted Doe regarding this substantial contradictory evidence—which it had uncovered in less than a week after conducting the initial interview—in a follow-up phone interview. In response, Doe admitted she "made some mistakes." She also disavowed the allegations in her Complaint about the location of the alleged incident and admitted she was just guessing.

46.     But Doe did not drop her baseless complaint. She instead insisted on moving forward, including by offering to submit to a polygraph (which never occurred, or in any event has never seen the light of day).

### III.     Doe Waited Months Before Dismissing Her False Complaint, And Did so After Being Lied to by Her Attorneys For Their Own Benefit

47.     Mr. Carter made several court filings repeatedly detailing the falsity of Doe's claims, as revealed by her story's inconsistencies and the baselessness of various allegations.

48.     At each of these junctures, Doe was confronted with the false nature of her claim, as well as the harm it was causing Mr. Carter. At any of these points, Doe could have withdrawn her lawsuit. Nevertheless, Doe continued to pursue her claim without regard to the harm it was causing or could cause Mr. Carter.

49.     She has now admitted that Mr. Carter did not assault her.  Indeed, Buzbee, aware that Mr. Carter did not assault her, pushed her to make the false claim for money.

50.     Having already sent the false and defamatory demand letters, having filed the false and defamatory complaint, and having already set Doe up to give the false and defamatory interview to NBC News, Buzbee, Fortney and The Buzbee Law Firm were happy to perpetuate the lies and hold out hope for an unwarranted payment for them and Doe.  Indeed, Buzbee went so far as to tell TMZ on December 10, 2024 – already fully aware of the falsity of the allegations having met with Doe in Houston – that Doe was "not ruling out filing rape charges" against Mr. Carter, and that "what happens next is up to my client.  It's her case and what she decides to do you will find out in due course."  Exhibit 5 (TMZ article).  However, the legal process got in the way of their scheme.

51.     Buzbee had signed the complaints in the action against Mr. Carter without being admitted to Bar of the United States District Court for the Southern District of New York ("SDNY"), as required.

52.     When the Judge presiding over the case was advised of this fact, she issued an order, dated January 28, 2025, requiring Buzbee to "file proof of admission [to the SDNY] on the docket" by February 14, 2025. Exhibit 6  (Order).

53.     The very next day, January 29, 2025, Buzbee applied for such admission.

54.     On February 13, 2025 – one day before his deadline to file proof of admission in the SDNY – Buzbee got the news that, because he had already filed pleadings in the SDNY without being admitted to the Bar of that Court – in the case at issue here and in more than 20 others – his application for admission had been denied (the "Denial Order").  Exhibit 7 (Order).  He was also instructed to attach a copy of the Denial Order to any subsequent application for admission in a particular case in the SDNY.  *Id*.

55. Faced with his inability to comply with the Judge's order in the case against Mr. Carter, and facing the threat of punishment by the Court, Buzbee dispatched Fortney to Alabama to meet with Doe that same day, namely February 13, 2025.

56. During that meeting, Fortney falsely, maliciously and manipulatively told Doe that the case against Mr. Carter needed to be dismissed as Mr. Carter had made threats against Doe's life, and it was too dangerous to continue with the case. Of course, no such threats had ever been made.

57. Rather, Buzbee and Fortney were desperate to withdraw the false case or face punishment in court for their actions in filing a false pleading without Buzbee even being admitted in the SDNY – jeopardizing their ability to continue with the more than 20 other cases they had pending in SDNY.

58. Thus, on the evening of Friday, February 14, 2025, Doe quietly filed her voluntary dismissal with prejudice. Exhibit 8 (Notice of Voluntary Dismissal).

59. But the threats and extortion did not end with the dismissal of Doe's fraudulent lawsuit.

60. Rather, on Friday, February 28, 2025, after Doe admitted all of the foregoing, and after Buzbee became aware of those admissions, a prominent New York attorney serving as Buzbee's and Fortney's co-counsel, called an attorney for Mr. Carter. During that call, Buzbee and Fortney's New York co-counsel threatened that if Mr. Carter's attorneys filed anything in Mr. Carter's pending extortion and defamation case in California against Buzbee related to the statements made by Doe fully exculpating Mr. Carter and inculpating her and Buzbee for extortion and conspiracy, that Buzbee would issue a public statement by Doe that she (1) was being harassed by Mr. Carter's "people" since she dropped the lawsuit; and (2) dropped the lawsuit only because

she was afraid for her life and that the allegations against Mr. Carter in the dropped lawsuit were all true.[3]

61.     Of course, Doe's allegations about being harassed by Mr. Carter's "people" since she dropped the lawsuit and about her reasons for dropping the lawsuit, are, and always were, false. When Doe, Buzbee and Fortney and their New York co-counsel said them, they knew, or could readily have discovered through any reasonable inquiry, that these statements were false.

