## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHAWN COREY CARTER,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **Case No. 1:25-cv-00086-TFM-MU** |
| | * | |
| **ANTHONY BUZBEE, DAVID** | * | |
| **FORTNEY, ANTHONY G. BUZBEE LP** | * | |
| **(d/b/a THE BUZBEE LAW FIRM) and** | * | |
| **JANE DOE,** | * | |
| | * | |
| **Defendants.** | * | |

## DEFENDANTS ANTHONY BUZBEE, DAVID FORTNEY, AND ANTHONY G. BUZBEE LP'S MOTIONS TO DISMISS UNDER RULES 12(B)(2), 12(B)(3), and 12(B)(6)

Defendants Anthony Buzbee ("Mr. Buzbee"), David Fortney ("Mr. Fortney"), and Anthony G. Buzbee LP (the "Buzbee Firm") (collectively, the "Buzbee Defendants") move this Court to dismiss all claims against them because: (1) this Court lacks personal jurisdiction; (2) venue is improper; and (3) when the correct body of law is applied, the Complaint fails to state a claim against the Buzbee Defendants upon which relief can be granted.

## <u>INTRODUCTION</u>

This case was filed by a celebrity against his sexual-assault accuser – whom the plaintiff himself describes as "suffering from personal and financial hardship"– and against her attorneys in retaliation for seeking to utilize the justice system to hold her alleged assailant(s) accountable. And in this case, a California plaintiff has come to Alabama to assert claims against Texas defendants for something that happened in New York.

The events giving rise to this litigation began in the fall of 2024, when Defendant Jane Doe retained counsel in connection with her allegations that the plaintiff, Shawn Corey Carter, better known as world-famous performing artist Jay-Z ("Mr. Carter"), sexually assaulted her alongside his longtime friend, Sean John Combs (better known by his stage name, "Diddy"), in 2000 when Doe was just 13 years old.  In October 2024, Doe, represented by the Buzbee Firm, filed suit in the United States District Court for the Southern District of New York against Diddy and some of his business interests (the "SDNY Action").  Doe could have named Mr. Carter in her original complaint but did not.  Instead, to give Mr. Carter an opportunity to settle the claims without making them public, Doe, through her attorneys, sent a letter to Mr. Carter's attorneys describing the claims and requesting a confidential mediation.

Instead of accepting Doe's invitation to confidentially discuss a settlement of her claims, Mr. Carter chose scorched-earth public harassment and litigation.  On November 18, 2024, Mr. Carter sued the Buzbee Firm and its principal, Mr. Buzbee, in Mr. Carter's home state of California, alleging that they were extorting him and intentionally causing him emotional distress (the "California Action").  Mr. Carter and his representatives also dispatched hordes of investigators to harass Doe, her friends and family, as well as the Buzbee Firm's current and former employees, clients, and other business contacts, and to also try to coerce the Buzbee Defendants' former clients to sue them.  Mr. Carter's mission was clear: to threaten, harass, intimidate, and financially punish Doe and her attorneys while peddling Mr. Carter's narrative to the media.

Understanding that Mr. Carter had no interest in a private resolution of the claims, Doe amended her complaint in the SDNY Action on December 8, 2024, to add Mr. Carter as a defendant.  Over the ensuing days, Mr. Carter's attorneys filed so many unprofessional papers with the Court that they received the following admonishment from the district judge:

> Since Carter's attorney first appeared in this case seventeen days ago, he has submitted a litany of letters and motions attempting to impugn the character of Plaintiff's lawyer, many of them expounding on the purported "urgency" of this case. …

> Carter's lawyer's relentless filing of combative motions containing inflammatory language and ad hominem attacks is inappropriate, a waste of judicial resources, and a tactic unlikely to benefit his client. The Court will not fast-track the judicial process merely because counsel demands it.

*Doe v. Combs, et al.*, 1:24-cv-07975-AT, (Doc. 53) (also admonishing Mr. Carter's counsel for their "unacceptable" failure "to abide by this Court's clear rules").

Eventually, the relentless pressure that Mr. Carter and his associates placed upon Doe became too much for her. On February 4, 2025, an agreement to resolve the litigation was reached between Doe and Mr. Carter, through their attorneys, which included the voluntary dismissal of the SDNY Action.

Notwithstanding this agreement, although Mr. Carter describes Doe as "suffering from personal and financial hardship" and having "lost custody of her children," Mr. Carter – a wealthy celebrity – filed this litigation against Doe and her attorneys, the Buzbee Defendants, and continues to threaten, harass, intimidate, and financially punish them. Mr. Carter's conduct is an attempt to diminish the reputation of the Buzbee Defendants, who, at all times, were seeking to perform their roles as zealous advocates, and who, at all times, were acting within the course and scope of their professional and legal obligations.

This case, an attempt by Mr. Carter to punish his accuser and silence potential accusers, as well as discourage any attorney who may represent such victims, is precisely the type of retaliatory and bad-faith litigation that courts across the country disfavor.

## LEGAL ARGUMENT

**I.    The Court lacks personal jurisdiction over the Buzbee Defendants.**

The due-process standards for specific personal jurisdiction are familiar.  The Eleventh Circuit considers whether:

1.    The plaintiff has established that his claims "arise out of or relate to" at least one of the defendants' forum contacts;

2.    The plaintiff has demonstrated that the defendants "purposefully availed" themselves of the "privilege of conducting activities within the forum state," and

3.    If the plaintiff carries his burden on the first two prongs, the defendants have made a compelling case that exercising jurisdiction would violate "traditional notions of fair play and substantial justice."

*Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312-13 (11th Cir. 2018) (citing caselaw).  The first two prongs bear further discussion.

The relatedness prong asks whether a defendant's contacts with the forum are sufficiently connected to the pleaded causes of action to satisfy due process.  Courts "look to the 'affiliation between the forum and the underlying controversy,'" and focus on any "activity or . . . occurrence that took place in the forum State."  *Id.* at 1314 (internal punctuation omitted).  While a "strict causal relationship" between the forum contacts and the cause of action is not required, there are "real limits" on the relatedness test, and the "affiliation" demanded between forum contacts and pleaded claims is "principally" to be some "activity or . . . occurrence that took place" in the forum.  *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362, 370 (2021); *see also Waite*, 901 F.3d at 1314.[1]

---

[1] The Eleventh Circuit also refers to this as the "sufficient nexus" prong.  *Rowe v. Gary, Williams, Parteni, Watson & Gary, PLLC*, 723 F. App'x 871, 875 (11th Cir. 2018).

The purposeful-availment prong concerns the quality of a defendant's contacts with the forum, requiring a defendant to "deliberately engage" in "significant activities" in the forum, and rejecting forum contacts that are merely "random," "fortuitous," or "attenuated." *Rowe v. Gary, Williams, Parteni, Watson & Gray, PLLC*, 723 F. App'x 871, 875 (11th Cir. 2018) (quoting caselaw).

In intentional-tort cases there are *two* tests for purposeful availment. First, courts may apply the "effects test," under which a nonresident defendant's single tortious act can establish purposeful availment if the tort was (1) intentional, (2) aimed at the forum state, and (3) caused harm to plaintiff in the forum state that defendant should have anticipated. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

Second, courts may also apply the "traditional" purposeful-availment analysis, which requires that a defendant's forum contacts "involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum," contacts that are "such that the defendant should reasonably anticipate being haled into court in the forum." *Id.* at 1356-57. Because the Eleventh Circuit has suggested that, in intentional-tort cases not involving a plaintiff residing in the forum state (like this one), the "effects" test is not as applicable as the minimum-contacts test, the latter controls here. *See, e.g.*, *id.* at 1356-57 (citing caselaw).

A challenge to personal jurisdiction may be facial or factual. *Quality Analytical Lab. v. Metcoff*, No. 5:18cv10-RH/GRJ, 2019 WL 13162851, at *1 (N.D. Fla. Feb. 25, 2019). On a facial attack, the allegations are taken as true, while in a factual attack, the court may consider "evidence and resolve factual disputes." *Id.* Another way of putting this is that the "factual allegations in the complaint are accepted as true" for jurisdictional purposes "**to the extent** they are

uncontroverted." *Micro Fin. Advisors, Inc. v. Coloumb*, No. 23-11062, 2023 WL 7156898, at *3 (11th Cir. Oct. 31, 2023) (citation omitted) (emphasis added). If a defendant submits an affidavit contesting personal jurisdiction, "the burden shifts back to the plaintiff to produce evidence to support personal jurisdiction." *Moore v. Cecil*, 109 F.4th 1352, 1362 (11th Cir. 2024) (quotation omitted).

The *Rowe* case shows how the purposeful-availment prong applies when the attorney-client relationship is used as a basis for personal jurisdiction. The Eleventh Circuit explained that an "out-of-state defendant's merely entering into a contract—such as one for legal representation— with a forum resident is **insufficient to pass the minimum contacts test**." *Rowe*, 723 F. App'x at 875 (emphasis added; citing caselaw). In that case, the events and contacts that gave rise "to the litigation occurred, on the whole," in some other state than the forum. *Id.* at 876. The focus of the case concerned a lawsuit in New York, so while the plaintiffs pointed to "one litigation preparation meeting" in Georgia and "one deposition" there "for the New York action," those contacts were not enough—even though the "initial contact" between plaintiffs themselves and the defendant was also in Georgia. *Id.* Over the course of the defendants' representation of their client in the New York action, the few Georgia contacts with the client were "attenuated . . . at best" and "fortuitous." *Id.* Those contacts were "tie[d] to ongoing litigation occurring in an out-of-state forum" in New York, and so they weren't enough to satisfy due process. *Id.*

So holding, the Eleventh Circuit relied on the Tenth Circuit's *Newsome v. Gallacher* decision, which bears discussion. In *Newsome*, the Tenth Circuit considered personal jurisdiction as to allegations against a lawyer and law firm for work they had done in Canada. 722 F.3d 1257, 1279-80 (10th Cir. 2013). The law firm had offered an affidavit showing that all the services it had rendered that were related to the claims against it had happened in Canada, evidence the

plaintiff did not contradict. *Id.* at 1279. This prompted the court to survey the caselaw on whether out-of-state legal work on an out-of-state matter can subject an out-of-state lawyer to personal jurisdiction in the "client's home forum." *Id.* at 1280.

