**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION**

| | | |
|---|---|---|
| SHAWN COREY CARTER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | NO. 1:25-cv-000086-TFM-MU |
| | * | |
| ANTHONY BUZBEE, DAVID FORTNEY, | * | |
| ANTHONY G. BUZBEE, LP (d/b/a THE | * | |
| BUZBEE LAW FIRM) and JANE DOE, | * | |
| | * | |
| Defendants. | | |

## <u>MOTION TO DISMISS</u>

Comes now, Defendant Jane Doe ("Doe"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and moves the Court to dismiss with prejudice Plaintiff Shawn Corey Carter's ("Carter") Complaint for failure to state a claim upon which relief can be granted.

## I.  <u>INTRODUCTION</u>

In accordance with the well-established legal standard for deciding Rule 12(b)(6) motions, Doe assumes, for purposes of this Motion only, the truth of Carter's allegations as asserted in the Complaint.  Even assuming the truth of Carter's allegations, Carter fails to state a claim upon which relief can be granted.

Carter's malicious prosecution claim, which must be decided pursuant to the law of New York, fails for lack of any "special injury" and because the underlying lawsuit was dismissed pursuant to an agreement.  Carter fails to state a claim for abuse of process because, among other reasons, the tort simply does not apply to the commencement of a lawsuit, even if done so with alleged malice.  Carter's defamation claim fails as a matter of law because the alleged statements of Doe, as shown by Carter's own Complaint and the materials incorporated therein, are subject

1

to California's judicial privilege or fair report privilege.  Finally, Carter fails to state a claim for civil conspiracy for lack of an independent cause of action.

These deficiencies are not curable by amendment.  Therefore, Carter's claims against Doe should be dismissed with prejudice.

## II.   CARTER'S ALLEGATIONS

Carter alleges claims of malicious prosecution, abuse of process, civil conspiracy, and defamation arising out of: (i) Doe's lawsuit against Carter (a/k/a "Jay-Z") and Sean Combs (a/k/a "Diddy," "Puff Daddy," etc.) filed in the Southern District of New York (the "underlying lawsuit"); and (ii) her statements to news media about her lawsuit.  (Docs. 1, 1-7.)  Carter contends that the allegations in the underlying lawsuit were false and that Doe initiated and prosecuted the lawsuit for malicious purposes.  (Doc. 1, PageID# 17, 20, 91.)  Carter alleges that Doe made false statements about Carter to NBC News about her lawsuit and that NBC News, when it published those statements, also pointed to "inconsistencies" that "disprove[d]" Doe's allegations.  (Doc. 1, PageID# 8-11, 15.)  Carter's Complaint incorporates the NBC News television piece and the related NBC News website article.[1]  (Doc. 1, PageID# 8, 9; Docs. 1-8, 1-9.)

## III.   LEGAL STANDARD

As the Court is aware, a Rule 12(b)(6) motion challenges the legal sufficiency of the complaint based on the assumption that the factual allegations set forth in the complaint are true. *United States v. Gaubert*, 499 U.S. 315, 327 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463

---

[1]  Carter's Complaint provides the following link to the NBC News television piece: https://www.nbcnews.com/news/us-news/jay-z-rape-accuser-comes-forward-nbc-newsacknowledges-inconsistencies-rcna183435.  (Doc. 1, PageID# 8.)  NBC broadcast the piece on television, not as a transcript like the one attached to Plaintiff's Complaint as Exhibit 4 (Doc. 1-9).  Thus, while the transcript may be useful for citing specific portions of the television piece, it is the television piece that matters under applicable defamation law.

(11th Cir. 1990). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and therefore "mere conclusory statements" are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678. A claim is facially plausible only if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556.

When resolving a motion to dismiss, a court may consider, in addition to the complaint itself, documents that are incorporated by reference. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298 (11th Cir. 2024). The incorporation-by-reference doctrine applies where the document at issue is specifically referenced in or attached to the complaint. *Id.* at 1299. The Eleventh Circuit recently clarified that the doctrine also applies even if the document is not referenced in or attached to the complaint as long as the document is central to the plaintiff's claims and its authenticity is not challenged. *Id.* at 1300. For purposes of the incorporation-by-reference doctrine, a video is treated the same as a traditional "document." *See id.* (basing affirmance of dismissal on video that was central to plaintiff's claims).

## IV.    ARGUMENT

### A.    CARTER FAILS TO STATE A CLAIM FOR MALICIOUS PROSECUTION.

Carter fails to state a claim for malicious prosecution under New York law for the following separate and independent reasons: (i) he does not allege a "special injury"; and (ii) the underlying lawsuit was dismissed pursuant to an agreement.

### 1.    New York law applies to Carter's malicious prosecution claim.

In diversity jurisdiction cases, the choice-of-law rules of the forum state determine which state's substantive law applies. *Am. Family Life Assur. Of Columbus, Ga. v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989). Alabama follows the traditional choice-of-law principle of *lex loci delicti*, which means "the law of the place of the wrong." *Lifestar Response of Alabama, Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala. 2009); *see also Ex parte U.S. Bank Nat. Ass'n*, 148 So. 3d 1060, 1069 (Ala. 2014). *Lex loci delicti* attempts to identify "the state where the last event necessary to make an actor liable for an alleged tort takes place." *U.S. Bank Nat. Ass'n*, 148 So. 3d at 1070 (quoting Restatement (First) of Conflict of Laws § 377 (1934); also citing *Fitts v. Minnesota Min. & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991)).

In the context of a malicious prosecution claim, Alabama courts reason that the "fact which create[s] the right to sue" is "the termination of the allegedly malicious lawsuit." *U.S. Bank Nat. Ass'n*, 148 So. 3d at 1070-71. Thus, under *lex loci delicti*, the law applied to a malicious prosecution claim is the law of the state where the underlying, "allegedly malicious" lawsuit was prosecuted and terminated. *Id.* at 1071 (holding that Washington law applied to a malicious prosecution claim filed in Alabama concerning an underlying lawsuit prosecuted in Washington).

Here, the "allegedly malicious lawsuit" was terminated in New York, where the initial Complaint and the Notice of Voluntary Dismissal was filed. (Doc. #1-13.) Therefore, the law of New York applies to Carter's malicious prosecution claim.

