## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHAWN COREY CARTER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **1:25-cv-00086-TFM-MU** |
| | § | |
| **ANTHONY BUZBEE, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

---

### DEFENDANTS ANTHONY BUZBEE'S, DAVID FORTNEY'S,
### and ANTHONY G. BUZBEE LP'S MOTIONS TO DISMISS
### UNDER RULES 12(b)(2), 12(b)(3), and 12(b)(6)

---

Defendants Anthony Buzbee ("Mr. Buzbee"), David Fortney ("Mr. Fortney"), and Anthony G. Buzbee LP (the "Buzbee Firm") (collectively, the "Buzbee Defendants") move this Court to dismiss all claims in the Second Amended Complaint (Doc. 32) because: (1) this Court lacks personal jurisdiction; (2) venue is improper; and (3) when the correct body of law is applied, the Second Amended Complaint fails to state a claim against the Buzbee Defendants upon which relief can be granted.[1]

### INTRODUCTION

This case was filed by a celebrity against his sexual-assault accuser – whom the plaintiff himself describes as "suffering from personal and financial hardship"– and against her attorneys in retaliation for seeking to utilize the justice system to hold her alleged assailant(s) accountable. And in this case, a California plaintiff has come to Alabama to assert claims against Texas

---

[1] The Second Amended Complaint did not resolve the issues previously raised by the Buzbee Defendants in their previous Motions to Dismiss (Doc. 21).

defendants for something that happened in New York. Nothing in Carter's amended pleading changes these circumstances warranting dismissal.

The events giving rise to this litigation began in 2024, when Defendant Jane Doe retained legal counsel in connection with her allegations that the plaintiff, Shawn Corey Carter, better known as world-famous performing artist Jay-Z ("Carter"), sexually assaulted her alongside his longtime friend, Sean John Combs (better known by his stage name, "Diddy"), in 2000 when Doe was just 13 years old. In October 2024, Doe, represented by the Buzbee Firm and Antigone Curis of Curis Law, PLLC ("the Curis Defendants"), filed suit in the United States District Court for the Southern District of New York against Diddy and some of his business interests (the "SDNY Action"). Doe could have named Carter in her original complaint in the SDNY Action, but she did not. Instead, to give Carter an opportunity to settle the claims without making them public, Doe, through her attorneys, sent a letter to Carter's attorneys describing the claims and requesting a confidential mediation.

Instead of accepting Doe's invitation to confidentially discuss a settlement of her claims, Carter chose scorched-earth litigation. On November 18, 2024, Carter sued the Buzbee Firm and its principal, Mr. Buzbee, in Carter's home state of California, alleging that they were extorting him and intentionally causing him emotional distress (the "California Action"). Carter and his representatives also dispatched investigators to harass Doe, her friends and family, as well as the Buzbee Firm's current and former employees, clients, and other business contacts, and to also try to coerce the Buzbee Defendants' former clients to sue them. Carter's mission was clear: to threaten, harass, intimidate, and financially punish Doe and her attorneys while peddling Carter's narrative to the media.

Understanding that Carter had no interest in a private resolution, Doe amended her complaint in the SDNY Action on December 8, 2024, to add Carter as a defendant. Carter then filed so many unprofessional papers with the district court that he received the following admonition:

> Since Carter's attorney first appeared in this case seventeen days ago, he has submitted a litany of letters and motions attempting to impugn the character of Plaintiff's lawyer, many of them expounding on the purported "urgency" of this case. …
>
> Carter's lawyer's relentless filing of combative motions containing inflammatory language and ad hominem attacks is inappropriate, a waste of judicial resources, and a tactic unlikely to benefit his client. The Court will not fast-track the judicial process merely because counsel demands it.

*Doe v. Combs, et al.*, 1:24-cv-07975-AT, (Doc. 53) (also admonishing Carter's counsel for their "unacceptable" failure "to abide by this Court's clear rules").  Eventually, the relentless pressure that Carter placed on Doe became too much for her.  On February 4, 2025, an agreement to resolve the litigation was reached between Doe and Carter, through their attorneys, which included the voluntary dismissal of the SDNY Action.  Notwithstanding this agreement, Carter – a wealthy celebrity – thereafter sued Doe and her attorneys and continues to threaten, harass, intimidate, and financially punish them.

Carter's latest pleading bemoans what he describes as the "incredibly painful" event of explaining Doe's allegations to "his wife" and "their children," claiming that he "mourns his children's loss of innocence," which he says was "robbed from them by" Doe's claims (Complaint ¶¶ 127-28), and he characterizes himself as "righteous" and with an otherwise impeccable character and reputation.  To put those allegations in their proper context, it is helpful to view them alongside the following lyrics from one of Carter's most successful songs, which became famous nationwide around the time Doe claims her sexual assault occurred:

> You know I thug 'em, f*ck 'em, love 'em, leave 'em 'cause I don't f*ckin' need 'em.
>
> Take 'em out the hood, keep 'em lookin' good but I don't f*ckin' feed 'em.
>
> First time they fuss, I'm breezin'.  Talkin' 'bout, "What's the reasons?"
>
> I'm a pimp in every sense of the word, b*tch.[2]

---

[2] Big Pimpin', Jay-Z, "Life and Times of S. Carter" (1999, Roc-A-Fella and Def Jam Recordings).

Released more than 25 years ago, this song of Carter's, like many of the others that made him famous, contains lyric after lyric describing Carter's views on the loss of innocence and how men should treat women.

Carter's conduct is an attempt to diminish the reputation of the Buzbee Defendants and the Curis Defendants, who, at all times, were seeking to perform their roles as zealous advocates and were acting within the course and scope of their professional and legal obligations. This case, a clear attempt by Carter to punish his accuser and silence potential accusers, as well as discourage any attorney who may represent such victims, is precisely the type of retaliatory and bad-faith litigation that courts across the country disfavor.

Carter's Second Amended Complaint fails to correct the numerous deficiencies raised in the Buzbee Defendants' previous Motions to Dismiss. For the following reasons, all claims against the Buzbee Defendants in the Second Amended Complaint should be dismissed.

## **ARGUMENTS**

## I.    **THE COURT LACKS PERSONAL JURISDICTION OVER THE BUZBEE DEFENDANTS.**

Though Plaintiff has now twice amended his complaint, which weighs in at 53 pages and nearly 200 paragraphs (Doc. 32), the due-process standards for personal jurisdiction have not changed.  The Eleventh Circuit considers whether:

1. Plaintiff has established that his claims "arise out of or relate to" at least one of defendants' forum contacts;

2. Plaintiff has demonstrated that defendants "purposefully availed" themselves of the "privilege of conducting activities within the forum state," and

3. If Plaintiff carries his burden on the first two prongs, Defendants have made a compelling case that exercising jurisdiction would violate "traditional notions of fair play and substantial justice."

*Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1313 (11th Cir. 2018) (citing caselaw).  Plaintiff's Second Amended Complaint fails as to all three.

A challenge to personal jurisdiction may be facial or factual.  *Quality Analytical Lab. v. Metcoff*, 2019 WL 13162851, *1 (N.D. Fla. 2019).  On a facial attack, the allegations are taken as true, while in a factual attack, the court may consider "evidence and resolve factual disputes."  *Id.* Another way of putting this is that the "factual allegations in the complaint are accepted as true" for jurisdictional purposes "**to the extent** they are uncontroverted."  *Micro Fin. Advisors, Inc. v. Coloumb*, 2023 WL 7156898, *3 (11th Cir. 2023) (emphasis added).  If a defendant submits evidence contesting jurisdiction, "the burden shifts back to the plaintiff to produce evidence to support personal jurisdiction."  *Moore v. Cecil*, 109 F.4th 1352, 1362 (11th Cir. 2024).

### a.    Plaintiff cannot show purposeful availment.

The purposeful-availment prong concerns the quality of a defendant's contacts with the forum, requiring a defendant to "deliberately engage" in "significant activities" in the forum, and rejecting forum contacts that are merely "random," "fortuitous," or "attenuated."  *Rowe v. Gary, Williams, Parteni, Watson & Gray, PLLC*, 723 F. App'x 871, 875 (11th Cir. 2018) (quoting caselaw).  Interestingly, in intentional-tort cases there are *two* tests for purposeful availment.

First, courts may apply the "effects test," under which a nonresident defendant's single tortious act can establish purposeful availment if the tort was (1) intentional, (2) aimed at the forum state, and (3) caused harm to plaintiff in the forum state that defendant should have anticipated. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

Second, courts may apply the "traditional" purposeful-availment analysis, which requires that a defendant's forum contacts "involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum," contacts that are "such that the defendant should reasonably anticipate being haled into court in the forum."  *Id.* at 1356-57. Because the Eleventh Circuit has suggested that, in intentional-tort cases involving an out-of-forum plaintiff (like this one), the "effects" test is not as applicable as the minimum-contacts test, the latter controls here.  *See, e.g.*, *Louis Vuitton*, 736 F.3d at 1356-57 (citing caselaw).

The *Rowe* case shows how the purposeful-availment prong applies when the attorney-client relationship is used to support personal jurisdiction. The Eleventh Circuit explained that an "out-of-state defendant's merely entering into a contract—such as one for legal representation—with a forum resident is **insufficient to pass the minimum contacts test**." *Rowe*, 723 F. App'x at 875 (emphasis added; citing caselaw). In that case, the events and contacts that gave rise "to the litigation occurred, on the whole," in some other state than the forum. The focus of the case concerned a lawsuit in New York, so while the plaintiffs pointed to "one litigation preparation meeting" in Georgia and "one deposition" there "for the New York action," those contacts were not enough—even though the "initial contact" between plaintiffs themselves and the defendant was also in Georgia. *Id.* at 876. Over the course of the defendants' representation in some other court, the few Georgia contacts with the client were "attenuated . . . at best" and "fortuitous." *Id.* Those contacts were "tie[d] to ongoing litigation occurring in an out-of-state forum" and weren't enough to satisfy due process. *Id.*

So holding, the Eleventh Circuit relied on the Tenth Circuit's *Newsome v. Gallacher* decision, which bears discussion. In *Newsome*, the Tenth Circuit considered personal jurisdiction as to allegations against a lawyer and law firm for work they had done in Canada. 722 F.3d 1257, 1279-80 (10th Cir. 2013). The law firm offered an affidavit showing that all the services it had rendered that were related to the claims against it had happened in Canada, evidence the plaintiff did not contradict. *Id.* This prompted the court to survey the caselaw on whether out-of-state legal work on an out-of-state matter can subject an out-of-state lawyer to personal jurisdiction in the "client's home forum." *Id.* at 1280.

As it turns out, most courts say no. The majority view is that "representing a client residing in a distant forum" is not "necessarily a purposeful availment of that distant forum's laws and privileges." *Id.* The client's residence is instead "often seen by the majority as a 'mere fortuity.'" *Id.* (quoting caselaw). The Tenth Circuit, like the Eleventh, "agree[d] with the majority" and held that an "out-of-state attorney" working out of state on some out-of-state matter for a client who lives in the forum "does not purposefully avail himself of the client's home forum's laws and

6

privileges," at least not in the absence of evidence that the lawyer "reached out to the client's home forum to solicit the client's business." *Id.* at 1280-81.

*Rowe* and *Newsome* are directly on point and controlling. Plaintiff has not alleged and cannot show purposeful availment of the Alabama forum by Buzbee, Fortney, or their firm because, as *Rowe* and other cases explain, an out-of-state lawyer's doing out-of-state work for a forum client is not deemed to be a lawyer's availment of the forum's legal system. In the language of personal-jurisdiction law, Defendants' few alleged contacts with Alabama were attenuated and fortuitous. The contacts with this forum occurred only because of the happenstance that Doe lives in Alabama. Neither the New York lawsuit nor the demand letter took advantage of Alabama's laws and privileges, even on the face of Carter's pleading.

Taking the evidence into account magnifies this gap in Carter's case. As the Declarations of David Fortney and Anthony Buzbee explain, Doe's residence in Alabama made no difference at all to Defendants' representation of her in the New York case and in her claims against Carter for sexual misconduct. *See* Exs. 1 (Fortney Declaration) and 2 (Buzbee Declaration). Her residence here is fortuitous, and representing her in New York federal court was by no means a purposeful availment of this forum. These Defendants did not solicit Doe as a client by taking any action directed to Alabama, nor did they direct (as Carter now alleges) any other entity to do so on their behalf. *Id.* On the contrary, the Buzbee firm had a relationship with AVA Law for receiving referrals, and it was that entity's communication with Defendants that led Doe to retain Defendants as her counsel. *Id.* Neither Fortney nor Buzbee ever solicited for her case in Alabama or targeted Alabama to find potential plaintiffs against Carter.[3] *Id.*; *see Thomas v. Brown*, 504 F. App'x 845, 848 (11th Cir. 2013) (holding there was no purposeful availment where defendants did not solicit work in the forum).

---

[3] The Second Amended Complaint mentions online social media, (Doc. 32 ¶¶ 36-38, 41), but personal jurisdiction cannot be based on Alabama residents' ability to access a defendant's website. *See Matthews v. Brookstone Stores, Inc.*, 469 F. Supp. 2d 1056, 1064 (S.D. Ala. 2007) (collecting cases).

Representing a client who happens to live in Alabama by filing a New York lawsuit and by sending a demand letter from Texas to New York does not constitute purposeful availment of the State of Alabama. Personal jurisdiction is lacking.

> **b.    Carter cannot show his causes of action are sufficiently connected to Defendants' forum contacts.**

The relatedness or nexus prong asks whether a defendant's forum contacts are sufficiently connected to the causes of action to satisfy due process. Courts "look to the 'affiliation between the forum and the underlying controversy,'" and focus on any "activity or . . . occurrence that took place **in the forum State**." *Waite* at 1314 (internal punctuation omitted) (emphasis added). While a "strict causal relationship" between the forum contacts and the cause of action is not required, there are "real limits" on the relatedness test, and the "affiliation" demanded between forum contacts and pleaded claims is "principally" to be some "activity or . . . occurrence that took place" **in the forum**. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362, 370 (2021); *see also Waite*, 901 F.3d at 1314.[4] The plaintiff's claims must "arise out of or relate to the defendant's contacts" with the forum. *Ford Motor Co.*, 592 U.S. at 359.