62.     Thus, the threats of extortion and further defamation continue to this day, necessitating that Mr. Carter take action to prevent unscrupulous actors from further preying on him.

### First Cause of Action
### (Malicious Prosecution Against All Defendants)

63.     On October 20, 2024, Doe, through Buzbee and Fortney, sued Combs and his business entities, as well as "Does 1-10" alleging that they committed heinous crimes. Defendants did not initiate that lawsuit with a legitimate purpose. Instead, the lawsuit was filed with the intent to extort Mr. Carter.

64.     On November 5, 2024, Doe, through her attorney Buzbee, sent Mr. Carter an extortionate letter threatening to publicly assert wild, horrific, but utterly false allegations that Mr. Carter sexually assaulted a minor after the Video Music Awards in 2000. According to Doe, if Mr. Carter wished to avoid the financial and personal devastation that such public allegations would inflict, he would need to work out a deal to silence her. But Doe had already sued Mr. Carter, albeit as one of the "Does 1-10." Defendants thus filed the lawsuit to force Mr. Carter into either: (a) paying "something of substance" to stop her from making public the wildly false allegations of

---

[3] Mr. Carter first became aware of Doe's identity on or around February 21, 2025; and has never met or interacted in any way with Doe.

sexual assault that would subject Mr. Carter to opprobrium and irreparably harm his reputation, family, career, and livelihood, or (2) endure that financial and personal ruin.

65.    After Mr. Carter refused to capitulate to Doe's extortionate demands, Doe, through Buzbee and Fortney, made good on her threat and formally named Mr. Carter a defendant in the lawsuit she filed weeks earlier.

66.    Defendants either knew that the statements against Mr. Carter were false, and/or acted with reckless disregard for the truth when initiating proceedings against Mr. Carter.

67.    Doe used NBC News and other media platforms to publish and further disseminate her false statements to millions of readers and viewers to falsely accuse Mr. Carter of sexual assault and inflict maximum reputational harm on him to induce Mr. Carter to give her money to which she was not entitled.

68.    Doe's lawsuit lacked any probable cause to believe her lawsuit had legal merit, as demonstrated by how easy it was for NBC to disprove Doe's allegations after a few days of investigation that revealed evidence that directly contradicted her version of events. No person of ordinary care and prudence would believe that Mr. Carter sexually assaulted Doe at an after party for the 2000 VMAs.

69.    For example, NBC News found the following inconsistencies in Doe's allegations:

   a.  Doe alleged that the VMA after party occurred at "a large white residence with a gated U-shaped driveway" that was "approximately twenty minutes" from the VMAs by car, but photographs show that Mr. Carter attended a party at Lotus, a night club in New York;

b.  Doe alleged that her father drove to pick her up after the alleged assault: a ten-hour round trip to retrieve his 13-year-old daughter from a random gas station. When asked, her father had no recollection of doing so;

c.  Doe alleged that she spoke to certain celebrities at the alleged party. When pressed for the name of the celebrities, Doe could only name one person, but that individual was in Chicago that evening performing a concert;

d.  Doe alleged that she watched the VMAs on a jumbotron, despite the fact that photographs from the evening show no jumbotrons and that New York City denied MTV the permit;

e.  Doe alleges that she "approached limousine drivers" at the VMAs, despite video proof that the limousine area was cordoned off by police and inaccessible to fans.

70.    Doe also admitted to NBC News that her statements contained mistakes and admitted that key details in her allegations were inaccurate and were based on her "guess[es]." Doe thus knowingly and intentionally filed a complaint that contained false allegations.