As it turns out, most courts say no. The majority view is that "representing a client residing in a distant forum" is not "necessarily a purposeful availment of that distant forum's laws and privileges." *Id.* The client's residence is instead "often seen by the majority as a 'mere fortuity.'" *Id.* (quoting caselaw). The Tenth Circuit, like the Eleventh, "agree[d] with the majority" and held that an "out-of-state attorney" working out of state on some out-of-state matter for a client who lives in the forum "does not purposefully avail himself of the client's home forum's laws and privileges," at least not in the absence of evidence that the lawyer "reached out to the client's home forum to solicit the client's business." *Id.* at 1280-81.

### a.    The Complaint's jurisdictional allegations are facially insufficient.

Mr. Carter has not alleged facts supporting personal jurisdiction over the Buzbee Defendants. On its face, the Complaint lacks allegations that tie the key events giving rise to his claims—the lawsuit in New York and the demand letter sent to him—to the Buzbee Defendants' few contacts with Alabama. Even taking the allegations as true, Mr. Carter alleges almost nothing of significance that occurred in Alabama. The supposedly defamatory lawsuit was filed in New York federal court. The demand letter was allegedly intended to affect him in California, where he lives (though it was sent to New York, not California, from Texas, as explained below). And even the NBC News interview given by Doe and which (somehow or other) Mr. Carter thinks the Buzbee Defendants are liable for by association, is not alleged to have occurred here in Alabama.

That is why *Rowe* is controlling. Just like in *Rowe*, the "events and contacts" that gave rise to this lawsuit happened elsewhere, either in New York or California or Texas. 723 F. App'x at

876.  In fact, Mr. Carter's jurisdictional case is *worse* than in *Rowe*, because in that case the initial contact with the client happened in the forum, and there was a deposition as well as a preparation meeting in the forum.  *Id.*  Here, however, Mr. Carter admits that Doe met Mr. Buzbee "for the first time at a coffee shop in Houston," and refers to a single meeting in Alabama between Mr. Fortney and Doe *after* the New York lawsuit was filed and *after* the demand letter had been sent, a meeting that Mr. Carter never alleges caused him harm.  [Doc. 1 at ¶¶ 6, 14, 55.  Mr. Carter thus pleads fewer and less significant contacts with Alabama than did the plaintiff in *Rowe*.

On its face, therefore, the Complaint fails to show either that the Buzbee Defendants' contacts with Alabama "arise from or relate to" the claims brought against them, or that those few contacts constituted purposeful availment of the Alabama forum.  Mr. Carter does not allege the Buzbee Defendants solicited Doe's business in Alabama, does not allege the Buzbee Defendants first met or signed Doe up as a client in Alabama, does not allege any specific legal work done in Alabama, and does not allege he was harmed in Alabama.  Instead, he alleges that the facts arguably relevant to malicious prosecution and abuse of process all happened somewhere else.

> **b.    The facts show there is no personal jurisdiction.**

Things get worse for Mr. Carter in light of the evidence.  As the Affidavit of Mr. Fortney explains, by the time the demand letter was sent to Mr. Carter, and by the time the SDNY Action was filed in the Southern District of New York (and named Mr. Carter specifically), *none* of the legal work done on Doe's behalf had occurred in Alabama.  *See generally* Affidavit of David Fortney, attached hereto as Exhibit 1.  The letter and the lawsuit were not drafted in Alabama, were not sent from or to Alabama, were not filed in Alabama, and were not directed to an audience in Alabama.  *Id*.

In fact, the Fortney Affidavit shows that the Buzbee Defendants' contacts with Alabama, in any way related to the parties or events of this case, are minimal indeed. *Id*. Neither Mr. Fortney nor Mr. Buzbee nor anyone else from their firm ever travelled to Alabama for purposes of the New York lawsuit or demand letter at any point before that lawsuit named Mr. Carter, or before the demand letter was sent. *Id*. Mr. Carter is suing for malicious prosecution and abuse of process (and conspiracy based on those torts), but neither the allegations nor the facts show that any of the Buzbee Defendants used the Alabama legal system to assert a claim against Mr. Carter, make demands on him, or attempt to defame him in the public eye. Both the Complaint and the Affidavit agree that all of the salient events giving rise to Mr. Carter's allegations occurred, if at all, in some other venue.

Mr. Carter, then, has not made out a case of minimum contacts with Alabama by the Buzbee Defendants. None of the few trips to Alabama by Mr. Fortney or his associate gave rise to the allegations here, because they all happened *after* what Mr. Carter says harmed him. Mr. Carter cannot show an adequate nexus between those few after-the-fact contacts and his claims.

Nor do these contacts constitute purposeful availment of this forum by any of the Buzbee Defendants. As *Rowe* and other cases explained, an out-of-state lawyer's doing out-of-state work for a forum client is not deemed to be a lawyer's availment of the forum's legal system. In the language of personal-jurisdiction law, Mr. Fortney's and his firm's few contacts with Alabama were attenuated and fortuitous. The forum contacts occurred only because of the happenstance that Doe lives in Alabama. Neither the New York lawsuit nor the demand letter were *about* Alabama or took advantage of Alabama's laws and privileges.

The jurisdictional defect here can be summed up: a California resident has sued out-of-state Defendants in Alabama over a lawsuit filed in New York and a demand letter sent from Texas.

Personal jurisdiction over the Buzbee Defendants would thus offend due process, and Mr. Carter's claims against them should be dismissed.

## II.    This district is not a proper venue under 28 U.S.C. § 1391.

Mr. Carter alleges the Southern District of Alabama is a proper venue under 28 U.S.C. § 1391. [Doc. 1, ¶ 17.] Specifically, he claims venue is proper because Defendant Doe resides here and because "[Defendants] Buzbee and Fortney provided legal services to [Doe], and spoke and met with her, within this District." [*Id.*] Contrary to these assertions, however, neither Doe's residency nor her attorneys' meeting with her provide a viable basis for Mr. Carter to pursue his claims against the Buzbee Defendants in this District.

In pertinent part, 28 U.S.C. § 1391 states:

(b) A civil action may be brought in:

(1) a judicial district in which any defendant resides, *if all defendants are residents of the State in which the district is located*;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred… ; or

(3) *if there is no district in which an action may otherwise be brought as provided in this section*, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1-3) (emphasis added).

Because the Buzbee Defendants are all citizens of Texas, the Southern District of Alabama is not a proper venue under § 1391(b)(1). Additionally, even taking the Complaint at face value, none of the Buzbee Defendants' alleged actionable conduct occurred in Alabama, much less a "substantial part of the events or omissions giving rise to the claim[s]." Instead, every alleged act that could conceivably support Mr. Carter's claims against the Buzbee Defendants occurred in the

Southern District of New York or the Southern District of Texas, making both of those Districts a proper venue under § 1391(b)(2). Because there are multiple proper venues under § 1391(b)(2), § 1391(b)(3) is inapplicable.

"When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 56 (2013). Because nothing in the Complaint provides proper grounds for venue in the Southern District of Alabama, Mr. Carter's claims against the Buzbee Defendants should be dismissed under 28 U.S.C. §1406(a).

### a. Section 1391(b)(1) is inapplicable because not all Defendants are Alabama residents.

First, 28 U.S.C. § 1391(b)(1) is plainly inapplicable based on the face of the Complaint. Mr. Carter specifically alleges that Doe is an Alabama resident while the Buzbee Defendants are all citizens of Texas. [Doc. 1, ¶¶ 12-14, 16.] Because the Defendants are residents of different states, § 1391(b)(1) does not apply.

### b. No district in Alabama is a proper venue for this action under § 1391(b)(2), because none of the Defendants' alleged actionable conduct occurred in Alabama.

28 U.S.C. § 1391(b)(2) establishes venue is proper in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." An event "directly give[s] rise to a claim" if it "ha[s] a close nexus to the wrong." *Russo v. Raimondo*, No. 24-0186-WS-M, 2024 WL 4571431, at *4 (S.D. Ala. Oct. 24, 2024) (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-72 (11th Cir. 2003). Put more directly, "[o]**nly the events that directly give rise to a claim are relevant**." *Jenkins*, 321 F.3d at 1371 (emphasis added). Further, where a plaintiff asserts multiple claims against multiple defendants, "**venue must be proper ... as to each**

**party**," and "[t]he fact that a claim for some of the plaintiffs or against some of the defendants arose in a particular district does not make that district a proper venue for parties as to whom the claim arose somewhere else." 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3807 (4th ed. 1998) (alterations retained; emphasis added).

Here, the Complaint includes the following causes of action:

1.    Malicious Prosecution (All Defendants);

2.    Abuse of Process (All Defendants);

3.    Conspiracy to Commit Malicious Prosecution and Abuse of Process (All Defendants); and

4.    Defamation (Jane Doe).

In support of both his malicious prosecution and abuse of process claims, Mr. Carter alleges that Doe – through the Buzbee Defendants – sued Mr. Carter in the United States District Court for the Southern District of New York, and plainly states the New York lawsuit is "**the case at issue here**." [Doc. 1, ¶¶ 14, 54, 63 (emphasis added).] Accordingly, Mr. Carter admits that the underlying proceedings forming the basis of his claims occurred exclusively in New York. Nothing within the Complaint regarding his malicious prosecution, abuse of process, or conspiracy claims allegedly occurred in the Southern District of Alabama, or *anywhere else* in Alabama.

Conversely, all of the alleged actions associated with Mr. Carter's claims occurred outside the State of Alabama. Specifically, the Complaint alleges that:

1.    Mr. Buzbee filed the SDNY Action against Mr. Carter *in New York*;

2.    Mr. Fortney assisted in pursuing the SDNY Action *in New York*;

3.    Mr. Buzbee and Mr. Fortney continued to pursue the SDNY Action *in New York* even after Mr. Carter alleged that the claims were false; and

4.    Doe actively participated in the prosecution of the SDNY Action against Mr. Carter *in New York*. [Doc. 1, ¶¶ 90(a-d).]

Accordingly, not only are the proceedings underlying the malicious prosecution and abuse of process claims exclusive to the Southern District of New York, but the Buzbee Defendants' alleged actions taken in furtherance of the alleged conspiracy occurred either in New York or Texas, where all of the Buzbee Defendants reside and conduct business.