**2.    Carter fails to state a claim for malicious prosecution because he does not allege facts that would constitute a "special injury."**

Under New York law, a malicious prosecution claim based on a civil action requires that the plaintiff suffered a "special injury." Carter has not alleged any facts that come close to satisfying the special injury requirement.

The elements of a malicious criminal prosecution claim are: "(1) the initiation of an action by the defendant against the plaintiff, (2) begun with malice, (3) without probable cause to believe it can succeed, (4) that ends in failure or, in other words, terminates in favor of the plaintiff." *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996) (citing *Broughton v. State of New York*, 335 N.E.2d 310) (N.Y. 1975)). When a malicious prosecution is based on a <u>civil</u> action, there is an additional element: a "special injury" to the plaintiff. *Id.*; *see also Belsky v. Lowenthal*, 392 N.E.2d 560, 560-61 (N.Y. 1979) (malicious prosecution claim properly dismissed since there was no allegation of interference with plaintiff's person or property); *Williams v. Williams*, 298 N.Y.S.2d 473, 476 n.2 (N.Y. 1969) (same).

The New York Court of Appeals describes the "special injury" requirement as "a grievance akin to the effect of a provisional remedy." *Engel v. CBS, Inc.*, 182 F.3d 124, 131 (2d Cir. 1999) (attaching as Appendix the New York Court of Appeals' answer to certified question). The significance of a "provisional remedy" is that it causes "some interference with plaintiff's person or property by the use of such provisional remedies as arrest, attachment, replevin or injunction, or other burden imposed on plaintiff beyond the ordinary burden of defending a lawsuit." *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996) (citing *Broughton v. State of New York*, 335 N.E.2d 310) (N.Y. 1975)).

In describing the necessary grievance as "akin" to a provisional remedy, the New York Court of Appeals held that while "[a]ctual imposition of a provisional remedy need not occur," there must be "a highly substantial and identifiable interference with person, property, or business." *Engel*, 182 F.3d at 130. The New York Court of Appeals further explained as follows:

> Since the role that the special injury requirement fulfills is that of a buffer to insure against retaliatory malicious prosecution claims and unending litigation, we are satisfied that a verifiable burden substantially equivalent to the provisional remedy effect can amount to special injury. Put another way, what is "special" about special injury is that the defendant must abide some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit. . . .

*Engel*, 182 F.3d at 130-31.

Carter has not alleged that he was subjected to any provisional remedy as a result of Doe's lawsuit. Therefore, Carter must point to "burdens substantially equivalent to those imposed by provisional remedies." *See Engel*, 182 F.3d at 130. Assuming the truth of Carter's Complaint, he has not done so.

The potentially relevant allegations are as follows:

> 73.    Doe's frivolous lawsuit, filed by Buzbee, Fortney and The Buzbee Law Firm, and its demonstrably false allegations that Mr. Carter sexually assaulted her when she was a minor caused Mr. Carter to suffer actual and special damages, including, but not limited to, harm to his personal and professional reputation, harm to his business entity, Roc Nation—which resulted in his business suffering substantial losses in excess of $20 million—out-of-pocket loss, and emotional harm, humiliation, and harassment.

(Doc. 1, PageID# 17, ¶ 73.)

These allegations are insufficient to satisfy the "special injury" requirement. It is well-established that allegations of reputational loss are insufficient. *Engel*, 182 F.3d at 295; *see also Campion Funeral Home, Inc. v. State of New York*, 569 N.Y.S.2d 518, 521 (N.Y. 1991); *Kidder,*

6

*Peabody & Co. v. IAG Intern. Acceptance, Group N.V.*, No. 94-civ-4725, 1997 WL 539772, at *3 (S.D.N.Y. Aug. 28, 1997); *Rubin v. Lufty*, No. 110510/09, 2009 WL 4878425, at *9 (N.Y. Sup. Ct. Nov. 23, 2009).    Also clearly insufficient are allegations of emotional harm, humiliation, harassment, or out-of-pocket loss.    *See id.* (requiring "concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit"); *see also McCaul v. Ardsley Union Free School Dist.*, 514 Fed. Appx. 1, 5 (2d Cir. 2013) (allegations of distress and anxiety or having been caused to spend money to defend the lawsuit do not constitute a "special injury"); *Brown v. Brown*, 343 F.Supp.2d 195, 198 (E.D.N.Y.2004) ("bare allegations of emotional distress, pain, and suffering" are insufficient). The "special injury" must be "concrete."  *Id.*

It is also obviously insufficient for Carter to allege that <u>Roc Nation</u> suffered "substantial losses in excess of $20 million." There are at least two reasons that this allegation does not satisfy the special injury requirement.    First, Carter (an individual) is not Roc Nation LLC irrespective of whether Carter owns Roc Nation LLC.[2]  Second, putting aside the insurmountable problem that Plaintiff and Roc Nation are distinct creatures under the law, a vague reference to "substantial losses" untethered to any concrete allegations regarding how those losses were incurred and why they are related to the allegedly malicious lawsuit does not meet the standard for a special injury.

Assuming the truth of Roc Nation's alleged loss of "in excess of $20 million," that is <u>Roc Nation's</u> loss, not Carter's.  The law does not allow Carter to recover damages incurred by Roc Nation LLC, a business entity allegedly owned in whole or in part by Carter.  No doubt Carter

---

[2] Roc Nation LLC is a Delaware limited liability company, as are a number of other "Roc Nation" companies.  (<u>Exhibit 4</u> – Sec. of State Entity Details for Roc Nation LLC and other "Roc Nation" companies.)

formed Roc Nation as an LLC to be entitled to the limited liability and other benefits afforded through incorporation. For example, Carter is generally not liable for the debts or torts of Roc Nation. The other side of that coin is that Carter is not entitled to recover individually for damages incurred by Roc Nation LLC.