Though he's had several chances, Carter still has not alleged facts in the Second Amended Complaint that tie the key events giving rise to his claims—the lawsuit in New York and the demand letter sent to his New York lawyers—to Defendants' few contacts with Alabama. Given its length and overwrought if not vociferous tone, it is helpful, in assessing relatedness, to review the Second Amended Complaint from back to front. Considering first the theories Carter has pleaded assists enormously in weeding out the rhetoric and identifying what facts actually matter to his claims. Carter alleges malicious prosecution, abuse of process, and conspiracy against the Buzbee Defendants. Accordingly, any alleged contacts with Alabama that lack sufficient nexus with the operative facts of Carter's claims—such as the alleged other Alabama lawsuits these

---

[4] The Eleventh Circuit also refers to this as the "sufficient nexus" prong. *Rowe v. Gary, Williams, Parteni, Watson & Gary, PLLC*, 723 F. App'x 871, 875 (11th Cir. 2018).

Defendants were counsel in[5]—may be discarded in the jurisdictional analysis.  *See, e.g.*, *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 582 U.S. 255, 264 (2017) (noting that absent sufficient connection between forum contacts and the underlying controversy, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State").

With that in mind, and even taking his allegations as true, Carter continues to allege almost nothing of significance that occurred in Alabama.  He sues for malicious prosecution and abuse of process—but the basis of those claims, the supposedly defamatory lawsuit, was filed in New York.  Not one page of the litigation papers that give rise to his legal theories is alleged to have been filed in Alabama.  Not one Alabama court is alleged to have had any role in Defendants' supposed abuse of process.  And while the demand letter may not have a central role in proving malicious prosecution or abuse of process, it, too, is unmoored from Alabama, because it was allegedly intended to affect Carter in California, where he lives, and was sent to New York from Texas, as explained in the Fortney Declaration.  The letter did not come from Alabama, was not sent to Alabama, and was not drafted in Alabama.  *See* Exs. 1 and 2.  And even the NBC News interview (given by Doe) is not alleged to have occurred here, which is wise since it happened in Texas.  *Id.*

Thus *Rowe* is controlling.  Just like in *Rowe*, the "events and contacts" that actually gave rise to this lawsuit happened elsewhere, either in New York, Texas, or California.  723 F. App'x at 876.  In fact, Carter's jurisdictional case is *worse* than in *Rowe*, because in that case the initial contact with the client happened in the forum, and there was a deposition as well as a preparation meeting in the forum.  *Id.*  Here, however, Buzbee met Doe for the first time in Houston and *never* traveled to Alabama as part of representing her, while Fortney met with Doe in Alabama only *after* the New York lawsuit was filed, *after* it named Carter specifically, and *after* the demand letter had been sent.  *See* Exs. 1 and 2. Carter hasn't alleged that those after-the-fact meetings caused him harm—he pleads zero causes of action arising from any of those few contacts with Alabama.  Carter pleads fewer and less significant contacts with Alabama than did the plaintiff in *Rowe*.

---

[5] *See* Doc. 32 ¶ 7 n.1.

On its face, the Second Amended Complaint continues in its failure to show that Carter's claims "arise from or relate to" the few contacts with Alabama that Defendants are alleged to have had. Instead, he alleges that the important events of malicious prosecution and abuse of process all happened somewhere else.

Things get worse for Carter in light of the evidence. As the Fortney Declaration explains, by the time the demand letter was sent to Carter, and by the time the lawsuit was filed in the Southern District of New York (and named Carter specifically), *none* of the legal work done on Doe's behalf had occurred in Alabama. *See* Ex. 1. The letter and the lawsuit were not drafted in Alabama, were not sent from or to Alabama, were not filed in Alabama, were not discussed with Doe in Alabama, did not concern any events alleged to have happened in Alabama, and were not directed to an audience in Alabama. *Id*.

In fact, the Fortney Declaration shows that these Defendants' contacts with Alabama, in any way related to the parties or events of this case, are minimal indeed. *Id*. Neither Fortney nor Buzbee nor anyone else from their firm ever travelled to Alabama for purposes of the New York lawsuit or demand letter at any point before that lawsuit named Carter, nor before the demand letter was sent. *Id.*; Ex. 2. Carter is suing for malicious prosecution and abuse of process (and conspiracy to commit those torts), but the facts do not show that any movant Defendant used the Alabama legal system to assert a claim against Carter, make demands on Carter, or attempt to defame him. All the salient events giving rise to Carter's allegations occurred, if at all, somewhere else.

Carter has, then, not made out a case of minimum contacts with Alabama by these Defendants. "For specific jurisdiction, a defendant's general connections with the forum are not enough." *Bristol-Myers Squibb*, 582 U.S. at 264. None of the few trips to Alabama by Fortney or his associate gave rise to the allegations here, because they all happened *after* what Carter says harmed him and are not part of the operative facts of any of his claims. Carter cannot show an adequate nexus between those few after-the-fact contacts and his causes of action.

The jurisdictional defect here can be summed up: a California resident has sued out-of-state Defendants in Alabama over a lawsuit filed in New York and a demand letter sent from Texas. Personal jurisdiction over these Defendants would thus offend due process.

### c.     Exercise of jurisdiction would violate fair play and substantial justice.

Finally, there is another aspect of specific jurisdiction that bars Carter from haling Defendants into Court here. The law of specific jurisdiction "seeks to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." *Ford Motor Co.*, 592 U.S. at 360 (quoting caselaw). A state has a significant interest in providing its residents with a convenient forum for redress of injuries by out-of-state actors, while states have a less significant relationship when a suit involves out-of-state parties, an out-of-state injury, and out-of-state events. *See id.* at 368. In evaluating the fairness requirement, courts consider, in addition to the forum state's interest in the dispute, the plaintiff's interest in convenient and effective relief, the "interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1221 (11th Cir. 2009) (quoting caselaw). Once again, *Rowe* is highly instructive: a forum has only a "limited interest" in a dispute when the "lion's share of the conduct alleged occurred outside" the forum. *Rowe*, 723 F. App'x at 876 (holding that New York would have a "significantly stronger interest" in resolving a dispute regarding malpractice and fraud that occurred in its courts).

These factors weigh against specific jurisdiction here. Alabama has only the most attenuated connection to this dispute. Carter does not live here. He does not allege that the substantive torts giving rise to his lawsuit and the add-on conspiracy claim occurred here. And he is not suing, as to these Defendants, parties subject to Alabama's laws and regulations. Other states have, even taking his pleading at face value, a far greater interest in the case. Carter alleges that Defendants abused the legal process *of New York* and caused him harm *in California* based on actions in *Texas* and New York. At least one of these states has a far greater interest than

Alabama in seeing this lawsuit resolved.  Alabama is not a convenient forum for Carter or these Defendants, and none of them are at home here. Fair play and substantial justice require that some other state with a greater interest in the case, and where it can be disposed of more efficiently, exercise jurisdiction rather than this Court.

### d.    Carter hasn't come close to alleging a basis for general jurisdiction.

Though it may not have been deliberate, there are a few phrases in the Second Amended Complaint that suggest a gesture toward general personal jurisdiction over these Defendants. (Doc. 32 ¶ 27 (referring to "continuous, systematic, and substantial" contacts with Alabama)).  *But see Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014) (holding general jurisdiction does *not* attach in every state where a defendant may have "substantial, continuous, and systematic" business); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011).

The Buzbee Defendants are not subject to general jurisdiction in Alabama.  General jurisdiction attaches in the forum where an individual lives.  *See, e.g.*, *Ford Motor Co.*, 592 U.S. at 358-59 (noting general jurisdiction arises "only when a defendant is 'essentially at home' in the State," which for an individual generally means "her place of domicile") (citing caselaw).  Neither Fortney nor Buzbee live in Alabama.  *See* Exs. 1 and 2. Carter does not allege any other basis that remotely satisfies the demanding test for general jurisdiction as to Buzbee or Fortney.

Nor does he do so as to the firm itself, a Texas limited partnership.  (Doc. 32 ¶ 18.)  A limited partnership is not automatically subject to jurisdiction in any state where its partners live, though here all the partners of the firm, per Carter, live elsewhere or are citizens of other states. *Id.*; *see also Goforit Entertainment LLC v. Digimedia, L.P.*, 513 F. Supp. 2d 1325, 1331-32 (M.D. Fla. 2007). Carter alleges nothing else that would subject the firm to general jurisdiction in Alabama, and as he admits, all partners of the firm are Texas residents.  The firm is not subject to general jurisdiction in Alabama.

e.   **There is no such thing in this circuit as "conspiracy" jurisdiction and no basis in the Second Amended Complaint for imputing others' contacts to these Defendants.**

The biggest change in Carter's new complaint as to jurisdiction is his attempt to take refuge in the notion of "conspiracy" jurisdiction.  (Doc. 32 ¶ 25.)  Indeed, the word "conspiracy" appears no fewer than 44 times in his latest pleading.  *See generally id.*  Apparently the notion is that, by invoking repeatedly the incantation that the movant Defendants "conspired" with Doe in Alabama to do terrible things elsewhere, Carter can establish jurisdiction over these Defendants *without* satisfying the due-process test requiring minimum contacts related to his claims.  *See, e.g.*, *In re Platinum and Palladium Antitrust Litigation*, 61 F.4th 242, 269-73 (2d Cir. 2023) (noting that "so-called conspiracy jurisdiction" is based on the idea that the acts of a conspirator in furtherance of the conspiracy may be attributed to its other members, and explaining the flaws with the theory) (citing caselaw); Alex Carver, *Rethinking Conspiracy Jurisdiction in Light of Stream of Commerce and Effects-Based Jurisdictional Principles*, 71 Vand. L. Rev. 1333, 1337 (2018) (hereinafter "Carver").

That is a legal fantasy in the Eleventh Circuit, and what is more, it is and would be incompatible with due-process standards as the Supreme Court has articulated them.  If any federal court in this circuit is going to concoct a new basis for exercising power over defendants, this is not the Court nor the case to do so.  *Cf. Smith v. Jefferson County Bd. of Educ.*, 378 F. App'x 582, 586 (7th Cir. 2010) (referring to conspiracy jurisdiction as a theory that is "marginal at best") (citing caselaw); *Carver* at 1340-41 (noting "numerous courts and commentators" have questioned "the constitutionality of conspiracy jurisdiction," which is "of relatively recent vintage").

"Conspiracy" jurisdiction is a state-law theory that Alabama courts have recognized and the Eleventh Circuit has not.  *Ex parte Maintenance Group, Inc.*, 261 So. 3d 337, 347 (Ala. 2017) (noting the theory requires pleading with particularity the overt acts supposedly done in furtherance of the conspiracy and that the overt acts "amount to a constitutionally sufficient contact with Alabama"); *see also Matthews v. Brookstone Stores, Inc.*, 469 F. Supp. 2d 1056, 1066-67 (S.D. Ala. 2007) (noting that Alabama recognizes conspiracy jurisdiction).  So far as Westlaw

discloses, no Eleventh Circuit opinion has analyzed and adopted as consistent with constitutional due process the notion of personal jurisdiction based on the acts of alleged co-conspirators, though a few cases have discussed it under state long-arm statutes. *Cf. J&M Assocs., Inc. v. Romero*, 488 F. App'x 373, 375 (11th Cir. 2012) (unpublished opinion) (per curiam) (noting, in the context of a default judgment, that Alabama recognizes conspiracy jurisdiction but not discussing whether that theory is consistent with federal due-process standards); *cf. also N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Science & Tech. Co.*, 124 F.4th 1322, 1338-39 (11th Cir. 2025) (discussing the Florida long-arm statute as relevant to "conspiracy" jurisdiction but not addressing due-process standards); *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1319 (11th Cir. 2006) (assessing Florida's long-arm statute but not addressing due-process standards); *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1281-83 (11th Cir. 2009) (also assessing Florida long-arm statute and holding a conspiracy claim was not adequately pleaded); *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217-18 (11th Cir. 1999) (similarly not addressing federal due-process law vis-à-vis "conspiracy" jurisdiction).

On the contrary, courts "may not ascribe the contacts of one co-defendant to another in determining personal jurisdiction." *Goldthrip v. Johnson & Johnson*, 2016 WL 7472146, *5 (S.D. Ala. 2016). The entire point of minimum-contacts jurisprudence as the Supreme Court has articulated it is that the test must be "met as to **each defendant** over whom a state court exercises jurisdiction." Carver at 1344 (emphasis added); *see also Thomas v. Brown*, 504 F. App'x 845, 848 (11th Cir. 2013) (noting that under the minimum-contacts test, personal jurisdiction is proper where a "defendant *himself* . . . create[s] a substantial connection with the forum state") (emphasis original) (quoting *Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990)). The notion of conspiracy jurisdiction perverts this principle by shifting attention away from a non-resident's contacts "with the forum state" and instead asking about a defendant's "relationship with another actor" who himself may have adequate contacts with the forum. Carver at 1344. That may be all well and good for establishing *liability* for conspiracy, but it is incompatible with the constitutional rule as to *jurisdiction*, which depends on a person's contacts with the forum. And for that matter, as the

Fortney and Buzbee Declarations show (see *supra*), Defendants did not have the contacts with Alabama that Carter alleges as the basis for so-called conspiracy jurisdiction.

What is worse, the idea of conspiracy jurisdiction blurs the line between assessing the facts of a defendant's contacts with Alabama and adjudicating whether those contacts might amount to the tort of conspiracy. Jurisdiction is a threshold inquiry; it does not permit courts to predict whether certain contacts with Alabama residents might suffice to constitute a conspiracy. The rules of liability and of jurisdiction "serve fundamentally different purposes." *Id.* at 1347. The idea of conspiracy jurisdiction "proves fatally difficult to apply in practice" because the "jurisdictional facts are frequently inextricably bound up with the merits." *Id.* at 1352; *cf. Goforit Entertainment LLC v. Digimedia, L.P.*, 513 F. Supp. 2d 1325, 1333 (M.D. Fla. 2007) (noting that whether an individual may be liable "is a different issue than whether there are enough contacts to subject the individual to personal jurisdiction").