71.    Yet, even after NBC News exposed the falsity and inconsistency of her statements, Defendants nevertheless continued to pursue Doe's frivolous and meritless lawsuit for the improper purpose of attempting to extort a settlement from Mr. Carter based on her fabricated sexual assault allegations.

72.    Defendants acted with malice in pursuing and initiating the meritless lawsuit against Mr. Carter. Defendants devised and executed their plan to accuse Mr. Carter of sexual assault and used national news and media outlets to disseminate the fabricated accusations to millions despite the falsity of the accusation. Defendants' actions were willful and purposeful in

order to maximize the reputational harm to Mr. Carter and induce Mr. Carter to pay them. At a minimum, they initiated the lawsuit with a reckless disregard for the falsity of the allegations.

73.    Doe's frivolous lawsuit, filed by Buzbee, Fortney and The Buzbee Law Firm, and its demonstrably false allegations that Mr. Carter sexually assaulted her when she was a minor caused Mr. Carter to suffer actual and special damages, including, but not limited to, harm to his personal and professional reputation, harm to his business entity, Roc Nation—which resulted in his business suffering substantial losses in excess of $20 million—out-of-pocket loss, and emotional harm, humiliation, and harassment.

74.    After finally realizing that their plan would not succeed, Defendants quietly moved to voluntarily dismiss the lawsuit with prejudice. Accordingly, the lawsuit was resolved in Mr. Carter's favor, without settlement or compromise.

75.    Defendants' initiation and continued prosecution of the frivolous lawsuit was willful and malicious and was intended to oppress and cause injury to Mr. Carter. Accordingly, Mr. Carter is entitled to an award of punitive damages.

<u>**Second Cause of Action**</u>
**(Abuse of Process Against All Defendants)**

76.    On October 20, 2024, Doe, through Buzbee, Fortney and The Buzbee Law Firm, sued Combs and his business entities, as well as "Does 1-10" alleging that they committed heinous crimes. Defendants did not initiate that lawsuit with a legitimate purpose. Instead, the lawsuit was filed with the intent to extort Mr. Carter.

77.    On November 5, 2024, Doe, through her attorney Buzbee, sent Mr. Carter an extortionate letter threatening to publicly assert wild, horrific, but utterly false allegations that Mr. Carter sexually assaulted a minor after the Video Music Awards in 2000. According to Doe, if Mr. Carter wished to avoid the financial and personal devastation that such public allegations would

inflict, he would need to work out a deal to silence her. But Doe had already sued Mr. Carter, albeit as one of the "Does 1-10." Defendants thus filed the lawsuit to force Mr. Carter into either: (a) paying "something of substance" to stop her from making public the wildly false allegations of sexual assault that would subject Mr. Carter to opprobrium and irreparably harm his reputation, family, career, and livelihood, or (2) endure that financial and personal ruin.

78.    After Mr. Carter refused to capitulate to Doe's extortionate demands, Doe, through Buzbee, Fortney and The Buzbee Law Firm, made good on her threat and formally named Mr. Carter a defendant in the lawsuit she filed weeks earlier.

79.    Defendants either knew that the statements against Mr. Carter were false, and/or acted with reckless disregard for the truth when initiating proceedings against Mr. Carter.

80.    Doe used NBC News and other media platforms to publish and further disseminate her false statements to millions of readers and viewers to falsely accuse Mr. Carter of sexual assault and inflict maximum reputational harm on him to induce Mr. Carter to give her money to which she was not entitled.

81.    Doe's lawsuit lacked any probable cause to believe her lawsuit had legal merit, as demonstrated by how easy it was for NBC to disprove Doe's allegations after a few days of investigation that revealed evidence that directly contradicted her version of events. No person of ordinary care and prudence would believe that Mr. Carter sexually assaulted Doe at an after party for the 2000 VMAs.

82.    For example, NBC News found the following inconsistencies in Doe's allegations:

    a.    Doe alleged that the VMA after party occurred at "a large white residence with a gated U-shaped driveway" that was "approximately twenty minutes" from the

VMAs by car, but photographs show that Mr. Carter attended a party at Lotus, a night club in New York;

b. Doe alleged that her father drove to pick her up after the alleged assault: a ten-hour round trip to retrieve his 13-year-old daughter from a random gas station. When asked, her father had no recollection of doing so;

c. Doe alleged that she spoke to certain celebrities at the alleged party. When pressed for the name of the celebrities, Doe could only name one person, but that individual was in Chicago that evening performing a concert;

d. Doe alleged that she watched the VMAs on a jumbotron, despite the fact that photographs from the evening show no jumbotrons and that New York City denied MTV the permit;

e. Doe alleges that she "approached limousine drivers" at the VMAs, despite video proof that the limousine area was cordoned off by police and inaccessible to fans.