Mr. Carter's timeline of events further confirms that no actionable conduct occurred in the Southern District of Alabama. Specifically, Mr. Carter alleges that the Buzbee Defendants initiated and pursued meritless litigation against him on behalf of Doe in New York until the case was voluntarily dismissed on February 14, 2025. The *only* time any of the Buzbee Defendants were alleged to have been present in Alabama was the day before the dismissal, when Mr. Fortney allegedly flew to Alabama to meet with Doe and convince her to dismiss the SDNY Action. [Doc. 1, ¶¶ 17, 55, 58.][2]

This case is strikingly similar to *Rubber Res., Ltd., LLP v. Allen P. Press*, No. 8:08-cv-1730-T-27TBM, 2009 WL 211556 (M.D. Fla. Jan. 27, 2009). There, the plaintiff, Rubber Resources, sued two lawyers and their law firm for malicious prosecution and abuse of process (among other claims) in a Florida federal court. *Id.* at *1. The underlying proceeding forming the basis of the malicious prosecution and abuse of process claims was a lawsuit filed in Missouri, in which Rubber Resources ultimately prevailed on summary judgment. *Id.* The defendants were all residents of Missouri. *Id.* During the course of the Missouri lawsuit, the parties convened in Florida

---

[2] Of note, Plaintiff claims on February 13, 2025, Defendant Fortney met with his client, Jane Doe, and during this privileged meeting between an attorney and his client, Fortney allegedly told Doe that Plaintiff had "made threats against [her] life, and it was too dangerous to continue the case." [Doc. 1, ¶ 56]. This allegation is of course a red herring, as Plaintiff has not stated a cause of action against Buzbee, Fortney, or The Buzbee Law Firm in any way related to these alleged privileged statements. Accordingly, this Alabama meeting on February 13, 2025 is completely irrelevant to the issues before this Court.

for a single deposition of a Rubber Resources corporate representative. *Id.* Otherwise, no other events in the lawsuit occurred in the State of Florida. *Id.*

The *Press* court observed that "the events 'giving rise' to the claim for malicious prosecution were the initiation of the lawsuit in Missouri and the entry of summary judgment in Rubber Resources' favor in the Missouri court. Although the *Press* defendants took [plaintiff's representative's] deposition in Florida, 'only those locations hosting a substantial part of the events are appropriate for venue.'" *Id.* at *2 (quoting *Jenkins*, 321 F.3d at 1371). In short, even though the defendants visited the Middle District of Florida to conduct a deposition directly associated with the Missouri lawsuit, that single activity did not give rise to the malicious prosecution claim and "[did] not comprise a substantial part of the events underlying the claim." *Id.*

The *Press* court similarly held that venue was improper for the plaintiff's abuse of process claim, because no allegation of the "abuse" necessary to sustain such a claim occurred in Florida. Instead, all of the alleged abuse occurred in Missouri associated with the Missouri action. *Id.* Moreover, for the same reasons the court found venue was improper for the underlying tort claims, it also held venue was improper for the conspiracy to commit the underlying tort (in that case, malicious prosecution). *Id.*

Like the attorneys and law firm in *Press*, the Buzbee Defendants are not residents of the forum state. Unlike the *Press* defendants who conducted a deposition in the forum state, the Buzbee Defendants never conducted any significant activity in Alabama related to the underlying SDNY Action. Accordingly, if voluntarily conducting a deposition in the subject forum in direct pursuit of the underlying proceedings is not considered a "substantial part" of subsequent malicious prosecution, abuse of process, and conspiracy claims, there is no conceivable way that,

as a solo act, a lawyer flying into the forum to meet with a client can provide grounds for venue within that forum.

The Complaint goes to great length to demonstrate that *nothing* significant to this lawsuit occurred in Alabama. Every fact that Mr. Carter alleges in support of his claims occurred in New York or Texas, not Alabama. Accordingly, § 1391(b)(2) provides for proper venue in the Southern District of New York (where the underlying proceedings were filed) and the Southern District of Texas (where the Buzbee Defendants reside and conduct their business), but not here.

        **c.**      **Section 1391(b)(3) is inapplicable, because § 1391(b)(2) provides for proper venue elsewhere.**

As plainly stated in the statute, § 1391(b)(3) only applies "if there is no district in which an action may otherwise be brought as provided in this section . . . ." As established herein, under § 1391(b)(2), venue would be proper in the Southern District of New York or the Southern District of Texas.  Consequently, § 1391(b)(3) is inapplicable and provides no basis for venue in the Southern District of Alabama.

**III.**     **In the alternative to dismissing for lack of jurisdiction or improper venue, this Court should dismiss all of Mr. Carter's claims against the Buzbee Defendants because, under New York law, they fail to state a claim upon which relief can be granted.**

When deciding a Rule 12(b)(6) motion, the Court must "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions . . . , in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). From these sources, the Court must draw "all reasonable inferences in the [non-movant's] favor." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). However, the Court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In applying this standard, the Supreme Court has suggested that courts adopt a "two-pronged approach": "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 556 U.S. at 682). Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S at 678 (quoting *Twombly*, 550 U.S at 556).

Mr. Carter asserts three claims against the Buzbee Defendants: (i) malicious prosecution, (ii) abuse of process, and (iii) civil conspiracy. [*See* Doc. 1.] Under New York law, which applies to these claims because they are based on alleged conduct that occurred in the SDNY Action, all of the claims must be dismissed for failure to state a claim upon which relief can be granted.

"[A] federal court sitting in diversity will apply the choice of law rules for the state in which it sits." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Alabama courts follow the traditional conflict-of-law principles of *lex loci contractus* and *lex loci delicti*. *Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala. 2009). Since the claims against the Buzbee Defendants are tort claims, *lex loci delicti* applies. "Under the principle of *lex loci delicti*, an Alabama court will determine the substantive rights of an injured party according to the law of the

state where the injury occurred." *Precision Gear Co. v. Continental Motors, Inc.*, 135 So. 3d 953, 956 (Ala. 2013) (quoting *Lifestar Response of Ala., Inc.*, 17 So. 3d at 213). Under Alabama law, an "injury in a malicious-prosecution action occurs in the state where the allegedly malicious lawsuit was [allegedly] terminated in favor of the complaining party." *Ex parte U.S. Bank Nat. Ass'n*, 148 So. 3d 1060, 1070 (Ala. 2014); *see also id.* ("[T]he principle of *lex loci delicti* requires that the law of the state in which the antecedent lawsuit was litigated governs a claim of malicious prosecution.").

New York law applies to Mr. Carter's malicious prosecution claim because it is based on the SDNY Action, which was filed and terminated in New York. This same logic applies to Mr. Carter's abuse of process claim because it is based on the filing of the SDNY Action. And because New York law applies to the underlying tort claims, it applies to Mr. Carter's civil conspiracy claim as well.

### a. The Complaint fails to state a claim for malicious prosecution.

New York courts, like those in Alabama, disfavor claims for malicious prosecution. New York public policy favors bringing wrongdoers to justice, and therefore, "must afford accusers room for benign misjudgments," which "fosters the long-standing belief that the court system is open to all without fear of reprisal by way of retaliatory lawsuits." *Tray Wrap, Inc. v. Pac. Tomato Growers Ltd.*, 18 Misc.3d 1122(A), 856 N.Y.S.2d 503 (Sup. Ct.), *amended*, 2008 WL 9453492 (N.Y. Sup. Ct. 2008), *aff'd*, 61 A.D. 3d 545, 877 N.Y.S.2d 71 (N.Y. 2009). "It is precisely for this reason that a plaintiff asserting a cause of action for malicious prosecution must satisfy a heavy burden." *Id.*

This rationale is akin to the explanation provided by the Alabama Supreme Court, which has stated:

> "Malicious prosecution is an action disfavored in the law." *Cutts v. American United Life Insurance Co.*, 505 So. 2d 1211, 1212 (Ala. 1987). The reason for such disfavor is clear: "[P]ublic policy requires that all persons shall resort freely to the courts for redress of wrongs and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge." *Boothby Realty Co. v. Haygood*, 114 So. 2d 555, 559 (Ala. 1959).

*Eidson v. Olin Corp.*, 527 So. 2d 1283, 1284 (Ala. 1988). "If this were not the case, a large proportion of unsuccessful civil actions would be followed by suits for malicious prosecution, and there would be a piling of litigation on litigation without end." *Boothby Realty*, 114 So. 2d at 559.

To state a claim under New York law for malicious prosecution of a civil action, a plaintiff must allege: (1) the initiation of an action by the defendant against him; (2) begun with malice; (3) without probable cause to believe it can succeed; (4) that terminates in favor of the plaintiff; and (5) causes special injury. *Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 284 (E.D.N.Y. 2014) (citing *Engel v. CBS, Inc.*, 145 F.3d 499 (2d Cir. 1998)).

As stated by the New York Court of Appeals: "A malicious civil prosecution [claim] is one that is begun in malice, without probable cause to believe it can succeed, and which, after imposing a grievance akin to the effect of a provisional remedy, finally ends in failure." *Engel v. CBS, Inc.*, 93 N.Y.2d 195, 206, 711 N.E.2d 626, 632 (N.Y. 1999) (citation omitted). This same court characterized a plaintiff's burden to prove malice and an entire lack of probable cause as "no easy feat." *Id.* at 204, 711 N.E.2d at 631 (citation omitted). In the present case, Mr. Carter's malicious prosecution claim against the Buzbee Defendants fails, because he cannot satisfy the second, third, fourth, or fifth elements of such an action under New York law.