It is a fundamental principle of corporate law, including in New York, Alabama, Delaware, and elsewhere, that an LLC, even a single member LLC, is a separate and distinct entity from its owner(s). *See* N.Y. Ltd. Liab. Co. Law § 601 ("A member has no interest in specific property of the limited liability company."); 6 Del. C. § 18-701 ("A member has no interest in specific limited liability company property."); Ala. Code § 10A-5A-4.02 ("A member has no interest in any specific property of a limited liability company.").

"Recognition of separateness generally means that an owner, even a sole owner, cannot sue on behalf of the entity and the entity cannot sue for harm to the owners." 2 Close Corp and LLCs: Law and Practice § 8:1 (Rev. 3d ed.); *see also Gulf Coast Asphalt Co. v. Chevron U.S.A., Inc.*, No. CIV.A. 09-0187-CG-M, 2010 WL 1416460, at *3 (S.D. Ala. Mar. 22, 2010) (report and recommendation adopted) ("Alabama law does not allow a shareholder of a limited liability company . . . to sue on behalf of the corporation.") (citing *Carey v. Howard*, 950 So.2d 1131, 1135-36 (Ala. 2006) (LLC members cannot claim damages when LLC is injured)); *In re Reifler*, No. 22-cv-10201, 2023 WL 5510233, at *6 (S.D.N.Y. Aug. 25, 2023) ("[L]ike the shareholders of an ordinary corporation, members of a Delaware LLC do not possess any personal right of action against third parties for acts that cause injury to the LLC.") (citing *Morris & Judith Fam. P'ship, LLC v. Fid. Brokerage Servs. LLC*, 347 F. Supp. 3d 243, 247-48 (S.D.N.Y. 2018) (noting inability of LLC member to sue third parties for injury to LLC)); *New Castle Siding Co. v. Wolfson*, 468 N.Y.S.2d 20, 21 (N.Y. App. Div. 1983) ("The fact that an individual closely

8

affiliated with a corporation (for example, a principal shareholder, or even a sole shareholder), is incidentally injured by an injury to the corporation does not confer on the injured individual standing to sue on the basis of either that indirect injury or the direct injury to the corporation.").

Because Roc Nation has a legal existence separate and distinct from Carter, he cannot satisfy the requirement of a special injury by alleging that Roc Nation has lost money. *See Mohinani v. Charney*, 173 N.Y.S.3d 1, 1-2 (N.Y. App. Div. 2022) (dismissing claim because plaintiffs' alleged damages would have been directly suffered by limited liability companies of which plaintiffs were members rather than plaintiffs as individuals); *Wilhelmina Models, Inc. v. Fleisher*, 797 N.Y.S.2d 83, 85 (N.Y. App. Div. 2005) ("As separate entities from the potential borrower, plaintiffs could not directly profit from the loan proceeds and therefore damages were insufficiently pleaded. The allegations fall far short of the 'specific and meaningful' damages required to maintain a malicious prosecution action.")

Putting aside the fact that Roc Nation's damages are not Carter's damages, in order for a claim of lost business to meet the special injury standard, the alleged losses must be both "specific" and "measurable." *See Kanciper v. Lato*, 989 F. Supp. 2d 216, 237 (E.D.N.Y. 2013). Carter must identify the specific business lost with "sufficient particularity to identify actual losses and be related causally to the alleged tortious acts." *Id.* Round numbers and general allegations of lost dollar amounts are insufficient. *Id.*

Carter has not alleged facts sufficient to satisfy this standard. Carter makes a vague claim that Roc Nation suffered losses in excess of $20 million, not even committing to the "round number" of $20 million. This claim is untethered to any actual facts regarding the form of this alleged lost business, whether and how it can be quantified, and why it is alleged to be the result of the underlying lawsuit. The claim is neither concrete, specific, nor measurable. Therefore, it

does not meet the standard for an alleged "special injury" under New York law. *See, e.g., Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC*, No. 11 Civ. 3327(ER), 2013 WL 417406, at *15 (S.D.N.Y. Feb. 4, 2013) (plaintiff business failed to sufficiently assert special injury arising from an eviction proceeding where it only made the general allegation that the proceeding interfered with its lease and, thus, its business); *Engel*, 93 N.Y.2d at 207 (plaintiff, an attorney with an established practice, failed to assert special injury where he alleged the loss of a client and made "vague allegations of reputation loss").

### 3. Carter fails to state a claim for malicious prosecution because the underlying lawsuit was dismissed pursuant to an agreement.

The voluntary dismissal of a lawsuit is not a "termination in favor of the plaintiff" if the dismissal resulted from an inducement from the defendant or as part of an agreement, compromise, or settlement with the defendant. *See, e.g., Mobile Training & Educ., Inc. v. Aviation Ground Sch. of Am.*, No. 602342/08, 2010 WL 3310257, at *8 (N.Y. Sup. Ct. June 23, 2010). Here, the underlying lawsuit was voluntarily dismissed in exchange for a commitment by: (i) Carter and his attorneys and agents not to harass or interact with, among others, Doe and her family; and (2) Carter and his attorneys to withdraw a Rule 11 motion. This was, by any definition of the words, an inducement, agreement, compromise, and settlement.

A termination of the underlying lawsuit in favor of the plaintiff is an essential element of a malicious prosecution claim, without which the plaintiff cannot prevail. Courts have repeatedly held that this element is not satisfied where the allegedly malicious lawsuit was dismissed as a result of an inducement, agreement, compromise, or settlement. *See, e.g., Aviation Ground Sch. of Am.*, 2010 WL 3310257 ("It is settled that if the case was voluntarily dismissed as a result of a settlement or compromise, it would not support a claim for malicious

prosecution."); *Levy's Store, Inc. v. Endicott–Johnson Corp.*, 272 N.Y. 155, 162 (N.Y. 1936) (holding that a prior action was not a favorable termination when it was "terminated without regard to its merits or propriety by agreement or settlement of the parties or solely by the procurement of the accused as a matter of favor or as the result of some act, trick or device preventing action and consideration by the court"); *Aquilina v. O'Connor*, 399 N.Y.S.2d 919, 921 (N.Y. App. Div. 1977) (A dismissal is only a termination in favor of the plaintiff "in the absence of a compromise or inducement offered by the defendant.").[3]