This Court should, then, reject Carter's invitation to fashion a new basis for exercising personal jurisdiction over Defendants outside of the constitutional minimums demanded by due process. The requirements of *International Shoe* must be met "as to **each** defendant over whom a state court exercises jurisdiction." *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (emphasis added). To the extent Carter means to show jurisdiction outside of the minimum-contacts test, he fails.

Finally, while the Second Amended Complaint does little more than include drive-by references to agency, hinting that AVA Law or someone or something was acting as these Defendants' agents when doing something that supposedly targeted Alabama, (Doc. 32 at ¶¶ 27, 36, 38, 58), from an abundance of caution Defendants address the inadequacy of these putative agency allegations, and they do so by pointing out that the evidence contradicts Carter's notions of agency. As the Buzbee and Fortney Declarations demonstrate, neither AVA Law nor "Reciprocity" nor any other creature acted as Defendants' agents in Alabama. *See* Exs. 1 and 2. These Defendants never exercised control over how AVA Law or Reciprocity ran their businesses or hosted websites or solicited for clients. *See id.* They are entirely separate entities from Defendants, and they made their own decisions. That being the case, a court "cannot impute"

some other company's forum contacts to these Defendants. *See Storey v. James Hardie Building Indus.*, 2023 WL 6366568, *5 (M.D. Ala. 2023); *see also United States v. Mortgage Investors Corp.*, 987 F.3d 1340, 1355-56 (11th Cir. 2021) (considering imputation proper where the complaint alleged that the out-of-forum defendant "unilaterally controlled" the forum defendant, "ignored corporate formalities, and commingled" assets); *Goldthrip v. Johnson and Johnson*, 2016 WL 7472146, *5-6 (S.D. Ala. 2016) ("Courts may not ascribe the contacts of one co-defendant to another in determining personal jurisdiction," and "mere control and dominion" is not enough to trigger alter-ego status.). Since Carter alleges nothing like these factors here, nothing that amounts to an alter-ego theory or that would justify jurisdictional veil-piercing (let alone under the proper body of state law, as addressed below), this Court's analysis of jurisdiction will rest, as is usually the case, on each Defendant's own contacts with Alabama. Since those contacts are inadequate, this Court lacks personal jurisdiction.

## II.    THIS DISTRICT IS NOT A PROPER VENUE UNDER 28 U.S.C. § 1391.

Carter alleges that venue is proper because Doe resides here, and because "Buzbee and Fortney provided legal services to [Doe], and spoke and met with her, within this District." Doc. 32 at ¶ 28. Moreover, Carter alleges "a substantial part of the events or omissions" regarding the "unlawful and unethical conspiracy" that "was born in Alabama" and "acts in furtherance of the conspiracy" occurred in this District. *Id.*

Contrary to these conclusory assertions, neither Doe's residency nor her attorneys speaking with or meeting with Doe provides a viable basis for venue in this District. Moreover, Carter's alleged facts make it clear no actionable conduct, let alone a "substantial part" of the alleged actionable conduct, occurred in Alabama.

In pertinent part, 28 U.S.C. § 1391 states:

> (b) A civil action may be brought in:
>
> > (1) a judicial district in which any defendant resides, *if all defendants are residents of the State in which the district is located*;

16

(2) a judicial district in which a _substantial part_ of the events or omissions giving rise to the claim occurred… ; or

(3) _if there is no district in which an action may otherwise be brought as provided in this section_, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1-3) (emphasis added).

Because the Buzbee Defendants are all citizens of Texas, the Southern District of Alabama is not a proper venue under § 1391(b)(1). Additionally, even taking the Second Amended Complaint at face value, none of the Buzbee Defendants' alleged actionable conduct occurred in Alabama, much less a "substantial part of the events or omissions giving rise to the claim[s]." Instead, every alleged act that could conceivably support Carter's claims against the Buzbee Defendants occurred in the Southern District of New York or the Southern District of Texas, making both of those Districts proper venues under § 1391(b)(2). Because there are multiple proper venues under § 1391(b)(2), § 1391(b)(3) is inapplicable.

"When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." _Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex._, 571 U.S. 49, 56 (2013). Because the Second Amended Complaint fails to establish venue is proper in the Southern District of Alabama in accordance with § 1391(b), Carter's claims against the Buzbee Defendants should be dismissed under 28 U.S.C. § 1406(a).

### a.    Section 1391(b)(1) is inapplicable because not all Defendants are Alabama residents.

First, 28 U.S.C. § 1391(b)(1) is plainly inapplicable based on the face of the Second Amended Complaint. Carter alleges that Doe is an Alabama resident while the Buzbee Defendants are all citizens of Texas. (Doc. 32 at ¶¶ 15-18.) Moreover, Carter alleges that the Curis Defendants

are citizens of New York. (*Id*. at ¶ 22.)  Because the Defendants are residents of different states, § 1391(b)(1) does not apply.

> **b.      No district in Alabama is a proper venue under § 1391(b)(2), because none of the Buzbee Defendants' alleged actionable conduct occurred in Alabama.**

28 U.S.C. § 1391(b)(2) establishes venue is proper in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." An event "directly give[s] rise to a claim" if it "ha[s] a close nexus to the wrong". *Russo v. Raimondo*, 2024 WL 4571431, at *4 (S.D. Ala. Oct. 24, 2024) (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-72 (11th Cir.2003)). Put more directly, "[**o]nly the events that directly give rise to a claim are relevant**." *Jenkins,* at 1371 (emphasis added).  "And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered. *Id.* Further, where a plaintiff asserts multiple claims against multiple defendants, *"venue must be proper ... as to each party*," and "[t]he fact that a claim for some of the plaintiffs or against some of the defendants arose in a particular district does not make that district a proper venue for parties as to whom the claim arose somewhere else." Wright & Miller, 14D *Fed. Prac. & Proc*. § 3807 (4th ed.) (alterations retained)).

Here, the Second Amended Complaint includes the following causes of action:

1.      Malicious Prosecution (All Defendants) (Doc. 32 at ¶¶ 137-148);

2.      Abuse of Process (All Defendants) (Doc. 32 at ¶¶ 149-161);

3.      Conspiracy to Commit Malicious Prosecution and Abuse of Process (All Defendants) (Doc. 32 at ¶¶ 162-165); and

4.      Defamation (Jane Doe) (Doc. 32 at ¶¶ 166-182).

Based on the above-established principle that venue must be proper as to all claims against all defendants, the Buzbee Defendants will address the propriety of venue as to Counts One, Two, and Three, which are the only causes of action against them.

**1.    None of the events giving rise to Carter's Malicious Prosecution and Abuse of Process claims occurred in Alabama.**

In support of both his malicious prosecution and abuse of process claims, Carter alleges that Doe – through the Buzbee Defendants – sued Carter in the SDNY, and plainly states the New York lawsuit is "**the case at issue here**." (Doc. 32 at ¶¶ 112, 138-139, 150-151.) Accordingly, Carter admits the underlying proceedings forming the basis of these claims occurred in New York. Nothing within the Second Amended Complaint regarding malicious prosecution or abuse of process allegedly occurred in the Southern District of Alabama, or *anywhere else* in Alabama.

On the contrary, all of the alleged actions associated with Carter's malicious prosecution and abuse of process claims occurred outside of Alabama. The Second Amended Complaint alleges that:

1.  Mr. Buzbee filed the SDNY Action against Mr. Carter *in New York*;

2.  Mr. Fortney assisted in pursuing the SDNY Action *in New York*;

3.  Mr. Buzbee and Mr. Fortney continued to pursue the SDNY Action *in New York* even after Mr. Carter alleged that the claims were false; and

4.  Doe actively participated in the prosecution of the SDNY Action against Mr. Carter *in New York*.

(Doc. 32 at ¶¶ 137-161.)

Moreover, Buzbee and Fortney are alleged to have undertaken all drafting of pleadings, motions, and other filings from their home state of Texas where their Houston-based law firm is located before having a New York-based lawyer/law firm file the documents for them. (Doc. 32 at ¶¶ 19-20.) Accordingly, *all* actions which could in any way support Carter's claims for malicious prosecution or abuse of process occurred in either New York or Texas.

Carter's timeline of events further confirms that no actionable conduct occurred in the Southern District of Alabama. Specifically, Carter alleges the Buzbee Defendants—all based out of Texas—initiated and pursued meritless litigation against him on behalf of Doe in New York until the case was voluntarily dismissed on February 14, 2025. The *only* time any of the Buzbee

Defendants were alleged to have been present in Alabama was: 1) Fortney accompanying Doe back to Alabama following the December 2024 NBC interview; and 2) Fortney's return trip to Alabama to meet with Doe the day before the dismissal to convince Doe to dismiss the New York lawsuit. (Doc. 32 at ¶¶ 91, 113-114, 121; Doc. 21-1 at ¶8-9.[6])

Accordingly, venue is wholly improper within this District as to either the malicious prosecution or abuse of process claims against the Buzbee Defendants. Wright & Miller, 14D *Fed. Prac. & Proc*. § 3807 (4th ed.).

> **2.    Carter has not alleged the Buzbee Defendants committed a single overt act in Alabama which was undertaken *in furtherance of* the underlying conspiracy, let alone alleged a "substantial part" of these overt acts occurred within this District.**

Civil conspiracy requires "a primary tort plus […] (1) an agreement between two or more parties; (2) an <u>overt act in furtherance of</u> the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." (emphasis added). *AT&T Corp. v. Atos IT Sols. & Servs., Inc*., 714 F. Supp. 3d 310, 339 (S.D.N.Y. 2024) (citation omitted).  In civil conspiracy, it is the overt acts producing damage to the plaintiff that give rise to liability. *Powell v. Kopman*, 511 F. Supp. 700, 704 (S.D.N.Y. 1981).

Carter spends an inordinate amount of time trying to convince the Court there was a nefarious conspiracy to defraud and extort him into a quick and meritless payday, and there were countless phone calls and interviews "hatching" this conspiracy where at least one party to this action was within the Southern District of Alabama. In fact, Carter is so intent on conveying this message that the words "extort" and "fraud" (or some variation thereof) appear *sixty-eight (68)* times throughout the Second Amended Complaint.

---

[6] Of note, Plaintiff claims that on February 13, 2025, Defendant Fortney met with his client, Jane Doe, and during this privileged meeting between an attorney and his client, Fortney allegedly told Doe that Plaintiff had "made threats against [her] life, and it was too dangerous to continue the case." [Doc. 32, ¶ 115]. This allegation is of course a red herring, as Plaintiff has not stated a cause of action against Buzbee, Fortney, or The Buzbee Law Firm in any way related to these alleged privileged statements. Accordingly, this Alabama meeting on February 13, 2025 is completely irrelevant to the issues before this Court.

Of course, Carter's over-the-top narrative is really just window dressing designed to distract from the legal issues. "[A] claim for civil conspiracy may stand only if it is connected to a separate underlying tort." *ACR Sys., Inc. v. Woori Bank*, 232 F. Supp. 3d 471, 478–79 (S.D.N.Y. 2017) (quoting *Treppel v. Biovail Corp.*, No. 03 CIV. 3002 (PKL), 2005 WL 2086339 (S.D.N.Y. Aug. 30, 2005)).   However, New York does not recognize a civil cause of action for extortion or attempted extortion, *Minnelli v. Soumayah*, 41 A.D.3d 388, 389, 839 N.Y.S.2d 727, 728 (2007), and Carter has no underlying cause of action for fraud against any of the Defendants. Accordingly, all of Carter's allegations regarding extortion and fraud or the meetings and phone calls to discuss and plan the extortion and fraud are irrelevant and should be ignored.

Instead, the Court must focus its inquiry on which specific allegations are material to Carter's claims of a conspiracy to commit malicious prosecution and/or abuse of process, which are the only underlying torts Carter has stated against these Defendants.  Further, for the purpose of this venue inquiry, the Court must determine which *overt acts* the Buzbee Defendants allegedly undertook *in furtherance of* the conspiracy, not merely their discussions of or part in the alleged underlying conspiracy. *Hamil,* 2023 WL 6204571, at *13. Finally, the Court must determine whether a "substantial part" of the Buzbee Defendants' overt acts in furtherance of the underlying conspiracy occurred within this District if venue here is to be proper. This inquiry leads to an inevitable outcome: even if Carter's allegations are taken as true, none of the Buzbee Defendants committed a single overt act in this District in furtherance of the alleged conspiracy, let alone committed a substantial part of the acts in furtherance of the alleged conspiracy.

Defendant Buzbee has never been to Alabama for any purpose or reason associated with Ms. Doe or the case against Carter. (Doc. 21-1 at ¶ 10.) None of Carter's allegations in any way allege Buzbee was ever present in Alabama, let alone that he committed any overt act in furtherance of a conspiracy while present in Alabama. Instead, all of Buzbee's alleged acts in furtherance of the conspiracy occurred in Texas or New York.

Defendant Fortney is alleged to have visited this District on only two occasions for any purpose or reason associated with Doe or the case against Carter. Specifically, Fortney is alleged

21

to have accompanied Doe back to Alabama following the December 2024 NBC interview and then to have returned to Alabama to meet with Doe on February 13, 2025 to convince her to dismiss the SDNY Action, which was dismissed one day later. (Doc. 32 ¶¶ 91, 113-114, 121; Doc. 21-1 ¶¶ 8-9.)