83.    Doe also admitted to NBC News that her statements contained mistakes and admitted that key details in her allegations were inaccurate and were based on her "guess[es]." Doe thus knowingly and intentionally filed a complaint that contained false allegations.

84.    Yet, even after NBC News exposed the falsity and inconsistency of her statements, Defendants nevertheless continued to pursue Doe's frivolous and meritless lawsuit for the improper purpose of attempting to extort a settlement from Mr. Carter based on her fabricated sexual assault allegations.

85.    Defendants acted with malice in pursuing and initiating the meritless lawsuit against Mr. Carter. Defendants devised and executed their plan to accuse Mr. Carter of sexual assault and used national news and media outlets to disseminate the fabricated accusations to

millions despite the falsity of the accusation. Defendants' actions were willful and purposeful in order to maximize the reputational harm to Mr. Carter and induce Mr. Carter to pay them. At a minimum, they initiated the lawsuit with a reckless disregard for the falsity of the allegations.

86.     Doe's frivolous lawsuit and its demonstrably false allegations that Mr. Carter sexually assaulted her when she was a minor caused Mr. Carter to suffer actual and special damages, including, but not limited to, harm to his personal and professional reputation, harm to his business entity, Roc Nation—which resulted in his business suffering substantial losses in excess of $20 million—out-of-pocket loss, and emotional harm, humiliation, and harassment.

87.     After finally realizing that their plan would not succeed, Defendants quietly moved to voluntarily dismiss the lawsuit with prejudice. Accordingly, the lawsuit was resolved in Mr. Carter's favor, without settlement or compromise.

88.     Defendants' initiation and continued prosecution of the frivolous lawsuit was willful and malicious and was intended to oppress and cause injury to Mr. Carter. Accordingly, Mr. Carter is entitled to an award of punitive damages.

### Third Cause of Action
### (Civil Conspiracy Against All Defendants)

89.     All Defendants agreed and worked together, and knowingly and willfully conspired, to maliciously prosecute and abuse the legal process against Mr. Carter.   The Defendants agreed to initiate and continue the false and malicious lawsuit in the shared objective of extorting Mr. Carter through false and damaging accusations, thereby causing harm to his reputation and financial wellbeing.

90.     In doing so, all Defendants intended to harm Mr. Carter. One or more of the Defendants took an overt act or acts to achieve malicious prosecution of Mr. Carter and to abuse the process of the courts against Mr. Carter:

a. Defendant Buzbee, as Doe's attorney, filed the initial lawsuit against Mr. Carter and other entities, knowing the claims were fabricated or recklessly disregarding the truth that the claims were fabricated;

b. Defendant Fortney, as an attorney representing Doe, assisted in pursuing the lawsuit and was complicit in the unlawful purpose of extorting Mr. Carter;

c. Defendant Buzbee and Fortney continued to prosecute the meritless lawsuit even after each were confronted with further evidence its falsity, demonstrating their collective intent to harm Mr. Carter;

d. Defendant Doe actively participated in the formulation of and prosecution of false claims against Mr. Carter.

91.    The conduct of these Defendants caused Mr. Carter's harm.  Defendants' collective conduct, including their malicious prosecution and abuse of process, was intentional and calculated to cause Mr. Carter's injury.  Their conspiracy was executed to extort money from Mr. Carter and to damage his personal, professional, and business reputation.

92.    As a direct result of Defendants' conspiracy, Mr. Carter suffered substantial harm. Mr. Carter also suffered out-of-pocket expenses and emotional distress.

### Fourth Cause of Action
### (Defamation Against Doe)

93.    Doe has made false and defamatory statements to and through third parties, including, but not limited to, major media outlets and through her attorney, Buzbee, on social media platforms, and during public interviews, accusing Mr. Carter of raping her. These statements were widely disseminated to the general public through media outlets, social media platforms, and during public interviews.