### 1.    The Complaint fails to sufficiently allege malice.

The gravamen of a claim for malicious prosecution is the presence of malice, or the intent to harm. Under New York law, malice is defined as "conscious falsity." In *Santoro v. Town of*

*Smithtown*, 40 A.D. 3d 736, 835 N.Y.S.2d 658 (2d Dep't 2007), a New York appellate court

affirmed dismissal of a group of plaintiffs' claim for malicious prosecution because they failed to

"allege any facts sufficient to rise to the level of actual malice, i.e., some deliberate act punctuated

with awareness of conscious falsity." *Id.* at 738 (internal quotation marks omitted) (quoting *Best

v. Genung's Inc.*, 46 A.D. 2d 550, 552, 363 N.Y.S.2d 669 (3d Dep't 1975) (quoting *Munoz v. City

of New York*, 18 N.Y.2d 6, 218 N.E.2d 527 (N.Y. 1966) (citation omitted); *see also Boose v. City

of Rochester*, 71 A.D.2d 59, 69, 421 N.Y.S.2d 740 (4th Dep't 1979) ("Malice means 'malice in

fact' or 'actual malice,' not malice implied by law.") (quoting *Nardelli v. Stamberg*, 44 N.Y.2d

500, 377 N.E.2d 975 (N.Y. 1978)). There must be adequate factual allegations to show that the

defendant "commenced the proceeding because of a wrong or improper motive, something other

than a desire to see the ends of justice served." *Id.* (citing *Nardelli*, supra).

Mr. Carter claims that the Buzbee Defendants filed the SDNY Action without "a legitimate

purpose" and "with the intent to extort Mr. Carter." [Doc. 1 at ¶ 63.] Mr. Carter asserts that the

Buzbee Defendants "either knew that the statements [alleged in the SDNY Action] were false,

and/or acted with reckless disregard for the truth when initiating proceedings against Mr. Carter."

[*Id.* at ¶ 66.]   These allegations, however, are conclusory in nature, and therefore, should be

disregarded. *Ashcroft*, 556 U.S. at 678.  The Complaint contains no facts suggesting *why* or *how*

the Buzbee Defendants knew or should have known that the SDNY allegations were false.

Moreover, courts are permitted to infer from the factual allegations in a complaint

"'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful

conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d at

1290 (quoting *Iqbal*, 556 U.S. at 682). In these circumstances, an obvious alternative explanation

exists for the Buzbee Defendants' conduct: they were fiercely advocating for their client, Doe,

who they believed to be a legitimate victim of Mr. Carter's alleged wrongdoing, and, by sending the Demand Letter, were giving Mr. Carter an opportunity to settle the claims before they were filed. That the Buzbee Defendants requested a confidential mediation with Mr. Carter to avoid filing the amended complaint in the SDNY Action is not fairly attributable to a nefarious motive. Rather, obtaining a financial settlement to resolve the claims is exactly what litigation, and settling litigation, is all about. *See also Lenaar v. Lubavitch*, 64 Misc. 3d 1238(A), 118 N.Y.S.3d 371, at *15 (Civ. Ct. Sept. 6, 2019) (table) (slip copy) ("In general, attorneys are free to select a number of reasonable courses of action in prosecuting a client's case without exposing themselves to liability[.]"). The Court can, and should, infer from this alleged conduct the obvious alternative explanation of lawyers, on behalf of their firm, doing their job to the best of their abilities on behalf of their client.

To the extent any factual allegations in the Complaint purport to support Mr. Carter's conclusory allegations of malice, they all relate to facts known (or potentially known) to the Buzbee Defendants *after* the amended complaint in the SDNY Action was filed. Specifically, Mr. Carter relies on the NBC News coverage of the issues, including "inconsistencies" identified by NBC. [Doc. 1 at ¶ 66-71.] This coverage took place in December 2024, ***after*** Defendants filed the SDNY Action in October 2024 and amended it to include Mr. Carter on December 8, 2024. Therefore, such allegations are not relevant to the legal question at issue, which is whether the Buzbee Defendants' acts of filing a complaint in the SDNY Action, sending the Demand Letter, and filing the amended complaint in the SDNY Action that named Mr. Carter as a defendant, were done with malice or conscious awareness of the falsity of the allegations. Rather, the Court should find that malice has not been sufficiently alleged in the Complaint as required by New York law.

### 2.    Mr. Carter cannot show that the SDNY Action was filed without probable cause to believe it could succeed.

For more than a century, New York courts have firmly established that "malicious prosecution claims are not encouraged, and thus, without a clear and satisfactory showing that plaintiffs in the previous action lacked reasonable grounds, the case [must] be dismissed." *Engel*, 711 N.E.2d at 629-30 (citing *Ferguson v. Arnow*, 97 Sickels 580, 37 N.E. 626 (N.Y. 1894)). "To hold otherwise would mean that malicious prosecution cases 'could be maintained for the unsuccessful prosecution of many of the actions which come upon appeal to this court, and a large proportion of unsuccessful actions could be followed by such an action, and litigation thus interminably prolonged.'" *Id.* (quoting *Ferguson*, 37 N.E. at 627).

Therefore, to state a malicious prosecution claim under New York law, Mr. Carter must show "an entire lack of probable cause." *Engel*, 711 N.E.2d at 631. "Probable cause" is defined as "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *McDaniel v. City of New York*, 585 F. Supp. 3d 503, 518 (S.D.N.Y. 2022) (quotation omitted). *See also Perryman v. Village of Saranac Lake*, 41 A.D.3d 1080, 839 N.Y.S.2d 290, 292 (3d Dep't 2007) (defining probable cause as "such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty."). "Because obviously less in the way of grounds of belief will be required to justify a reasonable man in bringing a civil rather than a criminal suit, when the underlying action is civil in nature, the want of probable cause must be patent." *Butler v. Ratner*, 210 A.D.2d 691, 693, 619 N.Y.S.2d 871, 873 (3d Dep't 1994) (citations and internal quotation marks omitted). Thus, if a defendant "had probable cause to assert *some* of their causes of action, [a] plaintiff[ ] [cannot] maintain a malicious prosecution claim." *Perryman*, 41 A.D.3d at 1082, 839 N.Y.S.2d at 292 (emphasis in the original).

Determining "the propriety of defendants' conduct [in bringing the prior action], is to be decided by the facts as they appeared to be at the time the prosecution was instituted, not after the action has been determined." *Levitin v. Miller*, No. 92–CV–520, 1994 WL 376078, at *5 (S.D.N.Y. July 15, 1994) (citing *Marion Steel Co. v. Alderton Dock Yards, Ltd.*, 223 A.D. 741, 227 N.Y.S. 678 (1st Dep't 1928)).  Moreover, a presumption of probable cause may exist as a result of a "judicial determination, whether final or preliminary," which previously reviewed the evidence and found it sufficient. *Rubin v. Lutfy*, 25 Misc.3d 1242(A), 906 N.Y.S.2d 783, 784 (Sup. Ct. 2009), *judg't entered*, (N.Y. Sup. Ct. 2010) ("A prior judicial recognition of potential merit of the underlying case creates a presumption that it did not lack probable cause.") (citing *Fink v. Shawangunk Conservancy, Inc.*, 15 A.D.3d 754, 790 N.Y.S.2d 249 (3d Dep't 2005), and *Black v. Green Harbour Homeowners' Ass'n., Inc.*, 37 A.D.3d 1013, 829 N.Y.S.2d 764 (3d Dep't 2007))).

### i.    A ruling by the Court in the SDNY Action created a presumption of probable cause.

In the SDNY Action, Mr. Carter's attorneys went to extraordinary lengths to try to strike the amended complaint by arguing (as they allege in the Complaint in this case) that the "revelations from the NBC interview" show that the amended complaint's allegations were "baseless."  *Doe v. Combs, et al.*, 1:24-cv-07975-AT, (Doc. 48); *see also id.* at (Docs. 38, 41, 42, 46, 48).  However, the Court in the SDNY Action *denied* Mr. Carter's motion *on the merits*.  *Id.* at (Doc. 53) and *id.* at fn. 2 ("On the merits, Carter's motion to strike is denied.").  This ruling was "a recognition of the potential merit of [the] prior action" and "is either prima facie evidence of probable cause to initiate the prior proceeding or conclusive evidence of the same," thereby creating a presumption of probable cause.  *Tray Wrap, Inc.*, 856 N.Y.S.2d 503 at *14 (collecting cases); *see also Rubin*, 906 N.Y.S.2d at 784 ("A prior judicial recognition of potential merit of the underlying case creates a presumption that it did not lack probable cause.").

ii.     **The Complaint fails to rebut this presumption or show that Defendants lacked probable cause to file the SDNY Action and the amended complaint at issue.**

To support his malicious prosecution claim, Mr. Carter points only to information that was revealed for the first time in an NBC News article published on December 13, 2024. However, that was ***after*** Defendants filed the SDNY Action in October 2024 and amended it to include Mr. Carter on December 8, 2024. This timing is important, because the question of whether Defendants had probable cause to file the SDNY Action must be decided based on "the facts as they appeared to be ***at the time the prosecution was instituted***, not after the action has been determined." *Levitin*, No. 92–CV–520, 1994 WL 376078, at *5 (S.D.N.Y. July 15, 1994) (citing *Marion Steel Co.*, 227 N.Y.S. at 678) (emphasis added).

Mr. Carter's Complaint alleges no facts that sufficiently show that Defendants lacked probable cause, as a matter of New York law, to bring the SDNY Action and the amended complaint at issue ***at the time of filing***. Instead, the Complaint merely references information that was not revealed until ***after*** Defendants filed the SDNY Action and the amended complaint at issue. These allegations, even if true, cannot form the basis of a malicious prosecution claim as a matter of law.[3] *Levitin*, 1994 WL 376078, at *5. Consequently, Mr. Carter's malicious prosecution claim fails to state a claim upon which relief can be granted.

---

[3] All of the Complaint's other statements regarding probable cause are mere unsupported legal conclusions that should be disregarded. *McDaniel v. City of New York*, 585 F. Supp. 3d 503, 518 (S.D.N.Y. 2022), *report and recommendation adopted*, No. 19CIV11265ATRWL, 2022 WL 874769 (S.D.N.Y. Mar. 24, 2022) (dismissing plaintiff's malicious prosecution claim because complaint's allegations regarding "probable cause" were "only conclusory statements without any supporting factual allegations" and "[w]ithout more, the Court cannot find that [the plaintiff] has overcome the presumption of probable cause").

### 3.  The SDNY Action did not terminate in Mr. Carter's favor, because it was voluntarily dismissed as part of an agreement and compromise.