As set forth in the Motions to Dismiss filed by the Buzbee Defendants, Doe's attorney stated in a February 4, 2025 settlement offer that: (i) Carter and his attorneys would first withdraw the Rule 11 motion; (ii) Doe would, ten (10) days later, withdraw her complaint with prejudice; and (iii) Carter and his attorneys and agents would not harass or otherwise interact with Doe, her family, or certain other individuals.  (Exhibit 1 – Declaration of Marc E. Kasowitz and attached email agreement with Alex Spiro.)  Carter accepted the settlement offer, with his attorney responding "OK" on the same day.  (*Id.*)  Carter's counsel prepared a letter notifying the Judge that the Rule 11 motion was withdrawn.  That letter was dated February 4, 2025 (the same day as the email agreement), and it was filed with the court on the following day.  (Exhibit 2 - Doc. 87 in Case No. 1:24-cv-07975-AT, in the Southern District of New York.)  Ten days later, as agreed, Doe filed a notice of voluntary dismissal.[4]  (Exhibit 3 – Notice of Voluntary

---

[3] *See also Pagliarulo v. Pagliarulo*, 293 N.Y.S.2d 13 (N.Y. App. Div. 1968) (not a termination in favor of plaintiff where dismissal was pursuant to an agreement between the parties); *Loeb v. Teitelbaum*, 432 N.Y.S.2d 487, 493 (N.Y. App. Div. 1980) (not a termination in favor of plaintiff if voluntary dismissal was "procured by an agreement or compromise with the [plaintiff]"); *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 196 (N.Y. 2000) (same); *Rubin*, 2009 WL 4878425, at *2 (not a termination in favor of plaintiff where action was withdrawn "as part of a settlement agreement").

[4] Apparently due to a CM/ECF issue with the filing, the dismissal was refiled four (4) days later.

Dismissal.)  The dismissal of the underlying lawsuit pursuant to an inducement, agreement, compromise, and/or settlement precludes a claim for malicious prosecution arising out of the underlying lawsuit.

For the foregoing reasons, Carter fails to state a claim for malicious prosecution upon which relief can be granted.  Further, because the deficiencies cannot be cured by amendment, the claim should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

### B.    CARTER'S ABUSE OF PROCESS CLAIM IS DUE TO BE DISMISSED.

Under the law of New York, instituting a civil action with an allegedly malicious motive is not abuse of process.  Rather, abuse of process consists of the improper use of process after it has already been issued to obtain some collateral objective.  Carter has not alleged facts that would support an abuse of process claim.

### 1.    To the extent there is any conflict of laws, New York law applies to Carter's abuse of process claim.

As discussed above, Alabama applies the law of "the state where the last event necessary to make an actor liable for an alleged tort takes place."  *U.S. Bank Nat. Ass'n*, 148 So. 3d at 1070.  Abuse of process consists of (1) the existence of an ulterior purpose, (2) a wrongful use of process, and (3) malice.  *C.C. & J., Inc. v. Hagood*, 711 So. 2d 947, 951 (Ala. 1998).  Based on Carter's allegations, the "wrongful use of process" was "initiation" and "continued prosecution" of the underlying lawsuit.  (Doc. 1, PageID# 20, ¶ 88.)  Since these events occurred in New York, Alabama courts would apply the law of New York.

2.    **Carter fails to state a claim for abuse of process because he alleges that the underlying lawsuit was initiated and prosecuted for malicious reasons, not that any process was wrongfully used after issuance.**

Carter's abuse of process allegations are identical to his allegations of malicious prosecution. However, the claims are comprised of different elements and require different proof. In short, malicious prosecution concerns the wrongful issuance of process, while abuse of process concerns the wrongful use of process after it has been issued.[5] *See, e.g., Tray Wrap, Inc. v. Pac. Tomato Growers Ltd.*, No. 26782/03, 2008 WL 222495, at *16 (N.Y. Sup. Ct. Jan. 28, 2008).[6] Absent from Carter's Complaint is any allegation that process was wrongfully used after its issuance.

Under New York law, "[a]buse of process has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (N.Y. 1984). The "mere commencement of a civil action by summons and complaint does not constitute abuse of process, and the gist of the tort is the improper use of process after it is issued by an unlawful interference with one's person or property."[7] *Tenore v. Kantrowitz, Goldhamer & Graifman, P.C.*, 907 N.Y.S.2d 255, 257 (N.Y. App. Div. 2010) (internal citations and quotation marks omitted).

---

[5] As discussed above, Plaintiff fails to state a claim for malicious prosecution for other reasons, including that he does not allege a "special injury," and the underlying lawsuit was dismissed pursuant to an agreement.

[6] Alabama's abuse of process law includes the same requirement. *See, e.g., Hagood*, 711 So. 2d at 950.

[7] Under Alabama law, like in New York, the "wrongful use of process" element "encompasses only wrongful uses of judicial process that occur after the process is initiated." *Hagood*, 711 So.

Carter has not alleged that any judicial process was wrongfully used after its issuance. To the contrary, Carter bases his abuse of process claim on his allegation that "Defendants' initiation and continued prosecution of the frivolous lawsuit was willful and malicious and was intended to oppress and cause injury to Mr. Carter." (Doc. 1, PageID# 20, ¶ 88.) These facts, even if they were true, do not constitute abuse of process. *See Greco v. Christoffersen*, 896 N.Y.S.2d 363, 365-66 (N.Y. App. Div. 2010) (holding that "the mere commencement of a lawsuit cannot serve as the basis for a cause of action alleging abuse of process"). Carter's failure and inability to allege the wrongful use of process after it was issued is fatal to his abuse of process claim. *See Gilman v. Marsh & McLennan Cos.*, 868 F. Supp. 2d 118, 131 (S.D.N.Y. 2012), aff'd, 654 F. App'x 16 (2d Cir. 2016) (summary order) (abuse of process requires wrongful use of process after it is issued); *Richardson v. N.Y.C. Health & Hosps. Corp.*, No. 05 Civ. 6278(RJS), 2009 WL 804096, at *16-17 (S.D.N.Y. Mar. 25, 2009) (same); *Roelcke v. Zip Aviation, LLC*, 15-CV-6284(DAB), 2019 WL 10856680, at *6 (S.D.N.Y. Jan. 8, 2019) (same).