Regarding his first Alabama visit, Fortney is alleged to have met with Doe in December 2024 within this District "in furtherance of their conspiracy." (Doc. 32 ¶ 91[7].) Carter makes no attempt to allege any factual allegations to support such a conclusory statement. Not a single word in the Second Amended Complaint sheds any sort of light on what was discussed or what actions occurred during or as a result of this meeting between Fortney and Doe in December 2024. Accordingly, Carter's vague assertion that Fortney met with Doe "in furtherance of their conspiracy" is insufficient to support venue. *Concrete Co. v. Lambert*, 510 F. Supp. 2d 570, 587 (M.D. Ala. 2007) (citing *Fullman v. Graddick*, 739 F.2d 553 (11th Cir.1984)); *see also DDR Const. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 659 (S.D.N.Y. 2011).

As vague and conclusory as Carter's allegations are regarding Fortney's first Alabama visit, Carter's allegations regarding the second Alabama visit are equally inadequate. After spending 34+ pages attempting to convince the Court that the Buzbee Defendants and Doe spent months working together to pull off an extensive conspiracy to extort Carter by filing the New York lawsuit, Carter suddenly reverses course.

Specifically, Carter alleges Buzbee dispatched Fortney to Alabama to meet with Doe and convince her to *dismiss* the very lawsuit Carter claims was used to maliciously prosecute him and abuse the legal process at his expense. (Doc. 32 at ¶¶ 113-114.)  Moreover, Carter claims Fortney lied to Doe regarding the true reasons for the dismissal in order to get Doe to agree to the dismissal.

---

[7] Carter erroneously cites to Fortney Aff., ¶ 12 in support of this conclusory allegation; however, ¶ 12 of Mr. Fortney's Affidavit states "[a]s the Complaint notes, Tony Buzbee first met Ms. Doe in Houston, not Alabama. I was present at that meeting." *See* Doc. 21-1, p.2 ¶ 12. Thus, this citation is inapposite.

(*Id.*[8]) Carter then claims these actions were taken "in furtherance of the conspiracy at issue in this lawsuit." (*Id.* at ¶ 114.)

Carter thus alleges the Buzbee Defendants were acting *in furtherance of* a conspiracy between Doe and the Buzbee Defendants to maliciously prosecute Carter by outright lying to Doe ***to convince her to voluntarily dismiss the lawsuit against Carter***. In other words, the sole purpose of Fortney's second and final trip to Alabama—according to Carter—was to reverse course and completely undo any sort of progress made in furtherance of the conspiracy against Carter. Suggesting a dismissal of a lawsuit is inconsistent with acting in furtherance of an alleged conspiracy.

Even if the Court sets aside these illogical allegations that completely undermine Mr. Carter's argument regarding a conspiracy between Doe and the Buzbee Defendants, the Court must still conclude venue is improper in this District for such a claim. First, no "overt acts" in furtherance of the conspiracy against Mr. Carter were conducted during the February 2025 meeting between Fortney and Doe. In fact, the exact opposite occurred: the lawsuit was dismissed the following day, so to the extent any "overt acts" occurred in Alabama, the acts were conducted to reverse or otherwise discontinue the underlying conspiracy. Moreover, even if the dismissal of the SDNY Action were somehow perceived as an act in furtherance of the underlying conspiracy, this meeting—even when considered jointly with Fortney's first visit to Alabama—cannot reasonably amount to a "substantial part" of the actionable conducted required to place venue for these claims within this District under § 1391(b)(2).

The facts of this case are analogous to *Rubber Res., Ltd., LLP v. Allen P. Press et al*, 2009 WL 211556 (M.D. Fla. Jan. 27, 2009). There, the plaintiff, Rubber Resources, sued two lawyers

---

[8] Of note, Carter's allegations that Fortney lied to Doe by "falsely, maliciously, and manipulatively" telling Doe that Carter made threats against her life and it was too dangerous to continue the case are yet another example of irrelevant window dressing designed to distract the Court from the issues at hand. (Doc. 32, ¶¶ 115, 121.) Neither Fortney individually nor the Buzbee Defendants collectively are accused of defamation or any other actionable conduct and thus, Fortney's alleged statements during this meeting are not relevant.

and their law firm for malicious prosecution, abuse of process, and conspiracy to maliciously prosecute (among other claims) in a Florida federal court. *Id.* at *1. The underlying proceeding forming the basis of the malicious prosecution and abuse of process claims was a lawsuit filed in Missouri, in which Rubber Resources ultimately prevailed on summary judgment. *Id.* The lawyer and law firm defendants were residents of Missouri. *Id.* During the course of the Missouri lawsuit, the parties convened in Florida for a single deposition of a Rubber Resources corporate representative. *Id.* Otherwise, no other events in the lawsuit occurred in Florida. *Id.*

The *Press* court observed that "the events 'giving rise' to the claim for malicious prosecution were the initiation of the lawsuit in Missouri and the entry of summary judgment in Rubber Resources' favor in the Missouri court. Although the *Press* defendants took [plaintiff's representative's] deposition in Florida, 'only those locations hosting a substantial part of the events are appropriate for venue.'" *Id.* at *2 (quoting *Jenkins*, 321 F.3d at 1371). In short, even though the defendants visited the Middle District of Florida to conduct a deposition directly associated with the Missouri lawsuit, that single activity did not give rise to the malicious prosecution claim and "[did] not comprise a substantial part of the events underlying the claim." *Id.*

Like the malicious prosecution claim, the *Press* court highlighted the fact the no "overt act in pursuance of the conspiracy" occurred in Florida. *Id.* at *2. While applying Florida law, the *Press* court quoted a nearly identical principle of Alabama conspiracy law in concluding "[t]he gist of a civil action for conspiracy is not the conspiracy itself, but the civil wrong which is done pursuant to the conspiracy." *Id.* (internal citations omitted). The court concluded that all of the overt acts associated with the actual malicious prosecution occurred in Missouri, even though a deposition—an act in actual furtherance of the Missouri lawsuit—occurred in Florida. *Id.*

Finally, the *Press* court held that venue was improper for the plaintiff's abuse of process claim, because no allegation of the "abuse" necessary to sustain such a claim occurred in Florida. Instead, all of the alleged abuse occurred in Missouri associated with the Missouri action. *Id.* And for the same reasons the court found venue was improper for the underlying tort claims, it also

24

held venue was improper for the conspiracy to commit the underlying tort (in that case, malicious prosecution). *Id.*

Like the attorneys and law firm in *Press*, the Buzbee Defendants are not residents of the forum state. Unlike the *Press* defendants who conducted a deposition in the forum state, the Buzbee Defendants never conducted any significant activity in Alabama related to the underlying SDNY Action. Accordingly, if voluntarily conducting a deposition in the subject forum in direct pursuit of the underlying proceedings is not considered an "overt act" or a "substantial part" of subsequent malicious prosecution, abuse of process, and conspiracy claims, there is no conceivable way that a lawyer flying into the forum to meet with a client and advise her to dismiss the underlying proceedings can provide grounds for venue.

The Second Amended Complaint goes to great lengths to demonstrate that *nothing* significant to this lawsuit occurred in Alabama. Every fact that Carter alleges in support of his claims occurred in New York or Texas, not Alabama. Accordingly, § 1391(b)(2) provides for proper venue in the Southern District of New York (where the underlying proceedings were filed) and potentially the Southern District of Texas (where the Buzbee Defendants reside and conducted their business associated with lawsuit against Carter), but not here.

> **c.    Section 1391(b)(3) is inapplicable, because § 1391(b)(2) provides for proper venue elsewhere.**

As plainly stated in the statute, § 1391(b)(3) only applies as a last resort "if there is no district in which an action may otherwise be brought as provided in this section…." As established herein, under § 1391(b)(2), venue would be proper in the Southern District of New York or the Southern District of Texas.  Consequently, § 1391(b)(3) is inapplicable and provides no basis for venue in the Southern District of Alabama.

## III.    CARTER'S CLAIMS FAIL BECAUSE, UNDER NEW YORK LAW, THEY DO NOT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

When deciding a Rule 12(b)(6) motion, the Court must "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions

. . . , in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). From these sources, the Court must draw "all reasonable inferences in the [non-movant's] favor." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). However, the Court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In applying this standard, the Supreme Court has suggested that courts adopt a "two-pronged approach": "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 556 U.S. at 682). Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S at 678 (quoting *Twombly*, 550 U.S at 556).

Carter asserts three claims against the Buzbee Defendants: (i) malicious prosecution, (ii) abuse of process, and (iii) civil conspiracy. (Doc. 32 ¶¶ 137-165.) Under New York law, which applies to these claims because they are based on alleged conduct that occurred in the SDNY Action, all claims must be dismissed for failure to state a claim.

"[A] federal court sitting in diversity will apply the choice of law rules for the state in which it sits." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Alabama courts follow the traditional conflict-of-law principles of *lex loci contractus* and *lex loci delicti*. *Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala. 2009). Since the claims against the Buzbee Defendants are tort claims, *lex loci delicti* applies. "Under the principle of *lex loci delicti*, an

Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred." *Precision Gear Co. v. Continental Motors, Inc.*, 135 So. 3d 953, 956 (Ala. 2013) (quoting *Lifestar Response of Ala., Inc.*, 17 So. 3d at 213). An "injury in a malicious-prosecution action occurs in the state where the allegedly malicious lawsuit was [allegedly] terminated in favor of the complaining party." *Ex parte U.S. Bank Nat. Ass'n*, 148 So. 3d 1060, 1070 (Ala. 2014); *see also id.* ("[T]he principle of *lex loci delicti* requires that the law of the state in which the antecedent lawsuit was litigated governs a claim of malicious prosecution.").

New York law applies to Carter's malicious prosecution claim because it is based on wrongdoing stemming from the SDNY Action, which was filed and terminated in New York. This same logic applies to Carter's abuse of process claim. And because New York law applies to the underlying tort claims, it applies to Carter's civil conspiracy claim as well.

### a.    Carter fails to state a claim for malicious prosecution.

New York courts, like those in Alabama, disfavor claims for malicious prosecution. Public policy favors bringing wrongdoers to justice, and therefore, "must afford accusers room for benign misjudgments," which "fosters the long-standing belief that the court system is open to all without fear of reprisal by way of retaliatory lawsuits." *Tray Wrap, Inc. v. Pac. Tomato Growers Ltd.*, 18 Misc.3d 1122(A), 856 N.Y.S.2d 503 (Sup. Ct.), *amended*, 2008 WL 9453492 (N.Y. Sup. Ct. 2008), *aff'd*, 61 A.D. 3d 545, 877 N.Y.S.2d 71 (N.Y. 2009). "It is precisely for this reason that a plaintiff asserting a cause of action for malicious prosecution must satisfy a heavy burden." *Id.*

This rationale is akin to the explanation provided by the Alabama Supreme Court:

> "Malicious prosecution is an action disfavored in the law." *Cutts v. American United Life Insurance Co.*, 505 So. 2d 1211, 1212 (Ala. 1987). The reason for such disfavor is clear: "[P]ublic policy requires that all persons shall resort freely to the courts for redress of wrongs and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge." *Boothby Realty Co. v. Haygood*, 114 So. 2d 555, 559 (Ala. 1959).

*Eidson v. Olin Corp.*, 527 So. 2d 1283, 1284 (Ala. 1988). "If this were not the case, a large proportion of unsuccessful civil actions would be followed by suits for malicious prosecution, and there would be a piling of litigation on litigation without end." *Boothby Realty*, 114 So. 2d at 559.

To state a claim under New York law for malicious prosecution of a civil action, a plaintiff must allege: (1) the initiation of an action by the defendant against him; (2) begun with malice; (3) without probable cause to believe it can succeed; (4) that terminates in favor of the plaintiff; and (5) causes special injury. *Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 284 (E.D.N.Y. 2014) (citing *Engel v. CBS, Inc.*, 145 F.3d 499 (2d Cir. 1998)).

"A malicious civil prosecution [claim] is one that is begun in malice, without probable cause to believe it can succeed, and which, after imposing a grievance akin to the effect of a provisional remedy, finally ends in failure." *Engel v. CBS, Inc.*, 711 N.E.2d 626, 632 (N.Y. 1999) (citation omitted). A plaintiff's burden to prove malice and an entire lack of probable cause is "no easy feat." *Id.* at 631 (citation omitted). In the present case, Carter's malicious prosecution claim against the Buzbee Defendants fails, because he cannot satisfy the second, third, fourth, or fifth elements of such an action under New York law. The added factual allegations between the first Complaint and the Second Amended Complaint do not save Carter's pleading from dismissal under Rule 12(b)(6).

### 1.    The Second Amended Complaint fails to sufficiently allege malice.

The gravamen of a claim for malicious prosecution is the presence of malice, or the intent to harm. Malice is defined as "conscious falsity." In *Santoro v. Town of Smithtown*, 40 A.D. 3d 736, 835 N.Y.S.2d 658 (2d Dep't 2007), a New York appellate court affirmed dismissal of a claim for malicious prosecution because the plaintiffs failed to "allege any facts sufficient to rise to the level of actual malice, i.e., some deliberate act punctuated with awareness of conscious falsity." *Id.* at 738 (internal quotation marks omitted) (quotation omitted); *see also Boose v. City of Rochester*, 71 A.D.2d 59, 69, 421 N.Y.S.2d 740 (4th Dep't 1979) ("Malice means 'malice in fact' or 'actual malice,' not malice implied by law.") (quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500,

28

377 N.E.2d 975 (N.Y. 1978)). There must be adequate factual allegations to show that the defendant "commenced the proceeding because of a wrong or improper motive, something other than a desire to see the ends of justice served." *Id.*

Carter's Second Amended Complaint maintains the claim that the Buzbee Defendants filed the SDNY Action without "a legitimate purpose" and "with the intent to extort Carter." (Doc. 32 ¶¶ 73, 137.)[9] Carter asserts that the Buzbee Defendants "either knew that the statements [alleged in the SDNY Action] were false,[10] and/or acted with reckless disregard for the truth when initiating proceedings against Carter." (*Id.* at ¶ 140.) These allegations, however, are conclusory in nature, and therefore, should be disregarded. *Ashcroft*, 556 U.S. at 678. The Second Amended Complaint contains no facts suggesting *why* or *how* the Buzbee Defendants knew or should have known that the SDNY allegations were false at the time or before filing the SDNY Action. Rather, it relies on unsupported assumptions, (Doc. 32 ¶ 146 ("At a minimum, [the Buzbee Defendants] initiated the lawsuit with a reckless disregard for the falsity of the allegations."); *id.* at ¶ 154 ("a simple Google search would have revealed that Doe's allegations were false and had no chance of success")), which are not sufficient to state a claim for malicious prosecution under New York law. Further, Carter's Second Amended Complaint continues to rely on information that came out *after* the SDNY Action was filed, (Doc. 32 ¶ 155), which, again, is insufficient to state a claim for malicious prosecution.