94. Notwithstanding the falsity of her allegations, Doe relied on NBC and other sources to republish and further disseminate her defamatory statements about Mr. Carter to the public, despite knowing that providing such statements to media outlets would disseminate her false statements about Mr. Carter throughout the country and world to millions of viewers and readers, which is what they did on December 13, 2024.

95. Doe's accusations were neither speculative nor innocuous, but asserted by Doe as matter of fact to lead a reader or viewer to conclude that Mr. Carter committed the criminal acts she alleged.

96. Doe knowingly made her false statements and, at a minimum, made them with a reckless disregard as to their falsity as demonstrated by NBC's ability to quickly uncover inconsistencies in Doe's allegations and contradictory evidence. Worse, when pressed about the inconsistencies, she admitted her statements contained mistakes and random guesses as to the key details. Doe thus acted with actual malice when she knowingly and intentionally published false allegations accusing Mr. Carter of sexual assault.

97. Doe's false statements, and her devised plan to use media networks, such as NBC News, to disseminate the statements to millions, were a part of Doe's calculated plan to falsely accuse Mr. Carter of sexual assault and inflict maximum reputational harm on him to induce payment.

98. Doe's false statements are defamatory per se as inflammatory statements falsely accusing Mr. Carter of crimes of moral turpitude that subjected Mr. Carter to disgrace, ridicule, public hatred, and contempt.

99.     Mr. Carter was directly injured by Doe's false statements and faced the deterioration of his public image, reputation, professional relationships, and business opportunities due to the public contempt and hatred caused by Doe's false statements.

100.    Defendant's false statements also constitute defamation per quod:

a.    Doe's false statements were made as matter-of-fact statements that were reasonably understood to have been made about Mr. Carter;

b.    Doe's false statements to social media networks, including her NBC News interview, implicated Mr. Carter in allegations of criminal sexual misconduct;

c.    The statements made by Doe were known to millions of readers and viewers of Doe's statements which injured Mr. Carter in his occupation as a performer and businessperson. For example, Doe's false statements and actions undermined Mr. Carter's ability to maintain professional relationships, secure business opportunities, and preserve his reputation by exposing Mr. Carter to disgrace, ridicule, public hatred, and contempt.

101.    Mr. Carter has suffered assumed and actual damages, including, but not limited to, loss and injury to his business, harm to his name and reputation, out-of-pocket loss, emotional harm, humiliation, and embarrassment.

102.    Doe's false statements were a substantial factor in causing Mr. Carter's harm.

103.    Doe acted with constitutional malice. Doe either knew that her statements against Mr. Carter were false or acted with reckless disregard for the truth.

104.    Even upon having sufficient grounds to withdraw her false statements against Mr. Carter, with the release of the NBC New Article, Doe continued to threaten, through her attorney

Anthony Buzbee, criminal prosecution against Mr. Carter and maintain the lawsuit against Mr. Carter.

105.    Doe did not have any reasonable grounds to support any truth in her statements and acted with reckless disregard for the truth.  In fact, she recanted portions of her complaint when interviewed by NBC News, and when asked by representative of Mr. Carter to come forward with the truth, she responded "what's in it for me?"

## PRAYER FOR RELIEF

WHEREFORE, Shawn Corey Carter respectfully prays for judgment and relief against Jane Doe (as to all Causes of Action) and Anthony Buzbee, David Forney and Anthony G. Buzbee L.P. (d/b/a The Buzbee Law Firm) (as to the First, Second and Third Causes of Action) as follows:

1. An award of assumed and actual damages, in an amount to be determined by the finder of fact;

2. An award of punitive damages;

3. Reasonable costs and legal fees pursuant to applicable law;

4. Pre- and post- judgment interest as applicable; and

5. Any other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Mr. Carter demands a trial by jury of all issues so triable.

Dated: March 3, 2025

/s/ William G. Somerville
WILLIAM G. SOMERVILLE
W. PATTON HAHN
JADE E. SIPES
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
1901 Sixth Avenue, Ste. 2600
Birmingham, Alabama 35226
(205) 328-0480
wsomerville@bakerdonelson.com
phahn@bakerdonelson.com
jsipes@bakerdonelson.com

*Attorneys for Plaintiff Shawn
Carter*