When a plaintiff voluntarily dismisses a prior civil action resulting from an inducement from the defendant or as part of an agreement, compromise, or settlement with the defendant, no malicious prosecution claim can be sustained because, as a matter of law, that result does not constitute a termination in the plaintiff's favor. *See, e.g., Mobile Training & Educ., Inc. v. Aviation Ground Sch. of Am.*, 28 Misc. 3d 1226(A), 958 N.Y.S.2d 61, at *8 (Sup. Ct. 2010) ("It is settled that if the case was voluntarily dismissed as a result of a settlement or compromise, it would not support a claim for malicious prosecution."); *Levy's Store, Inc. v. Endicott–Johnson Corp.*, 272 N.Y. 155, 5 N.E.2d 74 (N.Y. 1936) (holding that a prior action was not a favorable termination when it was "terminated without regard to its merits or propriety by agreement or settlement of the parties or solely by the procurement of the accused as a matter of favor or as the result of some act, trick or device preventing action and consideration by the court"); *Aquilina v. O'Connor*, 59 A.D. 2d 454, 399 N.Y.S.2d 919, 921 (1977) (holding that, "in the absence of a compromise or inducement offered by the defendant in the primary action, the voluntary discontinuance by the plaintiff therein is tantamount to a successful termination of such action in favor of the defendant therein").[4]

---

[4] *See also, e.g., Pagliarulo*, 30 A.D.2d 840, 293 N.Y.S.2d 13 (holding that the defendant's dismissal of the prior action was not a favorable termination because it was dismissed pursuant to an agreement between the parties); *Loeb v. Teitelbaum*, 77 A.D. 2d 92, 101, 432 N.Y.S.2d 487, 493 (2d Dep't 1980), *amended*, 80 A.D. 2d 838, 439 N.Y.S.2d 300 (2d Dep't 1981) (explaining that a prior action was "not a favorable termination" if the voluntary dismissal was "procured by an agreement or compromise with the [plaintiff]"); *Smith-Hunter v. Harvey*, 95 N.Y.S.2d 191, 196, 734 N.E.2d 750, 753 (N.Y. 2000) (holding that a "termination is not favorable" to the plaintiff if dismissed "pursuant to a compromise with the [plaintiff]"); *Rubin*, 906 N.Y.S.2d 783 (finding that "where a defendant withdrew its prior civil action against the plaintiff as part of a settlement agreement, it cannot be said that the prior action was terminated in the plaintiff's favor"); *Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 287 (E.D.N.Y. 2014) ("It is well-settled that an action terminated by settlement cannot sustain a malicious prosecution claim.").

In the present case, Mr. Carter cannot satisfy the "favorable termination" element, because the SDNY Action was dismissed as the result of an agreement, compromise, or settlement.[5] On February 1, 2025, John Quinn, a partner and founder of Quinn Emanuel, and his partner Alex Spiro ("Mr. Spiro"), Mr. Carter's lead attorney in the SDNY Action, emailed Marc Kasowitz, who was a New York attorney representing Doe and Mr. Buzbee in the SDNY Action, to discuss a possible global resolution of the dispute involving Mr. Carter, Jane Doe, and the Buzbee Defendants. *See* Declaration of Marc E. Kasowitz,[6] attached hereto as Exhibit 2, at ¶ 5. Thereafter, Mr. Kasowitz and Mr. Spiro engaged in such discussions that resulted in a negotiated resolution. *Id.* at ¶¶ 5-6. On February 4, 2025, Mr. Kasowitz emailed Mr. Spiro and made the following offer of compromise:[7]

> Spiro, here is our proposal:
>
> 1.  You and your clients, Jay Z and ROC Nation, will withdraw the Rule 11 motion.
>
> 2.  Ten (10) days later, plaintiff will withdraw the complaint with prejudice.
>
> 3.  You and your clients and their agents will not authorize, employ or otherwise engage investigators or anyone else to harass or otherwise interact with my client, his law firm or his present and former clients, employees and family. Neither you nor your client is admitting that you have done or known about it, just a commitment that you won't.

---

[5] Although Mr. Carter alleges the SDNY Action was "dismiss[ed] with prejudice, *without settlement*," [Doc. 1 at ¶ 8] (emphasis added), this allegation is demonstrably false.

[6] The Kazowitz Declaration attached hereto as Exhibit 2 was originally submitted in the California Action.

[7] In considering a motion to dismiss under Rule 12(b)(6), the Court's analysis is generally limited to the four corners of the complaint and the attached exhibits. *See Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 at n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity"). A motion under Rule 12(b)(6) or 12(c) must be converted to a motion for summary judgment where matters outside the pleadings are presented to and not excluded by the court. Fed. R. Civ. P. 12(d).

*Id.* at ¶ 6 and Ex. A to Kasowitz Declaration.  In response to this proposal, Mr. Spiro emailed Mr. Kasowitz and confirmed Mr. Carter's agreement by stating "OK," *id.*, and then promptly filed a letter with the Court in the SDNY Action withdrawing his client's Rule 11 motion in compliance with the agreement.  *Doe v. Combs, et al.*, 1:24-cv-07975-AT, (Doc. 83); Kazowitz Declaration at ¶ 7.  Then, ten days later as agreed, Doe voluntarily dismissed the SDNY Action.  *Id.* at (Doc. 91); Kazowitz Declaration at ¶ 8.

These facts demonstrate that the SDNY Action was dismissed as the result of an agreement, compromise, or settlement between the parties in that action.  *Putnam v. Otsego Mut. Fire Ins. Co.*, 41 A.D. 2d 981, 343 N.Y.S.2d 736, 738 (3d Dep't 1973), *modified*, 360 N.Y.S.2d 331 (3d Dep't 1974) (defining a "compromise and settlement" as "an agreement or arrangement by which, in consideration of mutual concessions, a controversy is terminated.").  Alternatively, at the very least, Mr. Carter's attorney's actions of stating "OK" in response to the settlement proposal and then withdrawing the Rule 11 motion, which further communicated Mr. Carter's agreement with the proposal, constituted an "inducement" that caused Doe to dismiss the SDNY Action, which also bars Mr. Carter's malicious prosecution claim.  *Aquilina*, 399 N.Y.S.2d at 921 (holding that a voluntary dismissal is not a termination in the plaintiff's favor if there is an "inducement offered by the defendant").

For these reasons, Mr. Carter's malicious prosecution claim fails as a matter of New York law, because Plaintiff cannot show that the SDNY Action was terminated in Mr. Carter's favor.

### 4.    The Complaint fails to sufficiently allege that the SDNY Action caused Mr. Carter to suffer "special injury" under New York law.

When a plaintiff brings a malicious prosecution claim based on a prior civil action, "the plaintiff must also show that special damages resulted from the action."  *Sankin v. Abeshouse*, 545 F. Supp. 2d 324, 327 (S.D.N.Y. 2008) (citing *Engel*, 711 N.E.2d 626, *Honzawa v. Honzawa,* 268

A.D.2d 327, 701 N.Y.S.2d 411 (1st Dep't 2000), and *Dudick v. Gulyas*, 277 A.D.2d 686, 716

N.Y.S.2d 407 (3d Dep't 2000)).  Answering a certified question posed by the Second Circuit Court

of Appeals, in *Engel v. CBS, Inc.*, 711 N.E.2d 626, the New York Court of Appeals insisted that,

despite criticism by commentators, *id.* at 629, proof of "special injury [is] a necessary [component]

of a malicious prosecution" claim. *Id.* The Court concluded that "the concept of added grievance

ensures that plaintiffs remain relatively free from the threat of retaliatory lawsuits in bringing their

good faith claims." *Id.* at 630.

In *Engel*, the New York high court, for the first time in decades, if not centuries, clarified

what type of harm was needed to plead or prove "special harm" for a malicious prosecution claim.

It rejected the historical requirement that there be "interference with person" as in an arrest, *id.* at

631, and dispensed with the prerequisite of a "provisional remedy." *Id.* Yet, it made clear:

> [W]hat is "special" about special injury is that the defendant must abide
> some concrete harm that is considerably more cumbersome than the
> physical, psychological or financial demands of defending a lawsuit. This
> standard strikes the balance required between discouraging excess litigation
> on the one hand and prohibiting the malicious use of the courts on the other.

*Id.* The *Engel* court found that the plaintiff-attorney's allegedly increased "amount of time and

costs of rendering adequate counsel," the claimed damages arising from his legal defense of his

client in a separate pending action, did "not rise to the level of atypical consequences of a lawyer

being sued." *Id.* at 632. Rather, the court concluded that "nothing in the specific facts presented to

us gives us a basis for concluding that the burden, financial or otherwise, of strategizing around

the conflict was substantially beyond that which would be typical of similar litigation." *Id.*

Since *Engel*, New York state and federal courts have routinely held that a plaintiff's

complaint must plead specific "special injury," "which must entail "some concrete harm that is

considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit." *Sankin*, 545 F. Supp. 2d at 328 (citing *Engel,* 711 N.E.2d at 631).

In his Complaint, Mr. Carter alleges that "Doe's frivolous lawsuit . . . caused Mr. Carter to suffer actual and special damages, including, but not limited to, harm to his personal and professional reputation, harm to his business entity, Roc Nation—which resulted in his business suffering substantial losses in excess of $20 million—out-of-pocket loss, and emotional harm, humiliation, and harassment." [Doc. 1 at ¶ 73.] These allegations, however, fail for two reasons. First, these allegations are unsupported legal conclusions that this Court should disregard, which means there are no well-pled allegations concerning special injury at all. And second, the *types* of damages identified in these unsupported legal conclusions do not, under New York law, qualify as "special injury" as required to sustain a malicious prosecution claim.

> **i.    The Complaint lacks any well-pleaded allegations regarding "special injury" because the Complaint's statements regarding "special injury" are unsupported legal conclusions that this Court must disregard.**

Ordinarily, trial courts must take the complaint's factual allegations as true when evaluating a motion to dismiss under Rule 12(b)(6). However, that rule "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 663; *see also Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). That is because "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. So when a plaintiff's complaint contains

mere legal conclusions without supporting factual allegations, the court must disregard the legal conclusions in its analysis of the motion. *Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d at 1290 (explaining that courts are to "eliminate any allegations in the complaint that are merely legal conclusions" and then consider only the "well-pleaded factual allegations" and determine "whether they plausibly give rise to an entitlement to relief") (citations omitted). This rule also applies when a plaintiff attempts to disguise a legal conclusion as a factual allegation. *Iqbal*, 556 U.S. at 678 (explaining that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). For that reason, "unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (citations omitted).