### 3.    Carter fails to state a claim for abuse of process because he has not alleged any process was abused for a collateral objective.

An abuse of process claim also requires a "collateral objective." "The collateral objective element is separate and distinct, and must occur after the process is issued." *Wisniewski v. Town of E. Hampton*, No. 05-CV-4956-JS (ETB), 2008 WL 11412044, at *3 (E.D.N.Y. Sept. 30, 2008). Carter has not alleged a collateral objective, much less a collateral objective after the issuance of process.

Carter has alleged that Doe's motive was "malicious" and "intended to oppress and cause injury." (Doc. 1, PageID# 20, ¶ 88.) "A malicious motive alone, however, does not give rise to

---

2d at 951-52. The abuse of process must also be "some act in furtherance of the improper motive subsequent to the issuance of the process." *Id.* at 951.

a cause of action for abuse of process." *Behrens v. City of Buffalo*, 192 N.Y.S.3d 869, 871 (N.Y. App. Div. 2023). The lack of a collateral objective is fatal to Carter's abuse of process claim. *See id.* (affirming dismissal where complaint alleged that the defendant's goal was to harass and intimidate the plaintiff and no collateral objective was identified) (quoting *Curiano*, 63 N.Y. 2d 113); *Dellutri v. Village of Elmsford*, 895 F. Supp. 2d 555, 572 (S.D.N.Y. 2012) (dismissing complaint where plaintiff failed to allege a collateral objective outside the legitimate ends of the process).

> **4.  Carter fails to state a claim for abuse of process because he has not alleged any interference with person or property through a provisional remedy.**

"[T]o qualify as legal process for purposes of an abuse-of-process claim, the court-issued writ must not only direct or demand that the person to whom it is directed shall perform or refrain from doing some prescribed act, but also interfere with one's person or property." *Manhattan Enter. Grp. LLC v. Higgins*, 816 F. App'x 512, 514 (2d Cir. 2020) (summary order). Examples of writs which can be so abused include writs of "attachment, execution, garnishment, or sequestration proceedings, or arrest of the person, or criminal prosecution, or even such infrequent cases as the use of a subpoena for the collection of a debt." *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 106 (S.D.N.Y. 2020) (quoting *Williams*, 298 N.Y.S.2d at 476, n.1); *see also Greco v. Christoffersen*, 896 N.Y.S.2d at 365-66 (holding that "the mere commencement of a lawsuit cannot serve as the basis for a cause of action alleging abuse of process," and that interference with person or property comes from "resort to a provisional remedy, such as arrest, attachment, injunction, receivership, or notice of pendency"). Carter, as discussed above, merely alleges the issuance of a summons and complaint.

For all of the foregoing reasons, and because the pleading deficiencies cannot be cured by amendment, Carter's abuse of process claim is due to be dismissed with prejudice.

### C. CARTER FAILS TO STATE A CLAIM FOR DEFAMATION.

Carter fails to state a claim for defamation under California law because his Complaint and the materials incorporated therein clearly establish that California's litigation and fair use privileges apply.  These privileges provide absolute protection from a defamation claim regardless of the alleged motive for the subject statements.

### 1. California law applies to Carter's defamation claim.

Under Alabama's choice-of-law principle of *lex loci delicti*, the "place of the wrong" for purposes of a defamation claim is the state where the injury occurred.  *See Middleton v. Caterpillar Indus., Inc.*, 979 So. 2d 53, 57 (Ala. 2007) (quoting *Fitts*, 581 So.2d at 820); *Holt v. Gray Television, Inc.*, No. 2:24-cv-00398, 2024 WL 4255396, at *4 (N.D. Ala. Sept. 20, 2024). In the defamation context, the injury is alleged damage to the plaintiff's reputation.  *Holt*, 2024 WL 4255396, at *4 (applying Mississippi defamation law because the alleged damage occurred in plaintiff's home state of Mississippi).

Where the alleged defamation is broadcast to multiple states at the same time ("multi-state defamation"), such as through a television broadcast, the alleged injury does not occur in a single state.  Undersigned counsel has found very limited Alabama authority regarding choice-of-law in multi-state defamation actions.[8]  However, under circumstances similar to those

---

[8] *Holt* is mentioned above.  2024 WL 4255396.  In *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, a case where the parties consented to application of Alabama law, the court nevertheless noted, apparently *sua sponte*, that Alabama's *lex loci delicti* choice-of-law approach might, absent such consent, require application of Florida defamation law since the plaintiff was a Florida corporation with its principal place of business in Florida.  *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1269 n.2 (M.D. Ala. 2019).  In the context of slander of title, the injury occurs in the plaintiff's home state, where the plaintiff is

presented in this case, courts applying *lex loci delicti* have considered the injury to occur in the state "where the plaintiff is domiciled" and thus applied that state's law.  *See Donald J. Trump for President, Inc. v. CNN Broadcasting, Inc.*, 500 F. Supp. 3d 1349, 1354 (N.D. Ga. 2020); *Adventure Outdoors, Inc. v. Bloomberg*, No. 1:06-CV-2897-JOF, 2007 WL 9735875, at *3 (N.D. Ga. Dec. 18, 2007) (applying law of plaintiffs' domicile, Georgia, to defamation claims arising out of statements by New York City officials in New York regarding lawsuit against gun shops); *Ascend Health Corp. v. Wells*, No. 4:12-CV-00083-BR, 2013 WL 1010589, at *2 (E.D.N.C. Mar. 14, 2013) (holding that under *lex loci delicti*, the law of the state where the plaintiffs were located would apply); *Wells v. Liddy*, 186 F.3d 505, 528 (4th Cir. 1999) (predicting that Maryland, a *lex loci delicti* state, would apply the Restatement (Second) of Conflict of Laws to instances of multi-state defamation and determine that the law of the state of plaintiffs' domicile would apply); *Nunes v. Cable News Network, Inc.*, 520 F. Supp. 3d 549 (S.D.N.Y. 2021) (concluding that Virginia, a *lex loci delicti* state, would likely apply the law of the state of plaintiff's domicile, absent strong countervailing considerations).