Moreover, courts are permitted to infer from the factual allegations in a complaint "'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d at

---

[9] These allegations are no different than the original allegations. (*See* Doc. 1 ¶¶ 25 ("Doe did not initiate this legal action with a legitimate purpose. Instead, the lawsuit was filed with the intent to extort Mr. Carter."); *id.* at ¶ 63 ("Defendants did not initiate th[e] [SDNY Action] with a legitimate purpose. Instead, the lawsuit was filed with the intent to extort Mr. Carter.").)

[10] In attempting to hide the fact that there are no factual allegations related to the alleged knowing falsity of the claims at the time the SDNY Action was filed, the Second Amended Complaint uses the legal conclusion "false" nearly 115 times. It also uses the legal conclusion "frivolous" six times, "meritless" six times, and "manufactured" once.

1290 (quoting *Iqbal*, 556 U.S. at 682). In these circumstances, an obvious alternative explanation exists for the Buzbee Defendants' conduct: they were fiercely advocating for their client, Doe, whom they believed to be a legitimate victim of Carter's alleged wrongdoing, and, by sending the Demand Letter, were giving Carter an opportunity to settle the claims before they were filed. That the Buzbee Defendants requested a confidential mediation with Carter to avoid filing the amended complaint in the SDNY Action is not fairly attributable to a nefarious motive. Rather, obtaining a financial settlement to resolve the claims is exactly what litigation, and settling litigation, is all about. *See also Lenaar v. Lubavitch*, 64 Misc. 3d 1238(A), 118 N.Y.S.3d 371, at *15 (Civ. Ct. Sept. 6, 2019) (table) (slip copy) ("In general, attorneys are free to select a number of reasonable courses of action in prosecuting a client's case without exposing themselves to liability[.]"). The Court can, and should, infer from this alleged conduct the obvious alternative explanation of lawyers, on behalf of their firm, doing their job to the best of their abilities on behalf of their client.

To the extent any factual allegations in the Second Amended Complaint purport to support Carter's conclusory allegations of malice, they all relate to facts known (or potentially known) to the Buzbee Defendants *after* the amended complaint in the SDNY Action was filed. Specifically, Carter relies on the NBC News coverage of the issues, including "inconsistencies" identified by NBC. (Doc. 32 ¶ 155(a)-(e).) However, the Second Amended Complaint acknowledges the NBC coverage took place in December 2024, **after** Defendants filed the SDNY Action in October 2024 and amended it to include Carter on December 8, 2024. (*See id.* at ¶ 15 ("Doe sued Mr. Carter in the [SDNY] . . . . She *later further* published and amplified her malicious lies to a global audience on NBC News.") (emphasis added).)

Therefore, the allegations in the Second Amended Complaint related to the information learned by the Buzbee Defendants (whether through the NBC coverage or otherwise) are not relevant to the legal question at issue, which is whether the Buzbee Defendants' acts of filing a complaint in the SDNY Action, sending the Demand Letter, and filing the amended complaint in the SDNY Action that named Carter as a defendant, were done with malice or conscious awareness

30

of the falsity of the allegations. Carter has alleged no facts sufficient to state a claim that the Buzbee Defendants filed the SDNY Action with actual knowledge of the falsity of the allegations.

### 2. Carter cannot show that the SDNY Action was filed without probable cause to believe it could succeed.

For more than a century, New York courts have firmly established that "malicious prosecution claims are not encouraged, and thus, without a clear and satisfactory showing that plaintiffs in the previous action lacked reasonable grounds, the case [must] be dismissed." *Engel*, 711 N.E.2d at 629-30 (citing *Ferguson v. Arnow*, 97 Sickels 580, 37 N.E. 626 (N.Y. 1894)). "To hold otherwise would mean that malicious prosecution cases 'could be maintained for the unsuccessful prosecution of many of the actions which come upon appeal to this court, and a large proportion of unsuccessful actions could be followed by such an action, and litigation thus interminably prolonged.'" *Id.* (quoting *Ferguson*, 37 N.E. at 627).

Therefore, to state a malicious prosecution claim under New York law, Carter must show "an entire lack of probable cause." *Engel*, 711 N.E.2d at 631. "Probable cause" is defined as "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *McDaniel v. City of New York*, 585 F. Supp. 3d 503, 518 (S.D.N.Y. 2022) (quotation omitted); *see also Perryman v. Village of Saranac Lake*, 41 A.D.3d 1080, 839 N.Y.S.2d 290, 292 (3d Dep't 2007) (defining probable cause as "such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty."). "Because obviously less in the way of grounds of belief will be required to justify a reasonable man in bringing a civil rather than a criminal suit, when the underlying action is civil in nature, the want of probable cause must be patent." *Butler v. Ratner*, 210 A.D.2d 691, 693, 619 N.Y.S.2d 871, 873 (3d Dep't 1994) (citations and internal quotation marks omitted). Thus, if a defendant "had probable cause to assert *some* of their causes of action, [a] plaintiff[ ] [cannot] maintain a malicious prosecution claim." *Perryman*, 41 A.D.3d at 1082, 839 N.Y.S.2d at 292 (emphasis in the original).

Determining "the propriety of defendants' conduct [in bringing the prior action], is to be decided by the facts as they appeared to be at the time the prosecution was instituted, not after the action has been determined." *Levitin v. Miller*, No. 92–CV–520, 1994 WL 376078, at *5 (S.D.N.Y. July 15, 1994) (citing caselaw). Moreover, a presumption of probable cause may exist as a result of a "judicial determination, whether final or preliminary," which previously reviewed the evidence and found it sufficient. *Rubin v. Lutfy*, 25 Misc.3d 1242(A), 906 N.Y.S.2d 783, 784 (Sup. Ct. 2009), *judg't entered*, (N.Y. Sup. Ct. 2010) ("A prior judicial recognition of potential merit of the underlying case creates a presumption that it did not lack probable cause.") (citing caselaw).

### i. A ruling by the Court in the SDNY Action created a presumption of probable cause.

In the SDNY Action, Carter's attorneys went to extraordinary lengths to try to strike the amended complaint by arguing (as they allege in the Second Amended Complaint in this case)[11] that the "revelations from the NBC interview" show that the amended complaint's allegations were "baseless." *Doe v. Combs, et al.*, 1:24-cv-07975-AT, (Doc. 48); *see also id.* at (Docs. 38, 41, 42, 46, 48). However, the Court in the SDNY Action *denied* Carter's motion *on the merits*. *Id.* at (Doc. 53) and *id.* at fn. 2 ("On the merits, Carter's motion to strike is denied."). This ruling was "a recognition of the potential merit of [the] prior action" and "is either prima facie evidence of probable cause to initiate the prior proceeding or conclusive evidence of the same," thereby creating a presumption of probable cause. *Tray Wrap, Inc.*, 856 N.Y.S.2d 503 at *14 (collecting cases); *see also Rubin*, 906 N.Y.S.2d at 784 ("A prior judicial recognition of potential merit of the underlying case creates a presumption that it did not lack probable cause.").

### ii. The Second Amended Complaint fails to rebut this presumption or show that Defendants lacked probable cause to file the SDNY Action and the amended complaint at issue.

In the instant suit, in order to support his malicious prosecution claim, Carter points first to mere conjecture (Doc. 32 at ¶ 66 ("A simple Google search or other public record search by any

---

[11] Doc. 32 ¶¶ 156, 157, 170, 171. 179.

of the Defendants of Jane Doe (using her real name) would have immediately cast doubt on her credibility[.]").)  Carter also continues to rely on information that was revealed for the first time in an NBC News article published on December 13, 2024.  (*Id.* at ¶¶ 93-102.)  However, that was *after* Defendants filed the SDNY Action in October 2024 and amended it to include Carter on December 8, 2024.  (Carter acknowledges the timing. (*Id.* at ¶ 15 ("Doe sued Mr. Carter in the [SDNY] . . . . She *later further* published and amplified her malicious lies to a global audience on NBC News.") (emphasis added).)  This timing is important, because the question of whether Defendants had probable cause to file the SDNY Action must be decided based on "the facts as they appeared to be ***at the time the prosecution was instituted***, not after the action has been determined." *Levitin*, No. 92–CV–520, 1994 WL 376078, at *5 (S.D.N.Y. July 15, 1994) (citing *Marion Steel Co.*, 227 N.Y.S. at 678) (emphasis added).

Carter's Second Amended Complaint alleges no facts that sufficiently show that Defendants lacked probable cause to bring the SDNY Action and the amended complaint at issue ***at the time of filing***.  Instead, the Second Amended Complaint makes speculative statements like "a simple Google search would have revealed that Doe's allegations were false and thus the lawsuit had no chance of success."  (Doc. 32 at ¶ 142.)  These allegations, even if true, cannot form the basis of a malicious prosecution claim as a matter of law.[12] *Levitin*, 1994 WL 376078, at *5. Carter must show that Defendants knew of the falsity of the allegations at the time the SDNY Action was filed.  The SDNY Court's decision to ***deny*** Carter's motion ***on the merits*** negates Carter's facially invalid allegations in the Second Amended Complaint.  Consequently, the malicious prosecution claim fails to state a claim upon which relief can be granted.

---

[12] All other statements regarding probable cause in the Second Amended Complaint are mere unsupported legal conclusions that should be disregarded.  *McDaniel v. City of New York*, 585 F. Supp. 3d 503, 518 (S.D.N.Y. 2022), *report and recommendation adopted*, No. 19CIV11265ATRWL, 2022 WL 874769 (S.D.N.Y. Mar. 24, 2022) (dismissing plaintiff's malicious prosecution claim because complaint's allegations regarding "probable cause" were "only conclusory statements without any supporting factual allegations" and "[w]ithout more, the Court cannot find that [the plaintiff] has overcome the presumption of probable cause").

3.    **The SDNY Action did not terminate in Carter's favor, because it was voluntarily dismissed as part of an agreement and compromise.**

When a plaintiff voluntarily dismisses a civil action resulting from an inducement from the defendant or as part of an agreement, compromise, or settlement, no malicious prosecution claim can be sustained because, as a matter of law, that result does not constitute a termination in the plaintiff's favor. *See, e.g., Mobile Training & Educ., Inc. v. Aviation Ground Sch. of Am.*, 28 Misc. 3d 1226(A), 958 N.Y.S.2d 61, at *8 (Sup. Ct. 2010) ("It is settled that if the case was voluntarily dismissed as a result of a settlement or compromise, it would not support a claim for malicious prosecution."); *Levy's Store, Inc. v. Endicott–Johnson Corp.*, 272 N.Y. 155, 5 N.E.2d 74 (N.Y. 1936) (holding that a prior action was not a favorable termination when it was "terminated without regard to its merits or propriety by agreement or settlement of the parties or solely by the procurement of the accused as a matter of favor or as the result of some act, trick or device preventing action and consideration by the court"); *Aquilina v. O'Connor*, 59 A.D. 2d 454, 399 N.Y.S.2d 919, 921 (1977) (holding that, "in the absence of a compromise or inducement offered by the defendant in the primary action, the voluntary discontinuance by the plaintiff therein is tantamount to a successful termination of such action in favor of the defendant therein").[13]

In the present case, Carter cannot satisfy the "favorable termination" element, because the SDNY Action was dismissed as the result of an agreement, compromise, or settlement.[14] On

---

[13] *See also, e.g.*, *Pagliarulo*, 30 A.D.2d 840, 293 N.Y.S.2d 13 (holding that the defendant's dismissal of the prior action was not a favorable termination because it was dismissed pursuant to an agreement between the parties); *Loeb v. Teitelbaum*, 77 A.D. 2d 92, 101, 432 N.Y.S.2d 487, 493 (2d Dep't 1980), *amended*, 80 A.D. 2d 838, 439 N.Y.S.2d 300 (2d Dep't 1981) (explaining that a prior action was "not a favorable termination" if the voluntary dismissal was "procured by an agreement or compromise with the [plaintiff]"); *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 196, 734 N.E.2d 750, 753 (N.Y. 2000) (holding that a "termination is not favorable" to the plaintiff if dismissed "pursuant to a compromise with the [plaintiff]"); *Rubin*, 906 N.Y.S.2d 783 (finding that "where a defendant withdrew its prior civil action against the plaintiff as part of a settlement agreement, it cannot be said that the prior action was terminated in the plaintiff's favor"); *Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 287 (E.D.N.Y. 2014) ("It is well-settled that an action terminated by settlement cannot sustain a malicious prosecution claim.").

[14] Although Mr. Carter alleges the SDNY Action was "dismiss[ed] with prejudice, *without settlement*," (Doc. 32 ¶ 10) (emphasis added), this allegation is demonstrably false.

February 1, 2025, John Quinn, a partner and founder of Quinn Emanuel, and his partner Alex Spiro ("Mr. Spiro"), Carter's lead attorney in the SDNY Action, emailed Marc Kasowitz, who was a New York attorney representing Doe and Mr. Buzbee in the SDNY Action, to discuss a possible global resolution of the dispute involving Carter, Jane Doe, and the Buzbee Defendants. *See* Declaration of Marc E. Kasowitz,[15] attached hereto as Exhibit 3 ¶ 5. Thereafter, Mr. Kasowitz and Mr. Spiro engaged in such discussions that resulted in a negotiated resolution. *Id.* at ¶¶ 5-6. On February 4, 2025, Mr. Kasowitz emailed Mr. Spiro and made the following offer of compromise:[16]

> Spiro, here is our proposal:
>
> 1. You and your clients, Jay Z and ROC Nation, will withdraw the Rule 11 motion.
>
> 2. Ten (10) days later, plaintiff will withdraw the complaint with prejudice.
>
> 3. You and your clients and their agents will not authorize, employ or otherwise engage investigators or anyone else to harass or otherwise interact with my client, his law firm or his present and former clients, employees and family. Neither you nor your client is admitting that you have done or known about it, just a commitment that you won't.