In *Garcia v. Diaz*, the plaintiff sued his former attorney for breach of contract, but alleged only that the defendant had "breached their contract" and had "wholly failed to perform the duties of his representation." 752 F. App'x 927, 931 (11th Cir. 2018). In affirming the trial court's dismissal of the breach of contract claim, the Eleventh Circuit held that, without more, the complaint's statements were mere conclusions couched as factual allegations and, therefore, were insufficient to state a claim for breach of contract. *Id.* at 930 ("The Complaint's allegation that [the defendant] 'breached their contract' [was] legally insufficient on each of the elements…."); *id.* at 931 ("Without more allegations, [the plaintiff]'s assertion that [the defendant] 'wholly failed to perform the duties of his representation' is nothing more than a 'legal conclusion couched as a factual allegation.'") (citing *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 555). In explaining its holding, the Eleventh Circuit reasoned that "[t]he Complaint does not allege ***how*** [the defendant] materially breached the contract." *Garcia*, 752 F. App'x at 930-931 (emphasis added). *See also Edmondson v. Raniere*, 751 F. Supp. 3d 136, 191-92 (E.D.N.Y. 2024) (dismissing

malicious prosecution claim under New York law because the plaintiff failed to "identif[y] [any] 'specific and measurable loss'") (citations omitted). *See also TADCO Const. Corp. v. Dormitory Auth.*, 700 F. Supp. 2d 235, 274 (E.D.N.Y. 2010) (dismissing malicious prosecution and abuse of process claims because plaintiff omitted to "identify actual losses" in a specified dollar amount).

In the present case, Mr. Carter's Complaint states that "Doe's frivolous lawsuit … caused Mr. Carter to suffer actual and special damages, including, but not limited to, harm to his personal and professional reputation, harm to his business entity, Roc Nation—which resulted in his business suffering substantial losses in excess of $20 million—out-of-pocket loss, and emotional harm, humiliation, and harassment."  [Doc. 1 at ¶ 73.] However, that allegation is a legal conclusion lacking factual support.  For example, the Complaint does not allege *how* Mr. Carter's personal and professional was supposedly harmed; *how* his business supposedly suffered "substantial losses"; specifically *what* business did his company supposedly lose, and *from whom*; *how* he, individually, can legally claim damages allegedly suffered by a separate legal entity; *how* he supposedly suffered "out-of-pocket loss" and *what* those losses supposedly were; or *how* he supposedly suffered emotional harm, humiliation, and harassment.  The Complaint's allegations regarding special injury are, therefore, merely conclusory statements that this Court must disregard.  Consequently, this Court should find that Mr. Carter's Complaint fails to sufficiently allege that Mr. Carter has suffered special injury.

### ii. The Complaint's allegations regarding special damages do not constitute "special injury" under New York law.

In addition to the fact that Mr. Carter's Complaint contains only insufficient legal conclusions regarding "special injury," the *types* of damages alleged in conclusory fashion do not qualify as "special injury" under New York law.

### a.    Alleged reputational harm

First, Mr. Carter alleges that he suffered "harm to his personal and professional reputation." [Doc. 1 at ¶ 73.]  However, it is well settled that such alleged harm does not qualify as "special injury" under New York law.  *Engel v. CBS Inc.*, 961 F. Supp. 660, 663 (S.D.N.Y. 1997), *aff'd*, 182 F.3d 124 (2d Cir. 1999) (finding that an alleged "injury to reputation" is "insufficient as a matter of law to constitute the special injury required for a malicious civil prosecution action"); *Campion Funeral Home v. State*, 166 A.D.2d 32, 569 N.Y.S.2d 518 (3d Dep't 1991) (finding that an alleged "[i]njury to reputation" is insufficient to qualify as special injury necessary for malicious prosecution claim); *Rubin,* 906 N.Y.S.2d 783 (Sup. Ct. 2009) ("conclusory claim of reputational harm" insufficient to state special injury); *Loftus v. Arthur*, 16 Misc.3d 1126(A), 847 N.Y.S.2d 902 (Sup. Ct. 2007) (noting that "incidental damage to [a] plaintiff's reputation is insufficient" to state a special injury).

The New York Court of Appeals' decision in *Engels v. CBS, Inc.* is also instructive. 711 N.E.2d 626. There, the Court ruled that the plaintiff-attorney's alleged reputational injury or damage "fail[s] to muster the requisite special injury," and affirmed dismissal of the malicious prosecution claim. *Id.* at 632. Rather, the Court held that "the loss of one client along with vague allegations of reputational loss, given [the plaintiff's] established practice, are not sufficient. *Id.*

Therefore, Mr. Carter's conclusory allegation that he suffered "harm to his personal and professional reputation" [Doc. 1 at ¶ 73] does not constitute the special injury required to sustain a malicious prosecution claim under New York law.

### b.    Alleged harm suffered by Mr. Carter's separate business entity, Roc Nation

Second, Mr. Carter claims that he, *personally*, suffered special damages that include "harm to his business entity, Roc Nation—which resulted in his business suffering substantial losses in

excess of $20 million." [Doc. 1 at ¶ 73.] This allegation is insufficient to show special injury for two reasons.

First, and perhaps most obvious, any alleged "harm to [Mr. Carter's] business entity, Roc Nation," means simply that: harm to *his business entity*, which is a legal entity that exists separate and apart from Mr. Carter. A tort plaintiff cannot personally claim or recover damages that supposedly were suffered by a separate person or legal entity. Consequently, Mr. Carter's allegation should be interpreted to mean what it says: that his company (who is not a plaintiff), and not Mr. Carter himself, allegedly suffered damages. Such an allegation is insufficient to show that Mr. Carter himself suffered any such damages.

Second, the Complaint fails to allege business losses with sufficient specificity and verifying factual information. "In order for a claim of lost business to meet the special injury standard, it must be specific and verifiable." *Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 293 (E.D.N.Y. 2014); *see also Engel v. CBS, Inc.*, 182 F.3d at 132 (explaining that a plaintiff must allege "specific, verifiable loss of business" to provide "the necessary grievance" to show special injury). This requires the plaintiff to "sufficiently identif[y] the specific business lost as a result of the civil proceeding." *Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC*, No. 11 Civ. 3327(ER), 2013 WL 417406, at *14 (S.D.N.Y. Feb. 4, 2013).

Here, the Complaint alleges merely that Mr. Carter's company suffered losses without providing any further details, much less the type of specificity and verifying factual information that New York law requires. Consequently, Mr. Carter's allegations regarding business losses fail to sufficiently show special injury under New York law.

### c. Alleged out-of-pocket loss, emotional harm, humiliation, and harassment

Third, Mr. Carter claims that the SDNY Action caused him to suffer "special damages" that include unspecified "out-of-pocket loss," as well as "emotional harm, humiliation, and harassment." [Doc. 1 at ¶ 73.] As explained below, these types of alleged damages do not constitute special injury under New York law.

As explained above, a plaintiff's malicious prosecution allegations concerning "special injury" must entail "some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit." *Korova Milk Bar*, 2013 WL 417406, at *14 (citing *Sankin*, 545 F. Supp. 2d at 328, and quoting *Engel,* 711 N.E.2d at 631) (internal citation marks omitted). For that reason, the "attorneys' fees and cost associated with defending a lawsuit do not rise to the level necessary to show special damages." *Liberty Synergistics, Inc.*, 50 F. Supp. 3d at 293–94 (quoting *McCaul v. Ardsley Union Free School Dist.,* 514 F. App'x. 1, 6 (2d Cir. 2013); *Engel*, 711 N.E.2d at 631; *Sankin,* 545 F. Supp. 2d at 328; *Mobile Training*, 958 N.Y.S.2d 61 ("[T]he expense of defending against the [underlying] lawsuit ... is decidedly not special."); *Zhang v. Goff*, No. 25918/2006, 2008 WL 465290 at *3 (Sup. Ct. 2008) ("[L]egal fees do not meet 'the special injury requirement."). Likewise, allegations that the plaintiff suffered emotional distress or other psychological harm as a result of defending the lawsuit do not show special injury. *In re Eerie World Ent., L.L.C.*, No. 00-13708 (ALG), 2006 WL 1288578, at *8, fn. 10 (Bankr. S.D.N.Y. Apr. 28, 2006) (finding that allegations of "harassment and intimidation" and "damages in the form of attorney's fees, legal expenses, harm to reputation and emotional damage and mental stress … cannot be considered special damages under New York law") (citations omitted); *Engel v. CBS Inc.*, 961 F. Supp. at 663 (finding that "injury to reputation and emotional

distress … are insufficient as a matter of law to constitute the special injury required for a malicious civil prosecution action").[8]

Consequently, Mr. Carter's allegations that he suffered "out-of-pocket loss," emotional harm, humiliation, and harassment as a result of the SDNY Action do not constitute special injury under New York law.

### c.    Mr. Carter fails to state a claim for abuse of process.

"An action alleging abuse of process is one where the plaintiff seeks compensation for the improper use of process after the same has been issued." *Tray Wrap, Inc.*, 856 N.Y.S.2d 503, at *15 (citations omitted). Process is a "direction or demand that the person to whom it is directed shall perform or refrain from the doing of some prescribed act." *Id.* (quoting *Williams v. Williams*, 23 N.Y. 2d 592, 246 N.E.2d 333 (N.Y. 1969)).