Here, Carter alleges that he resides in and is domiciled in the State of California.[9]  (Doc. 1, PageID# 4, ¶ 11.)  Therefore, for purposes of his defamation claim, the injury occurred in California, and the law of California applies.

---

considered to have been injured, not where the slander occurred.  *Peacock v. Merrill*, No. CV 05-0377-CB-C, 2009 WL 10704516, at *15 (S.D. Ala. Nov. 17, 2009).

[9] Carter has also argued California law in his related defamation claim, *Carter v. The Buzbee Law Firm and Anthony G. Buzbee*, Case No. 24-MCV-05637, in the Superior Court of the State of California.

### 2.    The allegations of Doe's Complaint are absolutely privileged under California law.

Under California law, any publication or broadcast made in a judicial proceeding is absolutely privileged.   Cal. Civ. Code § 47(b).   Therefore, all allegations made in Doe's Amended Complaint are absolutely privileged and cannot form the basis for a defamation claim.

### 3.    Doe's statements to news media about the lawsuit are absolutely privileged pursuant to California's fair report privilege.

Carter's Complaint and the materials incorporated therein establish all of the elements of California's fair report privilege.   Doe, allegedly with her attorney by her side, provided a fair report to NBC News of the underlying judicial proceeding and the allegations of her Amended Complaint.   The average viewer of the NBC News piece and the average reader of the companion NBC News article would undoubtedly understand the statements to be associated with the then-ongoing civil lawsuit.   Therefore, Doe's statements are absolutely privileged and cannot form the basis of a defamation claim.

Under California law, "[a] privileged publication or broadcast is one made . . . [b]y a fair and true report in, or a communication to, a public journal, of (A) a judicial, (B) legislative, or (C) other public official proceeding, or (D) of anything said in the course thereof. . . ."  Cal. Civ. Code § 47(d).   When the fair report privilege applies, "the reported statements are absolutely privileged regardless of the defendants' motive for reporting them."  *See Healthsmart Pac., Inc. v. Kabateck*, 212 Cal. Rptr. 3d 589, 601 (Cal. Ct. App. 2016) (internal quotation marks and citations omitted).[10]  Courts have construed the privilege broadly.  *Kabateck*, 212 Cal. Rptr. 3d at 601.

---

[10] A requirement that the privileged publication be made without malice was deleted in 1945 to strengthen the privilege. *See Howard v. Oakland Trib.*, 245 Cal. Rptr. 449, 451 (Ct. App. 1988).

NBC News clearly qualifies as a "public journal" for purposes of the fair report privilege. *See id.* (television news show and radio program were "public journals"). Doe's lawsuit against Carter and Combs was a judicial proceeding. (Doc. 1, ¶¶ 21, 31.) *See id.* (noting that California courts have construed the phrase "judicial proceeding" to include the filing of a complaint). Further, the fair report privilege does not simply belong to the media. The privilege "also protects those who communicate information to the media." *Kabateck*, 212 Cal. Rptr. 3d at 601; *see also Harrison v. Gilligan*, No. F082516, 2022 WL 2901252, at *6 (Cal. Ct. App. July 22, 2022) (holding that statements to the press by individual and related news report regarding his allegations of sexual misconduct against priest were absolutely privileged as a fair report of the related investigation); *Dababneh v. Lopez*, No. C088848, 2021 WL 4487407, at *12 (Cal. Ct. App. Oct. 1, 2021) (holding that statements in press conference and to newspaper by lobbyist regarding her sexual assault allegations were absolutely privileged as a fair report of her complaint of sexual assault); *Bond v. Lilly*, D082738, 2024 WL 4879324, at *2, 8 (Cal. Ct. App. Nov. 25, 2024) (applying fair report privilege to statements by parents to news reporters regarding their lawsuit).[11]

When viewed as a whole (as the law requires), the NBC News report was a fair and true report of the litigation. For purposes of the fair report privilege, the issue is not whether Doe's allegations regarding Carter are true. *See Kabateck*, 212 Cal. Rptr. 3d at 603. The fair report

---

[11] *Harrison*, *Dababneh*, and *Bond* are unpublished opinions. Under the procedural rules of California, their citation is restricted. However, under the *Erie* doctrine, this Court applies the substantive law of California while applying federal procedural rules, which consider unpublished decisions to have persuasive value. *See, e.g., Siteworks Solutions, Inc. v. Oracle Corp.*, No. 08-2130-STA, 2010 WL 890941, at *2, n.8 (W.D. Tenn. March 9, 2010) (stating that it would consider the substantive portions of unpublished California opinion); *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214 (9th Cir. 2003) (considering unpublished California state court decision for persuasive value). Thus, the Court should consider unpublished California state appellate court decisions as persuasive.

privilege is "not concerned with the merits of [the defendant's] allegations or the truth of the statement contained in the [defendant's statements to the media]." *Harrison*, 2022 WL 2901252, at *8. "Fair and true" refers not to the truth or accuracy of the matters asserted in the judicial proceeding, but to the accuracy of the statements about the judicial proceeding. *McClatchy Newspapers, Inc. v. Superior Court*, 234 Cal. Rptr. 702, 711 (Cal. Ct. App. 1987).

"The privilege applies if the substance of the publication or broadcast captures the gist or sting of the statements made in the official proceedings." *Dababneh*, 2021 WL 4487407, at *11. "The report is not to be judged by the standard of accuracy that would be adopted if it were the report of a professional law reporter or a trained lawyer." *Id.* The defendant "does not have to justify every word of the alleged defamatory material that is published." *McClatchy*, 234 Cal. Rptr. at 711. Whether the report conveys the substance of the proceeding is measured by its impact on the average reader. *Dababneh*, 2021 WL 4487407, at *11.

"There is thus a critical difference between communicating to the media what is alleged in a complaint and communicating the alleged facts without reference to the complaint." *Kabateck*, 212 Cal. Rptr. 3d at 604. "The issue is whether the average viewer or listener of the media reports would understand the . . . statements as communications about the [underlying] complaint." *Id.*; *see also Harrison*, 2022 WL 2901252, at *8 ("[O]ur analysis considers whether appellant's press release accurately conveyed the substance of his interview with the Bakersfield police in a manner that would leave the average viewer, reader, or listener to the press release understanding appellant's statement related to his role in the ongoing investigation").