*Id.* at ¶ 6 and Ex. A to Kasowitz Declaration. In response, Mr. Spiro emailed Mr. Kasowitz and confirmed Carter's agreement by stating "OK," *id.*, and then promptly filed a letter in the SDNY Action withdrawing his client's Rule 11 motion in compliance with the agreement. *Doe v. Combs, et al.*, 1:24-cv-07975-AT, (Doc. 83); Kasowitz Declaration ¶ 7. Then, ten days later as agreed, Doe voluntarily dismissed the SDNY Action. *Id.* at (Doc. 91); Kasowitz Declaration ¶ 8.

These facts demonstrate that the SDNY Action was dismissed as the result of an agreement, compromise, or settlement. *Putnam v. Otsego Mut. Fire Ins. Co.*, 41 A.D. 2d 981, 343 N.Y.S.2d

---

[15] The Kazowitz Declaration attached as Exhibit 3 was originally submitted in the California Action.

[16] In considering a motion to dismiss under Rule 12(b)(6), the Court's analysis is generally limited to the four corners of the complaint and the attached exhibits. *See Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 at n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity").

736, 738 (3d Dep't 1973), *modified*, 360 N.Y.S.2d 331 (3d Dep't 1974) (defining a "compromise and settlement" as "an agreement or arrangement by which, in consideration of mutual concessions, a controversy is terminated.").  Alternatively, at the very least, Carter's attorney's actions of stating "OK" in response to the settlement proposal and then withdrawing the Rule 11 motion, which further communicated Carter's agreement with the proposal, constituted an "inducement" that caused Doe to dismiss the SDNY Action, which also bars Carter's malicious prosecution claim.  *Aquilina*, 399 N.Y.S.2d at 921 (holding that a voluntary dismissal is not a termination in the plaintiff's favor if there is an "inducement offered by the defendant").

Carter's bare legal conclusion in the Second Amended Complaint—that the SDNY Action "was resolved in Mr. Carter's favor, without settlement or compromise" (Doc. 32 ¶ 160)—is not entitled to deference by the Court as it is a bare legal conclusion. For these reasons, Carter's malicious prosecution claim fails as a matter of New York law, because Plaintiff cannot show that the SDNY Action was terminated in Carter's favor.

### 4.    The Second Amended Complaint fails to sufficiently allege that the SDNY Action caused Carter to suffer "special injury."

When a plaintiff brings a malicious prosecution claim based on a prior civil action, "the plaintiff must also show that special damages resulted from the action." *Sankin v. Abeshouse*, 545 F. Supp. 2d 324, 327 (S.D.N.Y. 2008) (citations omitted).  Answering a certified question posed by the Second Circuit Court of Appeals, in *Engel v. CBS, Inc.*, 711 N.E.2d 626, the New York Court of Appeals insisted that, despite criticism by commentators, *id.* at 629, proof of "special injury [is] a necessary [component] of a malicious prosecution" claim. *Id.* The Court concluded that "the concept of added grievance ensures that plaintiffs remain relatively free from the threat of retaliatory lawsuits in bringing their good faith claims." *Id.* at 630.

In *Engel*, the New York high court, for the first time in decades, if not centuries, clarified what type of harm was needed to plead or prove "special harm" for a malicious prosecution claim. It rejected the historical requirement that there be "interference with person" as in an arrest, *id.* at 631, and dispensed with the prerequisite of a "provisional remedy." *Id.* Yet, it made clear:

> [W]hat is "special" about special injury is that the defendant must abide some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit. This standard strikes the balance required between discouraging excess litigation on the one hand and prohibiting the malicious use of the courts on the other.

*Id.* The *Engel* court found that the plaintiff-attorney's allegedly increased "amount of time and costs of rendering adequate counsel," the claimed damages arising from his legal defense of his client in a separate pending action, did "not rise to the level of atypical consequences of a lawyer being sued." *Id.* at 632. Rather, the court concluded that "nothing in the specific facts presented to us gives us a basis for concluding that the burden, financial or otherwise, of strategizing around the conflict was substantially beyond that which would be typical of similar litigation." *Id.* Since *Engel*, New York state and federal courts have routinely held that a plaintiff's complaint must plead specific "special injury" beyond "the physical, psychological or financial demands of defending a lawsuit." *Sankin*, 545 F. Supp. 2d at 328 (citing *Engel,* 711 N.E.2d at 631).

In his Second Amended Complaint, Carter alleges that "Doe's frivolous lawsuit . . . caused Carter to suffer actual and special damages, including, but not limited to, harm to his personal and professional reputation, harm to his business entity, Roc Nation—which resulted in his business suffering substantial losses in excess of $20 million—out-of-pocket loss, and emotional harm, humiliation, and harassment." (Doc. 32 ¶ 126.) These allegations, however, continue to fail. First, the *types* of damages identified do not, under New York law, qualify as "special injury" as required to sustain a malicious prosecution claim. Second, Carter lacks standing to bring claims based on damages to third parties—Roc Nation and other unidentified businesses.

### i.    Carter's alleged reputational harm is insufficient.

First, Carter alleges that he suffered "harm to his personal and professional reputation." (Doc. 32 ¶ 126.) However, it is well settled that such alleged harm does not qualify as "special injury" under New York law. *Engel v. CBS Inc.*, 961 F. Supp. 660, 663 (S.D.N.Y. 1997), *aff'd*, 182 F.3d 124 (2d Cir. 1999) (finding that an alleged "injury to reputation" is "insufficient as a matter of law to constitute the special injury required for a malicious civil prosecution action");

*Campion Funeral Home v. State*, 166 A.D.2d 32, 569 N.Y.S.2d 518 (3d Dep't 1991) (finding that an alleged "[i]njury to reputation" is insufficient to qualify as special injury necessary for malicious prosecution claim); *Rubin,* 906 N.Y.S.2d 783 (Sup. Ct. 2009) ("conclusory claim of reputational harm" insufficient to state special injury); *Loftus v. Arthur*, 16 Misc.3d 1126(A), 847 N.Y.S.2d 902 (Sup. Ct. 2007) (noting that "incidental damage to [a] plaintiff's reputation is insufficient" to state a special injury).

The New York Court of Appeals' decision in *Engels v. CBS, Inc.* is also instructive. 711 N.E.2d 626. There, the Court ruled that the plaintiff-attorney's alleged reputational injury or damage "fail[s] to muster the requisite special injury," and affirmed dismissal of the malicious prosecution claim. *Id.* at 632. Rather, the Court held that "the loss of one client along with vague allegations of reputational loss, given [the plaintiff's] established practice, are not sufficient. *Id.* Therefore, Carter's conclusory allegation that he suffered "harm to his personal and professional reputation" (Doc. 32 ¶ 126) does not constitute the special injury required to sustain a malicious prosecution claim under New York law.

### ii. Alleged emotional harm, humiliation, and harassment are insufficient.

Third, Carter claims that the SDNY Action caused him to suffer "special damages" that include "emotional harm, humiliation, and harassment." (Doc. 32 ¶ 126.) Carter's "pain" and "heartbr[eak]" in having to explain the circumstances of the SDNY Action to his family, including his children" (*id.* at ¶¶ 127, 128), are just a different take on the alleged emotional harm, humiliation, and harassment alleged by Carter in both his first complaint and throughout the Second Amended Complaint. As explained below, these types of alleged damages do not constitute special injury under New York law.

A plaintiff's malicious prosecution allegations concerning "special injury" must entail "some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit." *Korova Milk Bar*, 2013 WL 417406, at *14 (citing *Sankin*, 545 F. Supp. 2d at 328, and quoting *Engel,* 711 N.E.2d at 631) (internal citation marks

omitted). For that reason, the "attorneys' fees and cost associated with defending a lawsuit do not rise to the level necessary to show special damages." *Liberty Synergistics, Inc.*, 50 F. Supp. 3d at 293–94 (quoting *McCaul v. Ardsley Union Free School Dist.,* 514 F. App'x. 1, 6 (2d Cir. 2013); *Engel*, 711 N.E.2d at 631; *Sankin,* 545 F. Supp. 2d at 328; *Mobile Training*, 958 N.Y.S.2d 61 ("[T]he expense of defending against the [underlying] lawsuit ... is decidedly not special."); *Zhang v. Goff*, No. 25918/2006, 2008 WL 465290 at *3 (Sup. Ct. 2008) ("[L]egal fees do not meet 'the special injury requirement.").

Likewise, allegations that the plaintiff suffered emotional distress or other psychological harm as a result of defending the lawsuit do not show special injury. *In re Eerie World Ent., L.L.C.*, No. 00-13708 (ALG), 2006 WL 1288578, at *8, fn. 10 (Bankr. S.D.N.Y. Apr. 28, 2006) (finding that allegations of "harassment and intimidation" and "damages in the form of attorney's fees, legal expenses, harm to reputation and emotional damage and mental stress … cannot be considered special damages under New York law") (citations omitted); *Engel v. CBS Inc.*, 961 F. Supp. at 663 (finding that "injury to reputation and emotional distress … are insufficient as a matter of law to constitute the special injury required for a malicious civil prosecution action").[17]

Consequently, Carter's allegations that he suffered emotional harm, humiliation, and harassment as a result of the SDNY Action do not constitute special injury under New York law.

### iii.    Carter has not sufficiently alleged "out-of-pocket" losses to prove special damages.

In both the first and Second Amended Complaint, Carter claims that he suffered other "out-of-pocket loss[es]." (Doc. 1 ¶ 73; Doc. 32 ¶¶ 126, 147.) These vague and non-specified damages

---

[17] *See also, e.g.*, *Molinoff v. Sassower*, 99 A.D. 2d 528, 471 N.Y.S.2d 312, 313 (2d Dep't 1984) (affirming dismissal of plaintiff's complaint because the allegation that plaintiff "was required to 'bear the severe psychological burden of being a defendant in a law suit for which he had no insurance coverage for punitive damages'" did not sufficiently allege special injury required for a malicious prosecution claim); *Engel v. CBS, Inc.*, 93 N.Y.2d at 207 (holding that the plaintiff's allegations that he "suffered emotional and financial harm" as a result of a lawsuit did not rise to "the degree necessary to constitute special injury" to sustain a malicious prosecution claim).

are insufficient to state special injury under New York law.  *See Negrete v. Citybank, N.A.*, 237 F. Supp. 3d 112, 125 (S.D.N.Y. 2017) (finding, in a fraud case: "Plaintiffs were required to allege the out-of-pocket losses … and how they were linked to alleged misrepresentations, which Plaintiffs have failed to plead.") (citing *Spencer Trask Software & Info. Servs. LLC v. Rpost Int'l Ltd.,* 383 F. Supp. 2d 428, 455 (S.D.N.Y. 2003) ("At a minimum, the plaintiffs must make factual allegations describing the pecuniary or out-of-pocket loss sustained as a result of the defendants' alleged misrepresentations in order to maintain a claim for damages based upon fraud, and the plaintiffs in this case have failed to do so.").  Here, Carter's non-specific "out-of-pocket" losses are not sufficiently pled to allege special damages for a claim of malicious prosecution.

### iv.    Carter does not have standing to allege as damages any purported harm suffered by Carter's business entities.

Carter also claims that he, *personally*, suffered special damages that include "harm to his business entity, Roc Nation—which resulted in his business suffering $20 million in losses[.]" (Doc. 32 ¶ 126; *see also id*. at ¶¶ 129, 147-148.)  Carter also alleges damages arising from another, unspecified "consumer brand business," (*id.* at ¶ 132), which Carter claims he owns 50% of and "with which Mr. Carter is publicly closely associated."  (*Id.*)  But Roc Nation and Carter's unidentified consumer brand business are separate and distinct entities in the eyes of the law. Carter's claim that "[h]e is the control person of a 50% owner of Roc Nation" (*Id.*) is legally irrelevant.  These allegations of damages suffered by Roc Nation as a result of the alleged wrongdoing are legally insufficient to show special injury for two reasons.

First, and perhaps most obvious, any alleged harm to Carter's business entities, Roc Nation and the unidentified consumer branding business, means simply that: harm to *his business entity*, which are legal entities that exists separate and apart from Carter, even if he holds a controlling 50% interest.  A plaintiff cannot personally claim or recover damages that supposedly were suffered by a separate person or legal entity.  Consequently, Carter's allegation should be interpreted to mean what it says: that his company, whether Roc Nation or some other unidentified

business, (neither of which is a named plaintiff), and not Carter himself, allegedly suffered damages. Such an allegation is insufficient to show that Carter himself suffered any such damages.