"The gravamen of an abuse of process claim is the perversion of process, lawfully issued, to accomplish a purpose not consonant with the nature of the process employed." *Tray Wrap, Inc.*, 856 N.Y.S.2d 503, at *15 (citing *Board of Education of Farmingdale Union Free School District v. Farmingdale Classroom Teachers Association, Inc.*, 38 N.Y.2d 397, 343 N.E.2d 278 (N.Y. 1975)). "To the extent that public policy mandates open access to the courts for the redress of wrongs while concomitantly penalizing those who manipulate proper legal process to achieve a collateral advantage, a cause of action for abuse of process lies not for the commencement of an

---

[8] *See also, e.g., Molinoff v. Sassower*, 99 A.D. 2d 528, 471 N.Y.S.2d 312, 313 (2d Dep't 1984) (affirming dismissal of plaintiff's complaint because the allegation that plaintiff "was required to 'bear the severe psychological burden of being a defendant in a law suit for which he had no insurance coverage for punitive damages'" did not sufficiently allege special injury required for a malicious prosecution claim); *Engel v. CBS, Inc.*, 93 N.Y.2d at 207 (holding that the plaintiff's allegations that he "suffered emotional and financial harm" as a result of a lawsuit did not rise to "the degree necessary to constitute special injury" to sustain a malicious prosecution claim).

action but for the perversion of the process after it is commenced." *Id.*; *Pagliarulo v. Pagliarulo*, 30 A.D.2d 840, 293 N.Y.S. 2d 13 (2nd Dep't 1968).

To sufficiently state an abuse of process claim, a plaintiff must demonstrate that defendant: (1) caused the issuance of regularly issued process either criminal or civil; (2) with the intent to do harm without excuse or justification; and (3) that the process was perverted to obtain a collateral advantage. *Tray Wrap, Inc.*, 856 N.Y.S.2d 503 (citations omitted). In addition, a plaintiff must also show that the process unlawfully interfered with the plaintiff's person or property. *Id.* (citations omitted). "Actions generally giving rise to an abuse of process claim, by virtue of their interference with person and property, are actions for attachment, execution, garnishment, sequestration, arrest, criminal prosecution, and the issuance of a subpoena." *Id.* (citing *Williams*, 23 N.Y.2d 592; *Hauser v. Bartow*, 273 N.Y. 370, 7 N.E.2d 268 (N.Y. 1937)).

1.     **Mr. Carter's abuse of process claim fails because it is based on the filing of a complaint, which, as a matter of New York law, cannot give rise to an abuse of process claim.**

Plaintiff's Complaint acknowledges that the SDNY Action was voluntarily dismissed with prejudice mere months after Doe filed the amended pleading naming Mr. Carter. [Doc. 1 at ¶ 8.] Yet, it is the Buzbee Defendants' filing of the amended complaint in the SDNY Action, not any alleged wrongdoing following the filing, on which Mr. Carter bases his abuse of process claim. [*Id.* at ¶ 85 (alleging that "Defendants acted with malice in *pursing* and *initiating* the meritless lawsuit against Mr. Carter").] This is legally insufficient under New York law and, therefore, this claim, too, must be dismissed for failure to state a claim upon which relief can be granted.

The filing of a complaint, even if filed for malicious motives, "does not by itself give rise to a cause of action for abuse of process." *Tray Wrap, Inc.*, 856 N.Y.S.2d 503 (citing *Curiano v. Suozzi*, 63 N.Y.2d 113, 469 N.E.2d 1324 (N.Y. 1984), *Hauser v. Bartow*, 273 N.Y. 370, *Syllman*

*v. Nissan*, 18 A.D. 3d 221, 794 N.Y.S. 2d 351 (1st Dep't 2005), *I.G. Second Generation Partners,*

*L.P. v. Duane Reade*, 17 A.D. 3d 206, 793 N.Y.S. 2d 379 (1st Dep't 2005), *Walentas v. Johnes*,

257 A.D.2d 352, 683 N.Y.S. 2d 56 (1st Dep't 1999), and *Solomon v. Barr*, 168 Misc. 439, 5 N.Y.S.

2d 753 (Sup. Ct., New York County 1938)). This is because "[t]he action is not for the wrongful

bringing of an action or prosecution, but for the improper use, or rather, abuse of process in

connection therewith . . . , for a perversion of legal process." *Tray Wrap, Inc.*, 856 N.Y.S.2d 503

(quoting *Hauser*, 273 N.Y. at 373–374). "Thus, it is well settled that the commencement of a civil

action by way of summons and complaint does not by itself give rise to an action for abuse of

process insofar as said process is not process capable of being abused." *Tray Wrap, Inc.*, 856

N.Y.S.2d 503; *see also Tsafatinos v. Ward*, 177 Misc. 2d 590, 676 N.Y.S.2d 748, 752 (Civ. Ct.

1998) (finding that "[b]ecause plaintiff failed to set forth any facts at all to indicate that [the]

defendant instituted regularly issued process for other than its proper purpose, [the] allegations

[were] clearly insufficient to make out the abuse of process claim" and the "allegation that [the]

defendant knowingly commenced a meritless" lawsuit was "insufficient because the 'mere

institution of a civil action ... is not legally considered process capable of being abused.'")

(quotation omitted); *Ann-Margret v. High Soc. Mag., Inc.*, 498 F. Supp. 401, 407 (S.D.N.Y. 1980)

("[I]t has been held that a summons and complaint are not process capable of being abused.").

In *Curiano*, a group of plaintiffs filed a claim for abuse of process against an attorney and

his law firm. The claim was based on the plaintiffs' allegation that the defendant and his firm had

acted maliciously by filing a prior defamation lawsuit that was purportedly baseless. 469 N.E.2d

1324. In affirming the lower court's dismissal of the abuse of process claim, the New York

Supreme Court reiterated that "the institution of a civil action by summons and complaint is not

legally considered process capable of being abused." *Id.* at 1326 (collecting cases). Instead,

dismissal was warranted because "plaintiffs have not alleged the "'gist of the action for abuse of process,'" which is "'the improper use of process *after it is issued*.'" *Id.* (quoting *Williams*, 298 N.Y.S.2d 473; *Dean v. Kochendorfer*, 237 N.Y.384, 143 N.E. 229 (N.Y. 1924); *Miller v. Stern*, 262 App. Div. 5, 8, 27 N.Y.S.2d 374 (1st Dep't 1941))) (emphasis added). The *Curiano* Court held that the plaintiffs "do not contend that the summons issued by defendants was improperly used after it was issued but only that defendants acted maliciously in bringing the action. A malicious motive alone, however, does not give rise to a cause of action for abuse of process." *Id.* at 1326 (citing *Hauser*, 273 N.Y. 370, 374).

Similarly, Mr. Carter's Complaint asserts only that the Buzbee Defendants are liable for abuse of process because they filed a complaint that, in Mr. Carter's view, was without merit. [Doc. 1 at ¶¶ 76-88.] But because the mere filing of a complaint cannot form the basis of an abuse of process claim, and there are no allegations in the Complaint that allege the improper use of process after it was issued, Mr. Carter's abuse of process claim fails.

### 2.   Mr. Carter's abuse of process claim fails to the extent it is based on matters that allegedly occurred outside the judicial process.

Other than filing the original and amended complaint in the SDNY Action, the only other alleged misconduct identified by Mr. Carter in the Complaint is that Mr. Buzbee, on behalf of Doe, sent Mr. Carter's attorneys a demand letter attempting to settle Doe's claims. [*See* Doc. 1 at ¶¶ 2, 4.] Although the Complaint declines to acknowledge this letter as a settlement demand [*see id.* at ¶ 8], Mr. Carter's allegations in the California Action acknowledge that the letter was, in fact, a request to settle. *See* California Action Am. Compl. at ¶¶ 3, 29 (admitting that the letter communicated that Doe wanted "something of substance <u>by way of a settlement</u>") (emphasis added) (internal quotations omitted). Because these letters relate to an agreement, compromise, or

settlement, they are legally considered non-judicial and cannot form the basis of an abuse of process claim under the law of New York.

New York law is clear that "[s]ettlement attempts, however coercive or overbearing, do not alone directly involve the 'judicial process' and thus cannot suffice to form the basis for an abuse of process claim." *Tsafatinos v. Ward*, 676 N.Y.S.2d at 753 (citing *Varela v. Investors Insurance Holding Corp.*, 185 A.D. 2d 309, 586 N.Y.S.2d 272 (2d Dep't 1992) (citations omitted), *aff'd*, 81 N.Y.2d 958, 961, 615 N.E.2d 218 (N.Y. 1993) (dismissing plaintiff's abuse of process claim based on alleged extortion because it occurred outside of the judicial process). "[W]here the complaint fails to allege some irregular activity *in the use of judicial process* for a purpose not sanctioned by law, or that the process unlawfully interfered with the plaintiff's property, an action to recover damages based upon the alleged abuse of process must fail." *Colonna v. Banco Popular N. Am.*, No. 8024/2010, 2010 WL 5545765 (N.Y. Sup. Ct. Nov. 29, 2010) (emphasis added) (citations omitted); *see also Remley v. State*, 174 Misc. 2d 523, 525, 665 N.Y.S. 2d 1005 (Ct. Cl. 1997) (dismissing abuse of process claim due to failure "to allege … the issuance of any process or an improper use of process").

Consequently, based on these authorities, Mr. Carter's abuse of process claim also fails as a matter of New York law to the extent it is based on the settlement demand letter that occurred outside the judicial process.

### 3.    Mr. Carter's abuse of process claim fails because he does not sufficiently allege that the process unlawfully interfered with his person or property.

To sufficiently state an abuse of process claim, after satisfying all of the other elements, a plaintiff must show that the process unlawfully interfered with the plaintiff's person or property. *Tray Wrap, Inc.*, 856 N.Y.S.2d 503 (citations omitted). To do so, a plaintiff must allege that he or

she was "compelled to give up a legal right or to do something that was not required of them."
*Dorak v. County of Nassau of State of New York*, 329 F. Supp. 497, 501 (E.D.N.Y.1970) (citing
*The Savage Is Loose Co. v. United Artists Theatre Cir., Inc.*, 413 F. Supp. 555, 562 (S.D.N.Y.
1976)).

For the same reasons discussed above in pages 26-34, Mr. Carter fails to allege sufficient
facts that rise to the level of the special damages required for such a claim. *Ann-Margret v. High
Soc. Mag., Inc.*, 498 F. Supp. at 407 (finding that an alleged "interference" that "results in a loss
of business, injury to reputation, or expense arising from the litigation" does not "constitute the
type of interference with person or property necessary to sustain an abuse of process claim").