Courts consider the entire report as a whole, not each statement in isolation, and the manner in which the statements are presented to the public is significant. *See Kabateck*, 212 Cal. Rptr. 3d at 604; *see also Dababneh*, 2021 WL 4487407, at *12 (noting importance of

considering media reports in their entirety).  For example, in *Bond*, the plaintiff argued that none of the defendants' statements expressly mentioned their underlying complaint or referenced their lawsuit, but the court disagreed that this fact was dispositive, instead holding that the statements were privileged because the news articles in which the statements appeared were replete with references to the lawsuit.  *Bond*, 2024 WL 4879324, at *7-8.  The "natural and probable effect" the publication would have on the viewer was determined by the entire news piece, not simply the defendants' statements.  *Id.*

Here, the NBC News report and Doe's statements presented therein are obviously not "without reference to her complaint."  *See Kabateck*, 212 Cal. Rptr. 3d at 604; *Dababneh*, 2021 WL 4487407, at *12; *Bond*, 2024 WL 4879324, at *8.  To the contrary, images of Doe's actual Amended Complaint, containing the allegations she discusses, appear as part of the report.

The entire NBC News report is 5 minutes 7 seconds (5:07).  The report shows actual images of the Amended Complaint from :44-:48, 1:44-49, and 2:31-40:





The NBC News piece quotes directly from the Amended Complaint, with the quote overlaying an image of the Complaint:



These images of the pleading inform viewers that they are watching a report about a lawsuit. *See Kabateck*, 212 Cal. Rptr. 3d at 604 (citing "images of the complaint shown in the background" as causing the average person watching to understand the statements refer to a lawsuit).

The language used during the piece further emphasizes that it is a report on a lawsuit. At the beginning of the piece, the NBC News reporter states: "A 31-year-old mother from Alabama who has filed a lawsuit accusing Sean Diddy Combs and Jay Z of raping her when she was 13 years old is speaking out to NBC News for the first time." (Doc. 1-9, PageID# 87.) The reporter refers to Doe's "allegations" throughout the piece and discusses the parties' attorneys. (*Id.*, PageID# 87.)

The NBC News piece also refers to Doe's attorney providing NBC News with the name of Doe's friend (Doc. 1-9, PageID# 88) and relates statements from "[t]he accuser's attorney, Tony Busbee." (Doc. 1-9, PageID# 90.) Carter acknowledges in his Complaint that one of Doe's attorneys was by her side during the news piece. (Doc. 1, PageID# 8.) An image of one of Doe's attorneys appears during the piece:



The piece also discusses statements from Carter's attorney, such as his statement that they are "going to ask the court to 'dismiss this frivolous case.'" (*Id.*, PageID# 91.) The report quotes the "legal team" of Carter's co-defendant, Combs. (*Id.*)

The average person watching the report, and indeed anyone watching the report, would certainly understand that the statements refer to allegations in the lawsuit. *See Kabateck*, 212

Cal. Rptr. 3d at 604 ("The average person watching the report in its entirety would reasonably understand that Kabateck was referring to the allegations in the lawsuit he filed on Cavalieri's behalf."); *Dababneh*, 2021 WL 4487407, at *12 (determining that the entirety of the report would be understood as referring to the underlying complaint); *Harrison*, 2022 WL 2901250, at *9 ("Given the multiple references to investigations, including police investigations, we conclude that in the totality of the circumstances a viewer would understand appellant's statement to be a fair and true report of information provided in the course of a public official proceeding.").

In *Kabateck*, like in this case, the "report alternates between scenes of Kabateck speaking to a person off-camera, images of the complaint, video of persons and places referred to in the story . . . and the reporter speaking to the camera." *Kabateck*, 212 Cal. Rptr. 3d at 594 (describing the four and one-half minute television news report). The NBC News piece, a five minute report, also alternates between scenes of Doe speaking, images of the complaint, images of persons and places referred to in the story, and the reporter speaking. It is immaterial that the NBC News piece does not preface every statement with a reference to Doe's Amended Complaint. "Although some statements, when viewed in isolation, could be understood to communicate the allegedly defamatory matter as facts, not mere allegations of facts, when the media reports are viewed in the context in which they were made, the only reasonable conclusion is that the statements refer to the allegations made in the . . . complaint." *Kabateck*, 212 Cal. Rptr. 3d at 604. The report uses the words "lawsuit," "claim," "case," and "allegations." *See Bond*, 2024 WL 4879324, at *8 (applying privilege because even if defendants did not mention their underlying complaint, the reporters referred to the "lawsuit," "allegations," "claims," etc.).

Like in other cases where the fair report privilege has applied, Doe's statements in the NBC News piece are substantially the same as the allegations of her underlying Amended Complaint, even if they are not identical.  For example, the statements regarding a friend driving her, the Video Music Awards, and the limo driver are the same as the allegations of the Amended Complaint.  (Doc. 1-7, ¶¶ 38-43 and Doc. 1-9, PageID# 88.)  The same is true of the statements that she had a drink that made her feel woozy and that Carter and Combs raped her while a female celebrity watched.  (Doc. 1-7, ¶¶ 49-57 and Doc. 1-9, PageID# 89.)  The statements regarding running to a gas station and being picked up by her father also mirror allegations from the Amended Complaint.  (Doc. 1-7, ¶ 60 and Doc. 1-9, PageID# 89.)  During the news piece, Doe states that one should be an advocate for oneself, not let what somebody else did run your life, and that she wanted to come forward because she has been quiet for long enough.  (Doc. 1-9, PageID# 87.)  Likewise, in the Amended Complaint, Carter alleges that after the assault, she fell into a deep depression which continues to affect every facet of her life, suffers from post-traumatic stress disorder and a seizure disorder caused by stress and trauma, has difficulty maintaining normal relationships, lives largely withdrawn from society, and wants the defendants to finally face justice after so many years.  (Doc. 1, PageID# 57, 72.)  *See, e.g., Harrison*, 2022 WL 2901252, at *3 ("At the conclusion of his interview, appellant expressed a desire to share his story publicly."); *Dababneh*, 2021 WL 4487407, at *12 ("At the press conference, Lopez related her initial reluctance to name Dababneh and the circumstances that overcame that reluctance. . . .").