Courts throughout the country have regularly affirmed that a member or shareholder of a company, even if the controlling interest holder, cannot personally sue for damages sustained by the company. *See Lawrence v. DAP Prods., Inc.*, No. CV-ADC-22-651, 2022 WL 2275595, at *3 (D. Md. June 23, 2022) ("Mr. Lawrence, even as a sole shareholder, does not have standing individually to bring a claim for damages to Skyward, even if he 'personally suffered injury as a consequence.'"); *Martin v. Santorini Capital, LLC*, 236 A.3d 386, 394 (D.D.C. 2020) ("like corporate shareholders, LLC members are prohibited from initiating actions to enforce the rights of the corporation"); *Bongiorno v. Capone*, 185 Conn. App. 176, 201-202, 196 A.3d 1212, 1228 (Conn. App. 2018) ("Because a member … cannot recover for an injury allegedly suffered by the [LLC], we conclude that the plaintiff lacked standing to pursue a claim of statutory theft in this case."); *Irish v. Ferguson*, 970 F.Supp.2d 317, 347-48 (M.D. Pa. 2013) (finding plaintiff lacked RICO standing: "Although Irish is a member of the Lakefront [LLC], Lakefront is not a plaintiff in this action. The Complaint, however, alleges harm to Lakefront. Irish cannot recover for those alleged harms because the harm to Irish, if any, is indirect because he is only a member of the LLC."); *Schoen v. Underwood*, No. W-11-CA-00016, 2012 WL 13029592, at *4-5 (W.D. Tex. May 15, 2012) ("A member of an L.L.C. cannot recover damages for injuries suffered by the company, even though she may have been indirectly injured by the decrease in value of her membership interest. To sue on the L.L.C.'s behalf, the member must bring a derivative suit. Otherwise, she must establish a personal cause of action and a personal injury."); *Cohen v. Williams*, 318 So. 2d 279, 281 (Ala. 1975) (citation omitted) ("In Alabama, as elsewhere, it is basic that a corporation is a distinct and separate entity from the individuals who compose it as stockholders or who manage it as directors or officers.").

In *Lawrence v. DAP Products*, the federal court in Maryland explained:

> Where individuals "elect[ ] to conduct their business through a limited
> liability company," and "received protection of their personal assets from

liability in doing so," they also then assume "a role as agents for the company" and "[give] up standing to claim damages to the LLC, even if they also suffered personal damages as a consequence." *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 347–48 (4th Cir. 2013) (explaining that the Supreme Court's decision in *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006), foreclosed "just such claims").

2022 WL 2275595, at *2. Similarly, here, Carter chose to operate his multi-million dollar business empire through separate and distinct legal entities. He cannot, even as the 50% owner or controlling member, claim as personal damages in this lawsuit, damages suffered separately and independently by his businesses. Carter's claim in this case for damages to non-party entities such as Roc Nation and other businesses are insufficient, and he lacks standing to recover such damages.

### b.    Carter fails to state a claim for abuse of process.

"An action alleging abuse of process is one where the plaintiff seeks compensation for the improper use of process after the same has been issued." *Tray Wrap, Inc.*, 856 N.Y.S.2d 503, at *15 (citations omitted). Process is a "direction or demand that the person to whom it is directed shall perform or refrain from the doing of some prescribed act." *Id.* (quoting *Williams v. Williams*, 23 N.Y. 2d 592, 246 N.E.2d 333 (N.Y. 1969)). "The gravamen of an abuse of process claim is the perversion of process, lawfully issued, to accomplish a purpose not consonant with the nature of the process employed." *Tray Wrap, Inc.*, 856 N.Y.S.2d 503, at *15 (citing caselaw). "To the extent that public policy mandates open access to the courts for the redress of wrongs while concomitantly penalizing those who manipulate proper legal process to achieve a collateral advantage, a cause of action for abuse of process lies not for the commencement of an action but for the perversion of the process after it is commenced." *Id.*; *Pagliarulo v. Pagliarulo*, 30 A.D.2d 840, 293 N.Y.S. 2d 13 (2nd Dep't 1968).

To sufficiently state an abuse of process claim, a plaintiff must demonstrate that defendant: (1) caused the issuance of regularly issued process either criminal or civil; (2) with the intent to do harm without excuse or justification; and (3) that the process was perverted to obtain a collateral advantage. *Tray Wrap, Inc.*, 856 N.Y.S.2d 503 (citations omitted). In addition, a plaintiff must also

show that the process unlawfully interfered with the plaintiff's person or property. *Id.* (citations omitted). "Actions generally giving rise to an abuse of process claim, by virtue of their interference with person and property, are actions for attachment, execution, garnishment, sequestration, arrest, criminal prosecution, and the issuance of a subpoena." *Id.* (citing *Williams*, 23 N.Y.2d 592; *Hauser v. Bartow*, 273 N.Y. 370, 7 N.E.2d 268 (N.Y. 1937)).

### 1. Carter's abuse of process claim fails because it is based on the filing of a complaint, which cannot give rise to an abuse of process claim.

Carter's Second Amended Complaint acknowledges that the SDNY Action was voluntarily dismissed with prejudice mere months after Doe filed the amended pleading naming Carter. (Doc. 32 ¶ 10.) Yet, it is the Buzbee Defendants' filing of the amended complaint in the SDNY Action, not any alleged wrongdoing following the filing, on which Carter bases his abuse of process claim. (*Id.* at ¶ 85 (alleging that "Defendants acted with malice in *pursing* and *initiating* the meritless lawsuit against Carter"); *see also id.* at ¶ 149 ("On October 20, 2024, Doe, through the Defendants sued … "Does 1-10" … alleging that they committed heinous crimes.").) This is legally insufficient and, therefore, this claim, must be dismissed.

The filing of a complaint, even if filed for malicious motives, "does not by itself give rise to a cause of action for abuse of process." *Tray Wrap, Inc.*, 856 N.Y.S.2d 503 (citing *Curiano v. Suozzi*, 63 N.Y.2d 113, 469 N.E.2d 1324 (N.Y. 1984), *Hauser v. Bartow*, 273 N.Y. 370, *Syllman v. Nissan*, 18 A.D. 3d 221, 794 N.Y.S. 2d 351 (1st Dep't 2005), *I.G. Second Generation Partners, L.P. v. Duane Reade*, 17 A.D. 3d 206, 793 N.Y.S. 2d 379 (1st Dep't 2005), *Walentas v. Johnes*, 257 A.D.2d 352, 683 N.Y.S. 2d 56 (1st Dep't 1999), and *Solomon v. Barr*, 168 Misc. 439, 5 N.Y.S. 2d 753 (Sup. Ct., New York County 1938)). This is because "[t]he action is not for the wrongful bringing of an action or prosecution, but for the improper use, or rather, abuse of process in connection therewith . . . , for a perversion of legal process." *Tray Wrap, Inc.*, 856 N.Y.S.2d 503 (quoting *Hauser*, 273 N.Y. at 373–374).

"Thus, it is well settled that the commencement of a civil action by way of summons and complaint does not by itself give rise to an action for abuse of process insofar as said process is

not process capable of being abused." *Tray Wrap, Inc.*, 856 N.Y.S.2d 503; *see also Tsafatinos v. Ward*, 177 Misc. 2d 590, 676 N.Y.S.2d 748, 752 (Civ. Ct. 1998) (finding that "[b]ecause plaintiff failed to set forth any facts at all to indicate that [the] defendant instituted regularly issued process for other than its proper purpose, [the] allegations [were] clearly insufficient to make out the abuse of process claim" and the "allegation that [the] defendant knowingly commenced a meritless" lawsuit was "insufficient because the 'mere institution of a civil action ... is not legally considered process capable of being abused.'") (quotation omitted); *Ann-Margret v. High Soc. Mag., Inc.*, 498 F. Supp. 401, 407 (S.D.N.Y. 1980) ("[I]t has been held that a summons and complaint are not process capable of being abused.").

In *Curiano*, a group of plaintiffs filed a claim for abuse of process against an attorney and his law firm. The claim was based on the plaintiffs' allegation that the defendant and his firm had acted maliciously by filing a prior defamation lawsuit that was purportedly baseless. 469 N.E.2d 1324. In affirming the lower court's dismissal of the abuse of process claim, the New York Supreme Court reiterated that "the institution of a civil action by summons and complaint is not legally considered process capable of being abused." *Id.* at 1326 (collecting cases). Instead, dismissal was warranted because "plaintiffs have not alleged the "'gist of the action for abuse of process,'" which is "'the improper use of process ***after it is issued***.'" *Id.* (quoting *Williams*, 298 N.Y.S.2d 473; *Dean v. Kochendorfer*, 237 N.Y.384, 143 N.E. 229 (N.Y. 1924); *Miller v. Stern*, 262 App. Div. 5, 8, 27 N.Y.S.2d 374 (1st Dep't 1941)) (emphasis added). The *Curiano* Court held that the plaintiffs "do not contend that the summons issued by defendants was improperly used after it was issued but only that defendants acted maliciously in bringing the action. A malicious motive alone, however, does not give rise to a cause of action for abuse of process." *Id.* at 1326 (citing *Hauser*, 273 N.Y. 370, 374).

Similarly, Carter's Second Amended Complaint asserts only that the Buzbee Defendants are liable for abuse of process because they filed a complaint that, in Carter's view, was without merit. (Doc. 32 ¶¶ 10, 69-73, 149.) But because the mere filing of a complaint cannot form the

basis of an abuse of process claim, and there are no allegations in the Second Amended Complaint that allege the improper use of process after it was issued, Carter's abuse of process claim fails.

> **2.    Carter's abuse of process claim fails to the extent it is based on matters that allegedly occurred outside the judicial process.**

Other than filing the original and amended complaint in the SDNY Action, the only other alleged misconduct identified by Carter in the Second Amended Complaint is that Mr. Buzbee, on behalf of Doe, sent Carter's attorneys a demand letter attempting to settle Doe's claims. (*See* Doc. 32 ¶¶ 150.) Although the Second Amended Complaint declines to acknowledge this letter as a settlement demand (*id.* at ¶ 10), Carter's allegations acknowledge that the letter was, in fact, a request to settle. (*Id.* at ¶ 76 (acknowledging that the Demand Letter "stated that Doe 'want[s] something of substance' **by way of a settlement**.") (emphasis added).[18] Because the Demand Letter relates to a proposed agreement, compromise, or settlement, irrespective of Carter's self-serving conclusion to the contrary, it is legally considered non-judicial and cannot form the basis of an abuse of process claim.

New York law is clear that "[s]ettlement attempts, however coercive or overbearing, do not alone directly involve the 'judicial process' and thus cannot suffice to form the basis for an abuse of process claim." *Tsafatinos v. Ward*, 676 N.Y.S.2d at 753 (citing *Varela v. Investors Insurance Holding Corp.*, 185 A.D. 2d 309, 586 N.Y.S.2d 272 (2d Dep't 1992) (citations omitted), *aff'd*, 81 N.Y.2d 958, 961, 615 N.E.2d 218 (N.Y. 1993) (dismissing plaintiff's abuse of process claim based on alleged extortion because it occurred outside of the judicial process). "[W]here the complaint fails to allege some irregular activity *in the use of judicial process* for a purpose not sanctioned by law, or that the process unlawfully interfered with the plaintiff's property, an action to recover damages based upon the alleged abuse of process must fail." *Colonna v. Banco Popular N. Am.*, No. 8024/2010, 2010 WL 5545765 (N.Y. Sup. Ct. Nov. 29, 2010) (emphasis added)

---

[18] *See also* California Action Am. Compl. ¶¶ 3, 29 (admitting that the letter communicated that Doe wanted "something of substance <u>by way of a settlement</u>") (emphasis added) (internal quotations omitted).

(citations omitted); *see also Remley v. State*, 174 Misc. 2d 523, 525, 665 N.Y.S. 2d 1005 (Ct. Cl. 1997) (dismissing abuse of process claim due to failure "to allege … the issuance of any process or an improper use of process").

Based on these authorities, Carter's abuse of process claim fails as a matter of law to the extent it is based on the settlement demand letter that occurred outside the judicial process.

### 3.    Carter's abuse of process claim fails because he does not sufficiently allege that the process unlawfully interfered with his person or property.

A plaintiff must also show that the alleged abusive process unlawfully interfered with the plaintiff's person or property.  *Tray Wrap, Inc.*, 856 N.Y.S.2d 503 (citations omitted).  To do so, a plaintiff must allege that he was "compelled to give up a legal right or to do something that was not required of them." *Dorak v. County of Nassau of State of New York*, 329 F. Supp. 497, 501 (E.D.N.Y.1970) (citation omitted). For the same reasons discussed above, Carter fails to allege sufficient facts that rise to the level of the special damages required for such a claim. *Ann-Margret v. High Soc. Mag., Inc.*, 498 F. Supp. at 407 (finding that an alleged "interference" that "results in a loss of business, injury to reputation, or expense arising from the litigation" does not "constitute the type of interference with person or property necessary to sustain an abuse of process claim").

### c.    The Second Amended Complaint fails to state a claim for civil conspiracy.

Carter's third claim for civil conspiracy also fails as a matter of law. First, civil conspiracy cannot stand alone as an independent tort if Carter's first two claims, for malicious prosecution and abuse of process, fail as a matter of law. Second, New York bars an "intracorporate" civil conspiracy. Third, a lawyer acting within the course and scope of his representation cannot "conspire" with his client, because he is acting as an agent of the client in the representation. Carter's addition of the Curis Defendants to the operative pleading does not change the legal analysis.

### 1. If the malicious prosecution and abuse of process claims fail, then, as a matter of law, the civil conspiracy claim also fails.

"New York does not recognize civil conspiracy to commit a tort as an independent cause of action[.]" *25-86 41st St., LLC v. Guzman*, 234 A.D. 3d 649, 650, 226 N.Y.S.3d 107, 110 (2025) (citing *McSpedon v. Levine*, 158 A.D. 3d 618, 621, 72 N.Y.S.3d 97 (2nd Dep't 2018); *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 68 N.Y.2d 968, 503 N.E.2d 102 (N.Y. 1986)). Therefore, to sustain a civil conspiracy claim, "a plaintiff [must] plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort, and establish that those actions were part of a common scheme." *Id*. "[I]n order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement." *Guzman*, 226 N.Y.S.3d at 110 (quoting *Clevenger v. Yuzek*, 222 A.D. 3d 931, 203 N.Y.S.3d 114 (2nd Dep't 2023)).

Like Alabama law, a claim for civil conspiracy under New York law "requires the existence of an independent tort to provide a basis for liability." *Id*. (citing *Brenner v. American Cyanamid Co.*, 288 A.D. 2d 869, 732 N.Y.S.2d 799 (4th Dep't 2001) and *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 720 N.E.2d 892 (N.Y. 1999)). As demonstrated above, both of Carter's tort claims against the Buzbee Defendants—for malicious prosecution and abuse of process—are due to be dismissed. Therefore, Carter's civil conspiracy claim against them also fails.