    **d.**    **The Complaint fails to state a claim for civil conspiracy.**

Mr. Carter's third claim against the Buzbee Defendants fails as a matter of law for several
reasons. First, civil conspiracy cannot stand alone as an independent tort if Mr. Carter's first two
claims, for malicious prosecution and abuse of process, fail as a matter of law. Second, New York
bars an "intracorporate" civil conspiracy. Third, a lawyer acting within the course and scope of his
representation cannot "conspire" with his client, because he is acting as an agent of the client in
the representation.

    **1.**    **If the malicious prosecution and abuse of process claims fail, then, as a
matter of law, the civil conspiracy claim also fails.**

"New York does not recognize civil conspiracy to commit a tort as an independent cause
of action[.]" *25-86 41st St., LLC v. Guzman*, 234 A.D. 3d 649, 650, 226 N.Y.S.3d 107, 110 (2025)
(citing *McSpedon v. Levine*, 158 A.D. 3d 618, 621, 72 N.Y.S.3d 97 (2nd Dep't 2018); *Alexander
& Alexander of N.Y., Inc. v. Fritzen*, 68 N.Y.2d 968, 503 N.E.2d 102 (N.Y. 1986)).  Therefore, to
sustain a civil conspiracy claim, "a plaintiff [must] plead the existence of a conspiracy in order to
connect the actions of the individual defendants with an actionable, underlying tort, and establish

that those actions were part of a common scheme." *Id.* "[I]n order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement." *Guzman*, 226 N.Y.S.3d at 110 (quoting *Clevenger v. Yuzek*, 222 A.D. 3d 931, 203 N.Y.S.3d 114 (2nd Dep't 2023)). Like Alabama law, a claim for civil conspiracy under New York law "requires the existence of an independent tort to provide a basis for liability." *Id.* (citing *Brenner v. American Cyanamid Co.*, 288 A.D. 2d 869, 732 N.Y.S.2d 799 (4th Dep't 2001) and *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 720 N.E.2d 892 (N.Y. 1999)). As demonstrated above, both of Mr. Carter's tort claims against the Buzbee Defendants are due to be dismissed. Therefore, because there are no actionable torts against the Buzbee Defendants, Mr. Carter's civil conspiracy claim against them also fails.

### 2. Mr. Buzbee and Mr. Fortney cannot conspire with The Buzbee Firm under the intracorporate civil conspiracy bar.

Second, even if Mr. Carter's separate claims for malicious prosecution or abuse of process survive dismissal, Mr. Carter's civil conspiracy claim still must be dismissed as a matter of law due to the bar on intracorporate civil conspiracies.

Under New York law, "[t]o establish a claim of civil conspiracy, a plaintiff must demonstrate the underlying tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *World Wrestling Federation Entertainment, Inc. v. Bozell*, 142 F. Supp. 2d 514, 532-533 (S.D.N.Y. 2001) (citation omitted); *Cohen Bros. Realty Corp. v. Mapes*, 181 A.D.3d 401, 404, 119 N.Y.S.3d 478, 482 (1st Dep't 2020) (citation omitted). But a company cannot conspire with itself. The first element of a claim for civil conspiracy is not sufficiently alleged where the defendants are officers

or agents of a corporate defendant and are acting in the course and scope of their employment when performing the alleged wrongdoing. *See Lewis v. Friedman-Marks Clothing Co.*, 70 A.D.2d 866, 866, 418 N.Y.S. 2d 60 (1st Dep't 1979) (finding five defendants constituted "a single entity").

Here, there is no dispute that Mr. Buzbee and Mr. Fortney are attorneys who work for the Buzbee Firm, which Mr. Carter admits [Doc. 1 at ¶ 12], and in that capacity represented Doe. [*Id.* at ¶ 13.] "It is well-settled that, under the intracorporate conspiracy doctrine, an entity cannot conspire with itself." *Williams v. County of Nassau*, No. 15-CV-7098, 2017 WL 1216566, at *6 (E.D.N.Y. Mar. 30, 2017)). Under the intracorporate conspiracy doctrine, "officers, agents, and employees of a single corporate entity . . . each acting within the scope of his or her employment, are legally incapable of conspiring with each other." *Rodriguez v. City of New York*, 644 F. Supp. 2d 168, 200 (E.D.N.Y. 2008). Relying on these authorities, a federal court in New York recently granted dismissal of a plaintiff's civil conspiracy claim, which was asserted against two individual defendants, both managing members of the corporate defendants. *Kim v. NYC Green Transp. Group, LLC*, No. 23-CV-544, 2025 WL 373465, at *6 (E.D.N.Y. Feb. 3, 2025).[9]

The *Kim* Court acknowledged that "an exception to this doctrine 'applies where a plaintiff adequately alleges that each defendant possessed an independent, personal conspiratorial purpose, wholly separate and apart from the entity." *Id.* (quoting *Reich v. Lopez*, 38 F. Supp. 3d 436, 463 (S.D.N.Y. 2014) (quotation omitted)). However, in his Complaint, Mr. Carter admits that Mr. "Buzbee's and [Mr.] Fortney's conduct described in this Complaint were taken on behalf of themselves and on behalf of Defendant The Buzbee Law Firm." [Doc. 1 at ¶ 13.] Consequently,

---

[9] *See also McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1035 (11th Cir. 2000) (en banc) ("The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.")

Mr. Buzbee, Mr. Fortney, and the Buzbee Firm are, collectively, considered one "person" for purposes of a civil conspiracy claim under New York law, and the exception to the intracorporate civil conspiracy bar is not met.

### 3.    An attorney cannot conspire with his client.

Mr. Carter might argue that Mr. Buzbee, Mr. Fortney, and the Buzbee Firm, on the one hand, conspired with Doe, on the other hand, such that the presence of Doe as a third party to the conspiracy takes the claim outside of the intracorporate civil conspiracy bar. *See Farese v. Scherer*, 342 F.3d 1223 (11th Cir. 2003). However, under New York law, an attorney cannot conspire with his client.

In *Burger v. Brookhaven Medical Arts Building, Inc.*, a New York appellate court recognized:

> Inasmuch as the relationship created between an attorney and his client is that of principal and agent (*see*, 6 N.Y.Jur.2d, Attorneys at Law § 82, et seq.), an attorney is not liable for inducing his principal to breach a contract with a third person, at least where he is acting on behalf of his principal within the scope of his authority [citing cases]. **Absent a showing of fraud or collusion, or of a malicious or tortious act, an attorney is not liable to third parties for purported injuries caused by services performed on behalf of a client or advice offered to that client** [citing cases]. Moreover, it is well established that an essential element of a cause of action to recover damages for intentional interference with contractual relationships is the intentional procurement of a breach by defendant [citing cases]. At bar, the plaintiff's pleadings failed to sufficiently allege that Block or his law firm acted outside the scope of their authority.

131 A.D.2d 622, 624, 516 N.Y.S. 2d 705 (1st Dep't 1987) (emphasis added).

In *Kline v. Schaum*, 173 Misc. 2d 108, 661 N.Y.S. 2d 906 (2d Dep't 1997), a New York appeals court dismissed a claim for tortious interference with contract based on an attorney's alleged wrongdoing in connection with his preparation of closing documents. *Id.* at 110, 661

N.Y.S. 2d at 908 (finding the complaint "defective for its failure to allege that [the] defendant[-attorney] acted outside the scope of his authority as an attorney for the sellers.").

Likewise, for purposes of a civil conspiracy, a claim against an attorney or his law firm for civil conspiracy *with* the client cannot stand *unless* there are acts alleged "which go beyond the ordinary relationship of attorney and client and outside the duties which each owes to the other." *Dallas v. Fassnacht*, 42 N.Y.S. 2d 415, 416 (Sup. Ct. 1943). Rather, "an attorney in bringing an action is not liable as long as he does not do anything beyond his duties to his client." *Id.*; *see also id.* ("An attorney at law, who acts in good faith and is prompted only by professional duty and fidelity to his client, is not liable to the other party for injuries which the latter may sustain from the fact that the action was begun or prosecuted by the attorney's client, either maliciously or without probable cause. The wrong intentions of the client are not to be imputed to his attorney who was ignorant of them and who, himself, had no such intentions. This rule is absolutely imperative for the attorney's protection.") (citation omitted).

In *Dallas v. Fassnacht*, a New York court dismissed a claim for civil conspiracy lodged against an attorney and his client purportedly based on their alleged filing of a baseless action. The court ruled that these allegations "are consistent with a proper retainer and may not form a sufficient basis for a conspiracy." 42 N.Y.S. 2d at 417. The remaining allegations, the court concluded, consisted "of mere generalities and conclusions to the effect that plaintiff and her attorney acted maliciously and without cause and joined in a conspiracy and unlawful combination." *Id.* Because these were threadbare allegations and conclusory in nature, they were "palpably insufficient to sustain" a civil conspiracy action. *Id.*

Here, Mr. Carter's allegations in support of his claim for civil conspiracy are likewise lacking in adequate factual content to sustain the claim. Mr. Carter acknowledges that Mr. Buzbee

and Mr. Fortney were officers, members, or employees of the Buzbee Firm and were acting on the Firm's behalf at all times. [Doc. 1 at ¶ 14.]  The Complaint recognizes that the Buzbee Defendants were acting as Doe's legal counsel in prosecuting the SDNY Action. There are no allegations in the Complaint that take the Buzbee Defendants' conduct outside of the scope of a proper retainer, and therefore, the Complaint fails to state a claim for civil conspiracy.

For all these reasons, Mr. Carter's claim for civil conspiracy against the Buzbee Defendants must be dismissed.

## CONCLUSION

All claims asserted in the Complaint against Defendants Anthony Buzbee, David Fortney, and Anthony G. Buzbee LP should be dismissed.

Respectfully submitted,

*/s/ Matthew R. Jackson*
MATTHEW R. JACKSON (JACKM7882)
AARON G. MCLEOD (MCL053)
*Attorneys for Anthony Buzbee, David Fortney,
and Anthony G. Buzbee LP*

**OF COUNSEL**:
ADAMS AND REESE LLP
11 N. Water Street, Suite 23200
Mobile, Alabama 36602
(251) 433-3234 Main
(251) 438-7733 Fax
matt.jackson@arlaw.com
aaron.mcleod@arlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 7th, 2025, I served a copy of the foregoing upon all counsel of record via this Court's CM/ECF System.

<u>*/s/ Matthew R. Jackson*</u>
OF COUNSEL