The remaining portions of the NBC News piece concern Carter's position in the case and what NBC News referred to as "inconsistencies with [Doe's] allegations."  (Doc. 1-9, PageID# 87-90.)  Within the first minute of the piece, the reporter refers to "inconsistencies," and the

piece concludes with statements from Carter, his attorney, and Combs' attorneys. (Doc. 1-9, PageID# 90-91.) In fact, Carter contends that the piece as a whole is exculpatory, alleging that after NBC "disprove[d]" the allegations in the NBC piece, "[n]o person of ordinary care and prudence would believe that Mr. Carter sexually assaulted Doe at an after party for the 2000 VMAs." (Doc. 1, PageID# 15.) Carter's position emphasizes that the piece is a fair report regarding a lawsuit, not defamatory statements without reference to a complaint.

Because the average viewer would understand the NBC News piece to refer to Doe's lawsuit, the entire piece, including all statements therein, fall squarely within the fair report privilege. All of those statements are absolutely privileged and protected from any claim of defamation.

It is unclear what other statements Carter claims constitute defamation by Doe. The only other statements allegedly made by Doe outside the confines of her actual pleadings were during a "follow-up phone interview" by NBC "regarding this substantial contradictory evidence— which [NBC] had uncovered in less than a week after conducting the initial interview." (Doc. 1, PageID# 8; Doc. 1-8, PageID# 79.)

The NBC News article related to the "follow-up" interview also falls easily within the fair report privilege. The article recounts the allegations of Doe's First Amended Complaint and her report of the allegations to NBC News. The article refers to the "lawsuit" or "suit" fourteen (14) times, uses the word "complaint" twice, uses the word "claim(s)" six (6) times, and uses the word "allege(s)" or "allegation(s)" thirteen (13) times. (Doc. 1-8.) *See Bond*, 2024 WL 4879324, at *8 (applying privilege due to overall effect of publication based on the articles' frequent use of the words "lawsuit," "claims," and "allegations"). The article states that Doe and her lawyers acknowledge certain inconsistencies and quotes Doe's attorney, who states that

Doe's claims were vetted and will continue to be vetted.  (*Id.*, PageID #80.)  The attorneys of Doe, Carter and Combs are referenced and cited throughout the article.  The article directly quotes Carter and Carter's attorney denying the allegations and criticizing Doe's attorney.  (*Id.*)  As with the television piece, any reasonable person reading the article would understand the statements therein to refer to allegations in the lawsuit.

Carter may argue that the applicability of the fair report privilege should not be decided at this stage of the case.  However, when "there is no dispute as to what occurred in the judicial proceeding reported upon or as to what was contained in the report," whether a report is a privileged fair report is a question of law.  *Kabateck*, 212 Cal. Rptr. 3d at 600.  Here, Carter has attached and incorporated the reports (the NBC News piece and article) as well as what occurred in the judicial proceeding (the allegations of the Amended Complaint).  Thus, based on Carter's own filings, the fair report privilege applies, and the defamation claim should be dismissed.

### 4.    Based on Carter's own allegations, he was not damaged by any potentially defamatory statements.

As discussed above, the allegations of Doe's Amended Complaint are absolutely privileged pursuant to the litigation privilege, and her statements to the media are absolutely privileged pursuant to the fair report privilege.  However, even if California did not have a fair report privilege, Carter's own Complaint defeats any possibility of damage.  Carter alleges that NBC News "disprove[d]" Doe's allegations and that "[n]o person of ordinary care and prudence" would have believed that Carter sexually assaulted Doe.  (Doc. 1, PageID# 15.)  Given that the allegedly defamatory statements were part of the same report that Carter says disproved the allegations, and assuming the truth of Carter's statement that no reasonable person would believe Carter sexually assaulted Doe after that report, Carter has admitted to the absence of any damage.

27

For the foregoing reasons, Carter's defamation claim is due to be dismissed with prejudice.

### D.    CARTER'S CIVIL CONSPIRACY CLAIM IS DUE TO BE DISMISSED.

Carter's civil conspiracy claim is based on his allegation that the Defendants agreed and worked together to accomplish the alleged malicious prosecution and abuse of process. Those claims, however, are due to be dismissed. (See Sections IV.A and IV.B. above.) Under New York law and Alabama law, civil conspiracy is not an independent cause of action and instead depends upon an actionable, underlying tort. *See 25-86 41st St., LLC v. Guzman*, 226 N.Y.S.3d 107, 110 (N.Y. App. Div. 2025) *(*citing *McSpedon v. Levine*, 72 N.Y.S.3d 97 (N.Y. App. Div. 2018) (New York law); *Jones v. BP Oil Co., Inc.*, 632 So. 2d 435, 439 (Ala. 1993) (Alabama law). Since there is no such actionable, underlying tort, Carter fails to state a claim for civil conspiracy.

In addition, the Buzbee Defendants have shown that, as attorneys, they are not liable for civil conspiracy under these allegations. Since a conspiracy requires more than one party, Doe cannot be liable for civil conspiracy.

For the foregoing reasons, the civil conspiracy claim is also due to be dismissed with prejudice.

## V.    <u>CONCLUSION</u>

Carter fails to state a claim against Doe for malicious prosecution, abuse of process, defamation, and civil conspiracy. The deficiencies of Carter's pleading cannot be cured by amendment, and therefore his Complaint is due to be dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,


/s/ J. Blair Newman, Jr.
J. BLAIR NEWMAN, JR. (NEWMJ8590)
bnewman@mcdowellknight.com
Attorneys for Jane Doe


OF COUNSEL:

MCDOWELL KNIGHT ROEDDER
  & SLEDGE, LLC
11 North Water St., Ste. 13290
Mobile, Alabama  36602
(251) 432-5300
(251) 432-5303 (fax)



## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2025, the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system which will send notification of such filing to all counsel of record.


/s/J. Blair Newman, Jr.
COUNSEL