### 2. Mr. Buzbee and Mr. Fortney cannot conspire with The Buzbee Firm under the intracorporate civil conspiracy bar.

Second, even if Carter's claims for malicious prosecution or abuse of process survive dismissal, Carter's civil conspiracy claim still must be dismissed due to the bar on intracorporate civil conspiracies. Under New York law, "[t]o establish a claim of civil conspiracy, a plaintiff must demonstrate the underlying tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *World*

*Wrestling Federation Entertainment, Inc. v. Bozell*, 142 F. Supp. 2d 514, 532-533 (S.D.N.Y. 2001) (citation omitted); *Cohen Bros. Realty Corp. v. Mapes*, 181 A.D.3d 401, 404, 119 N.Y.S.3d 478, 482 (1st Dep't 2020) (citation omitted). But a company cannot conspire with itself. The first element of a claim for civil conspiracy is not sufficiently alleged where the defendants are officers or agents of a corporate defendant and are acting in the course and scope of their employment when performing the alleged wrongdoing. *See Lewis v. Friedman-Marks Clothing Co.*, 70 A.D.2d 866, 866, 418 N.Y.S. 2d 60 (1st Dep't 1979) (finding five defendants constituted "a single entity").

Here, there is no dispute that Mr. Buzbee and Mr. Fortney are attorneys who work for the Buzbee Firm, which Carter admits (Doc. 32 at ¶¶ 16, 17), and in that capacity represented Doe. (*See id.*)  Carter admits through his allegations in the Second Amended Complaint that "Doe, *through the Defendants*," brought the SDNY Action (*id.* at ¶ 149) (emphasis added); "Doe, *through her attorney Buzbee*," sent the Demand Letter (*id.* at ¶¶ 138, 150) (emphasis added); and "Doe …, *through her attorney Buzbee*" maintained the allegations and claims against Carter after the NBC article. (*Id.* at ¶ 179 (emphasis added).)

"It is well-settled that, under the intracorporate conspiracy doctrine, an entity cannot conspire with itself." *Williams v. County of Nassau*, No. 15-CV-7098, 2017 WL 1216566, at *6 (E.D.N.Y. Mar. 30, 2017)). Under the intracorporate conspiracy doctrine, "officers, agents, and employees of a single corporate entity . . . each acting within the scope of his or her employment, are legally incapable of conspiring with each other." *Rodriguez v. City of New York*, 644 F. Supp. 2d 168, 200 (E.D.N.Y. 2008). Relying on these authorities, a federal court in New York recently granted dismissal of a plaintiff's civil conspiracy claim, which was asserted against two individual defendants, both managing members of the corporate defendants. *Kim v. NYC Green Transp. Group, LLC*, No. 23-CV-544, 2025 WL 373465, at *6 (E.D.N.Y. Feb. 3, 2025).[19]

---

[19] *See also McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1035 (11th Cir. 2000) (en banc) ("The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.")

The *Kim* Court acknowledged that "an exception to this doctrine 'applies where a plaintiff adequately alleges that each defendant possessed an independent, personal conspiratorial purpose, wholly separate and apart from the entity." *Id.* (quoting *Reich v. Lopez*, 38 F. Supp. 3d 436, 463 (S.D.N.Y. 2014) (quotation omitted)). In attempting to plead around the intracorporate civil conspiracy bar, Carter removed this acknowledgment from his first complaint: "Buzbee's and [Mr.] Fortney's conduct described in this Complaint were taken on behalf of themselves and on behalf of Defendant The Buzbee Law Firm." (Doc. 1 at ¶ 13.) Yet, the entire gist or gravamen of the Second Amended Complaint remains the same: the Buzbee Defendants' alleged misconduct occurred within the course and scope of their engagement by Doe.  (*See, e.g.,* Doc. 32 at ¶ 149 ("On October 20, 2024, Doe, *through the Defendants [as her legal counsel]*, sued Combs and his business entities, as well as 'Does 1-10' alleging that they committed heinous crimes.") (emphasis added); *id.* at ¶ 103 ("[Doe] and her co-conspirators insisted on moving forward").)  Consequently, Mr. Buzbee, Mr. Fortney, and the Buzbee Firm are, collectively, considered one "person" for purposes of a civil conspiracy claim under New York law, and the exception to the intracorporate civil conspiracy bar is not met.

To the extent Carter added allegations to the Second Amended Complaint related to the Buzbee Defendants' agents and/or employees' conduct in marketing, soliciting, and/or advertising for clients throughout the United States, including Alabama, such allegations cannot form the basis of a conspiracy because, again, a corporate entity cannot conspire with itself through its agents and employees acting on its behalf.  These allegations include:

- "attorneys employed by the Buzbee Law Firm and/or their agents solicited Doe in Alabama[.]" (Doc. 32 at ¶ 16)

- "The Buzbee Defendants … directly, or by and through their agents, advertised and solicited clients in this District for the specific purpose of the conspiracy alleged herein[.]" (*Id.* at ¶ 27.)

- "Buzbee, his employees, and/or agents used the Buzbee Firm to orchestrate the conspiracy against Mr. Carter." (*Id.* at ¶ 18.)

49

### 3.    An attorney cannot conspire with his client.

Carter insists that Buzbee, Fortney, and the Buzbee Firm, on the one hand, conspired with Doe, on the other hand.  (Doc. 32 at ¶ 2. ("Doe's and her lawyers' reprehensible conduct").)  Under New York law, however, an attorney cannot conspire with his client.

In *Burger v. Brookhaven Medical Arts Building, Inc.*, a New York court recognized:

> Inasmuch as the relationship created between an attorney and his client is that of principal and agent (*see*, 6 N.Y.Jur.2d, Attorneys at Law § 82, et seq.), an attorney is not liable for inducing his principal to breach a contract with a third person, at least where he is acting on behalf of his principal within the scope of his authority [citing cases]. **Absent a showing of fraud or collusion, or of a malicious or tortious act, an attorney is not liable to third parties for purported injuries caused by services performed on behalf of a client or advice offered to that client** [citing cases]. Moreover, it is well established that an essential element of a cause of action to recover damages for intentional interference with contractual relationships is the intentional procurement of a breach by defendant [citing cases]. At bar, the plaintiff's pleadings failed to sufficiently allege that Block or his law firm acted outside the scope of their authority.

131 A.D.2d 622, 624, 516 N.Y.S. 2d 705 (1st Dep't 1987) (emphasis added).

In *Kline v. Schaum*, 173 Misc. 2d 108, 661 N.Y.S. 2d 906 (2d Dep't 1997), a New York appeals court dismissed a claim for tortious interference with contract based on an attorney's alleged wrongdoing in connection with his preparation of closing documents. *Id.* at 110, 661 N.Y.S. 2d at 908 (finding the complaint "defective for its failure to allege that [the] defendant[-attorney] acted outside the scope of his authority as an attorney for the sellers.").

Likewise, for purposes of a civil conspiracy, a claim against an attorney or his law firm for civil conspiracy *with* the client cannot stand *unless* there are acts alleged "which go beyond the ordinary relationship of attorney and client and outside the duties which each owes to the other." *Dallas v. Fassnacht*, 42 N.Y.S. 2d 415, 416 (Sup. Ct. 1943). Rather, "an attorney in bringing an action is not liable as long as he does not do anything beyond his duties to his client." *Id.*; *see also id.* ("An attorney at law, who acts in good faith and is prompted only by professional duty and fidelity to his client, is not liable to the other party for injuries which the latter may sustain from

the fact that the action was begun or prosecuted by the attorney's client, either maliciously or without probable cause. The wrong intentions of the client are not to be imputed to his attorney who was ignorant of them and who, himself, had no such intentions. This rule is absolutely imperative for the attorney's protection.") (citation omitted).

In *Dallas v. Fassnacht*, a New York court dismissed a claim for civil conspiracy lodged against an attorney and his client purportedly based on their alleged filing of a baseless action. The court ruled that these allegations "are consistent with a proper retainer and may not form a sufficient basis for a conspiracy." 42 N.Y.S. 2d at 417. The remaining allegations, the court concluded, consisted "of mere generalities and conclusions to the effect that plaintiff and her attorney acted maliciously and without cause and joined in a conspiracy and unlawful combination." *Id.* Because these were threadbare allegations and conclusory in nature, they were "palpably insufficient to sustain" a civil conspiracy action. *Id.*

Here, Carter's allegations in support of his claim for civil conspiracy are likewise lacking in adequate factual content to sustain the claim. Carter acknowledges Buzbee and Fortney were officers, members, or employees of the Buzbee Firm and were acting on the Firm's behalf at all times. (Doc. 32 at ¶¶ 16, 17.)  He also recognizes that the Buzbee Defendants were acting as Doe's legal counsel in prosecuting the SDNY Action.  (*Id.* at ¶¶ 137, 149, 150.)  There are no allegations that take the Buzbee Defendants' conduct outside of the scope of a proper retainer, and therefore, the Second Amended Complaint fails to state a claim for civil conspiracy.

### 4.    Carter's addition of Defendants does not change the analysis.

Carter's addition of the two new defendants—Antigone Curis and Curis Law, PLLC ("the Curis Defendants")—appears to be a transparent attempt to plead around the Buzbee Defendants' previously-filed Motion to Dismiss. Carter's inclusion of the Curis Defendants does not change the legal analysis or alter the Buzbee Defendants' arguments for dismissal.  Instead, Carter's allegation that the Curis Defendants "conspired with" the Buzbee Defendants on Doe's behalf (Doc. 32 at ¶ 19) is legally insufficient to state a claim for civil conspiracy.  Multiple lawyers at

51

different firms representing the same client cannot conspire amongst each other, just as lawyers within one firm representing the same client cannot conspire with themselves.

Although direct precedent on this issue is limited, the Court can look to *Doherty v. American Motors Corp.*, 728 F.2d 334 (6th Cir. 1984), for persuasive authority. In that case, the Sixth Circuit reversed a civil conspiracy judgment, holding the claim was legally defective. The plaintiff alleged that a defendant corporation had conspired with various attorneys: its in-house counsel, multiple sets of outside counsel at different firms and in different geographic locations, and an attorney hired by the company to represent the plaintiff in a criminal action. *Id.* at 339.

In *Doherty*, the court held that, aside from the attorney retained by AMC to represent the plaintiff in the criminal action, all of the alleged co-conspirator defendants were, as attorneys of AMC, agents of AMC. Applying the "general rule," the court concluded that a corporation cannot conspire with its own agents—even if those agents are attorneys from separate firms—when acting within the scope of their agency. *Id.* at 339–40. The only exception considered by the court was whether AMC's lawyers had conspired with the criminal defense attorney retained by AMC to represent the plaintiff in the separate action—a scenario not present in this case. *Id.* at 340–44.

No third-party counsel exists here who was retained by Jane Doe to represent interests independent of her claims in the SDNY Action. Rather, the Buzbee Defendants were acting as Doe's primary counsel with regard to the SDNY Action, and the Curis Defendants were serving as local counsel, as they were the only attorneys on Jane Doe's behalf who were licensed in the SDNY.  (*See* Doc. 32 at ¶ 19 ("the Buzbee Defendants … were not authorized to practice law in the SDNY[.]"); *id.* at ¶ 68 ("the [Buzbee] Defendants were able to file this fraudulent lawsuit with the assistance of co-conspirator Curis Defendants' electronic filing credentials.").)  For these reasons, as in *Doherty*, this Court should apply the general rule that attorneys representing the same client in the same legal matter—regardless of firm affiliation or separate geographic location—cannot conspire with one another while acting in the course and scope of their agency on behalf of their mutual client.

Further support comes from *Edelman, Combs and Latturner v. Hinshaw and Culbertson*, 788 N.E.2d 740 (Ill. App. Ct. 2003). There, the plaintiffs alleged that a law firm conspired with its clients and their insurer. The court also dismissed the conspiracy claim, in this case pursuant to Rule 12(b)(6), reaffirming the principle that there can be no conspiracy between a principal and its agents: "Because the acts of an agent are considered in law the acts of the principal, there can be no conspiracy between a principal and an agent." *Id*. at 751 (citing *Buckner v. Atlantic Plant Maintenance, Inc.*, 694 N.E.2d 565, 570 (Ill. 1998)). The law firm and its attorneys, as agents of the clients and insurer, could not legally conspire with them.

The same reasoning applies here. Carter acknowledges that both the Buzbee Defendants and the Curis Defendants represented Doe in connection with the SDNY Action. He further concedes that the Curis Defendants served as local counsel in New York, enabling the Buzbee Defendants to represent Doe in the SDNY Action. The only plausible inference is that both sets of attorneys acted as joint agents of Doe. Under settled legal doctrine, agents acting within the scope of a common representation cannot conspire with each other or with their principal. Therefore, even with the addition of the Curis Defendants, Carter's conspiracy claim remains legally deficient and must be dismissed for the reasons already set forth.

## <u>CONCLUSION</u>

All claims asserted in the Second Amended Complaint against Defendants Anthony Buzbee, David Fortney, and Anthony G. Buzbee LP should be dismissed.

Respectfully submitted,

*/s/ Matthew R. Jackson*
MATTHEW R. JACKSON (JACKM7882)
AARON G. MCLEOD (MCL053)
BLAKE T. RICHARDSON (RIC105)
*Attorneys for Anthony Buzbee, David Fortney, and Anthony G. Buzbee LP*

**OF COUNSEL:**
Adams and Reese LLP
11 N. Water Street, Suite 23200
Mobile, Alabama 36602
(251) 433-3234 Main
(251) 438-7733 Fax
matt.jackson@arlaw.com
aaron.mcleod@arlaw.com
blake.richardson@arlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 4th, 2025, I served a copy of the foregoing upon all counsel

of record via this Court's CM/ECF System.

*/s/ Matthew R. Jackson*
OF COUNSEL