IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **SHAWN COREY CARTER,** | § | |
| | § | |
| **Carter,** | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | 1:25-cv-00086-TFM-MU |
| **ANTHONY BUZBEE, DAVID** | § | |
| **FORTNEY, ANTHONY G. BUZBEE LP** | § | |
| **(d/b/a THE BUZBEE LAW FIRM), et al.,** | § | |
| | § | |
| **Defendants.** | § | |

---

### DEFENDANTS ANTHONY BUZBEE'S, DAVID FORTNEY'S, and ANTHONY G. BUZBEE LP'S REPLY IN SUPPORT OF MOTIONS TO DISMISS

---

Despite 81 pages of briefing and a combined total, across three complaints, of 130 pages of pleadings, Carter has still not overcome the fatal flaw preventing this Court from exercising jurisdiction: this lawsuit is an attempt by a California resident to hold Texas lawyers liable for something that happened in New York. These Defendants are not subject to personal jurisdiction here and, even if they were, venue is improper. Further still, Carter has not alleged sufficient facts to show a cognizable claim for relief under New York law.

### ARGUMENT

### I. THE COURT LACKS PERSONAL JURISDICTION.

First, Carter has failed to rebut any of Defendants' jurisdictional evidence and cannot rest on his pleadings. Second, Carter has still not managed to show that "conspiracy" jurisdiction is recognized in this circuit as an exception to federal due-process standards or as some standalone basis for jurisdiction. Third, lacking evidence of his own, Carter has not overcome the undisputed

facts showing that some Defendants' few contacts with Alabama do not amount to purposeful availment of this forum.  Finally, the forum contacts of third parties cannot be imputed to these Defendants, because there was no control over or agency relationship with them.

>    a.    **Defendants' factual attack on jurisdiction is unrebutted.**

As Defendants explained, a challenge to personal jurisdiction may be facial or factual—and Defendants mounted both.  A plaintiff must allege "sufficient facts" to "make out a prima facie case" of jurisdiction, but if a defendant challenges jurisdiction by submitting "affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting caselaw); *see also United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *Moore v. Cecil*, 109 F.4th 1352, 1362 (11th Cir. 2024).  Another way of putting this is that the "factual allegations in the complaint are accepted as true" for jurisdictional purposes "**to the extent** they are uncontroverted" by a defendant's evidence.  *Micro Fin. Advisors, Inc. v. Coloumb*, 2023 WL 7156898, *3 (11th Cir. 2023) (emphasis added).  But once a defendant does so, the plaintiff must then "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate" the complaint's allegations.  *Mazer*, 556 F.3d at 1274 (quoting caselaw).

Defendants submitted the Fortney Declaration and the Buzbee Declaration with their motions to dismiss the Second Amended Complaint,[1] but with his response Carter offered no evidence contradicting those declarations.[2]  As a result, the following is undisputed:

- Neither Anthony Buzbee, David Fortney, nor their firm ever solicited in Alabama to obtain potential clients for a lawsuit against Carter or to represent Defendant Doe;

- Defendants' firm was referred Doe's case by AVA Law Group, with whom Doe signed up;

- The firm's relationship with AVA Law Group was contractual, and the firm did not instruct AVA Law Group on how or where to advertise or solicit for clients;

---

[1] *See* Docs. 43-1 and 43-2.
[2] *See generally* Doc. 64.

- None of these Defendants ever directed anyone to target Alabama for client solicitation;

- AVA Law Group made its own decisions about how to seek clients;

- Any online solicitation for clients was done by AVA Law Group or its contractors, not Defendants' firm. Defendant Doe did not access the Buzbee Law Firm's "intake button" on its own website;

- Defendants never instructed Reciprocity Industries on how to solicit potential clients or how to advertise, and had no role in how Reciprocity performed its work;

- None of these Defendants travelled to Alabama to meet with Doe before the New York lawsuit was filed or before that suit named Carter;

- Defendant Buzbee never traveled to Alabama at all for any purpose related to the facts alleged in this case;

- The pleadings in the New York case were drafted, so far as these Defendants were involved, in Texas;

- Doe's residence here made no difference to Defendants, since her lawsuit against Carter had nothing to do with Alabama;

- Defendants never had an investigator go to Alabama for any purpose related to Doe;

- Defendant Fortney came to Alabama only after the New York lawsuit had been filed and after Carter had been named to that suit, and Fortney came to Alabama only twice for any purpose related to Doe;

- None of these Defendants ever appeared for Doe in an Alabama court or used the Alabama legal system in any way related to Carter, until this suit.[3]

### b.    "Conspiracy" jurisdiction is not an alternative to the constitutional minimum-contacts analysis.

Carter's emphasis on "conspiracy jurisdiction" is ultimately a sideshow. Why? Because it is a state-law doctrine (as Carter agrees), while Defendants' 12(b)(2) motion is premised solely on federal due-process law and the constitutional minimum-contacts test. *See, e.g.*, *Ex parte McInnis*, 820 So. 2d 795, 806-07 (Ala. 2001). Defendants do not challenge the application of Alabama's long-arm statute; they challenge the satisfaction of federal standards under the Due Process Clause.

---

[3] *See* Doc. 43-1 ¶¶ 5-16, 18, 20, 23; Doc. 43-2 ¶¶ 5-16, 19, 22.

With that in mind, the flaw in Carter's argument is manifest: not a single authority Carter cites addresses the interplay between state conspiracy-jurisdiction doctrines and federal due-process law—and **none** of them hold that conspiracy jurisdiction is a separate basis for personal jurisdiction outside of the constitutionally mandated minimum-contacts test.[4]  Carter relies on four district-court cases and three Eleventh Circuit cases, many of them unpublished (and mentioned by Defendants already in their motion), for his argument that the mere allegation of a conspiracy with Jane Doe subjects Defendants to jurisdiction.  But Carter offers the Court not one case establishing that this doctrine is enough to meet due-process standards apart from the normal minimum-contacts analysis.  Indeed, upon review of every case Carter cites, none of them so much as *discuss* that question, let alone resolve it.  It would appear that in those cases, the issue was never raised, so they offer Carter scant support here, where Defendants urgently deny that any judge-made doctrine from state law can supersede federal due-process requirements and relieve a plaintiff from the burden of satisfying them.  Constitutional law cannot be dodged by the pen of a plaintiff's lawyer.

What is more, conspiracy jurisdiction, as Carter seeks to deploy it, is irreconcilable with binding Supreme Court precedent.  In *Walden v. Fiore*, for example, the Supreme Court unanimously explained that the Fourteenth Amendment's Due Process Clause "constrains a State's authority to bind a nonresident defendant" to a judgment of its courts.  571 U.S. 277, 283 (2014).  The entire *point* of the Due Process Clause is to restrict states' ability to exercise jurisdiction over nonresidents.  It necessarily follows that no state-made doctrine can undermine the protections afforded by the Fourteenth Amendment.

And the Court went further.  Assessing specific personal jurisdiction, the Court noted that to satisfy due process, a defendant's suit-related conduct "must create a substantial connection with the forum State," and one aspect of that relationship is that it "must arise out of contacts that

---

[4] It would be tedious to list them here, but to be clear, the authorities Carter relies on appear on ECF pages 22-26 of his response.  Doc. 64.

the 'defendant *himself*' creates with the forum State." *Id.* at 284 (quoting caselaw) (emphasis original).

The Court has, in fact, "consistently rejected" attempts to satisfy the minimum-contacts inquiry with contacts between "third parties" and the forum State, instead of between the defendant and the forum State. *Id.* The proper analysis "looks to the defendant's contacts with the forum State itself, **not the defendant's contacts with persons who reside there**." *Id.* at 285 (emphasis added); *cf. In re Platinum and Palladium Antitrust Litigation*, 61 F.4th 242, 269-73 (2d Cir. 2023) (noting that "so-called conspiracy jurisdiction" is based on the idea that the acts of a conspirator in furtherance of the conspiracy may be attributed to its other members, and explaining the flaws with the theory) (citing caselaw); *Smith v. Jefferson County Bd. of Educ.*, 378 F. App'x 582, 586 (7th Cir. 2010) (referring to conspiracy jurisdiction as a theory that is "marginal at best") (citing caselaw); Alex Carver, *Rethinking Conspiracy Jurisdiction in Light of Stream of Commerce and Effects-Based Jurisdictional Principles*, 71 Vand. L. Rev. 1333, 1337 (2018) (noting "numerous courts and commentators" have questioned "the constitutionality of conspiracy jurisdiction," which is "of relatively recent vintage"); *cf. also Schrier v. Qatar Islamic Bank*, 632 F. Supp. 3d 1335, 1366 (S.D. Fla. 2022) (discussing the trend of caselaw in a Rule 4(k)(2) context and finding the better analysis rejects conspiracy jurisdiction).

The Supreme Court's established principles are enough to sink Carter's conspiracy-jurisdiction hopes. The whole notion of the doctrine is that the acts of some other party, an alleged co-conspirator, within the forum state are deemed to be the minimum contacts of the "remote co-conspirator" defendant, even if the defendant "had no other direct contacts" with the forum.[5] That cannot be squared with the Supreme Court's clear insistence that a defendant may be subjected to a state's courts based only on *that defendant's* contacts with the forum itself, not on the contacts of some third party and not on the defendant's contacts with "persons who reside" in the forum. *Walden*, 571 U.S. at 285. The demands of minimum contacts "must be met as to **each** defendant."

---

[5] Doc. 64 at 23 (quoting a law-review article).

*Id.* at 286 (quoting caselaw) (emphasis added); *see also Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 359 (2021).

Carter has nothing to say to this. There is little he could say. State law—and the draftsmanship of Carter's counsel—cannot overcome federal jurisdictional standards. There is no conspiracy exception to the Due Process Clause.

Worse still for Carter, the undisputed evidence before the Court is that, as to Defendant Buzbee, Carter cannot show any "overt act" in Alabama for purposes of conspiracy jurisdiction.[6] As noted above, Buzbee never came to Alabama for any purpose related to Jane Doe or the lawsuit against Carter, so as to him, at a minimum, there is no basis for the invocation of conspiracy jurisdiction.

Finally, though Carter says it twice, repetition does not improve the accuracy of his claim that Defendants do not dispute, if conspiracy jurisdiction is a valid doctrine, that it "exists over them."[7] On the contrary, Defendants specifically argued in their motions to dismiss that, as a factual matter, Defendants "did not have the contacts with Alabama" that Carter alleges as the basis for conspiracy jurisdiction.[8] As discussed more fully below in the purposeful-availment section, Defendants did not reach out to solicit in Alabama or otherwise target Alabama as fertile ground for potential clients, did not plan the New York lawsuit in Alabama, and did not draft or prosecute that case in or from Alabama. Thus, even if the doctrine is sound, Carter has not shown that it applies to Defendants.

### c.   Defendants' few contacts with Alabama do not constitute purposeful availment.

First, we must recall the few forum contacts actually before the Court, in light of Defendants' unrebutted evidence that most of the contacts Carter *alleges* occurred did not. Those contacts are:

---

[6] Doc. 64 at 23-25.
[7] *Id.* at 22, 25-26.
[8] Doc. 43 at 14-15.

- Two trips by Fortney to Alabama—after the New York lawsuit and demand letter had been filed and sent—to meet with Doe.[9]

- One trip by a non-party associate to escort Doe back to Texas safely, after Carter's agents had harassed her.[10]

- Communication with Doe from outside of Alabama.[11]

And that is all. There is no dispute that none of these Defendants ever reached out to Alabama to solicit its residents as potential clients, ever directed some other party (like AVA Law Group or Reciprocity) to do so, ever advertised Defendants' services specifically to the Alabama market, ever solicited Doe in Alabama, or ever made any use of the Alabama courts in representing Doe.

This evidence explodes the majority of the contacts on which Carter's response relies.[12] Carter keeps citing his Second Amended Complaint, but because Defendants offered unrebutted evidence contradicting that pleading, Carter may no longer rely on his complaint where Defendants have disproven it.[13]

To understand why the few remaining contacts are not enough to show purposeful availment under federal due-process law, it is necessary to review what "purposeful availment" means. That kind of deliberate contact with a forum involves a defendant "purposefully avail[ing] himself of the privileges of doing business with the forum." *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1276 (11th Cir. 2022) (quoting caselaw). Purposeful availment means a defendant "reached out beyond" his home to "exploit[] a market" in the forum state or enter into a contractual relationship that is "centered there." *Ford Motor Co.*, 592 U.S. at 359 (citing caselaw). The contacts must not be "random, isolated, or fortuitous," *id.*, and instead must show that a defendant "directed his activities at residents of the forum" and "purposefully establish[ed] contacts" in the

---

[9] Doc. 43-1 ¶¶ 16, 18.
[10] Doc. 43-1 ¶ 20.
[11] Doc. 32 ¶¶ 15-16, 26, 58-59, 61, 74.
[12] *See* Doc. 64 at 24-27.
[13] Doc. 64 at 26-27. Carter's reliance on allegedly buying Doe a plane ticket to fly to Texas is particularly puzzling. How, exactly, is buying Doe a plane ticket to fly to Texas a contact by Defendants with the State of Alabama? Doc. 64 at 37-38.

forum. *Rowe v. Williams, Parteni, Watson and Gary, PLLC*, 723 F. App'x 871, 875 (11th Cir. 2018). Foreseeability or knowledge, alone, that a defendant's conduct might affect the forum state is not enough; the defendant must "target" the forum. *See, e.g.*, *Hyundam Indus. Co. v. Swacina*, 2025 WL 1717010, *3 (Tex. 2025); *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011). As the Supreme Court put it in *Nicastro*, the question is whether a defendant's conduct is "directed at the society or economy existing within the jurisdiction of a given sovereign" so as to give that state power to subject the defendant to a judgment. *Nicastro*, 564 U.S. at 884.

Holding up the few forum contacts in evidence to the light of these settled principles, Carter's case falls short. None of Defendants' attenuated forum contacts were an effort by Defendants to target Alabama as a society or an economy, none of them were efforts to take advantage of Alabama's legal system, none of them involved making any use of Alabama's courts, and none of them were "centered" in Alabama because they were all concerned with Doe's *New York* lawsuit against a *California* resident. Defendants did not reach out to Doe in Alabama; she reached out to them. Defendants did not take any action in Alabama for which Carter can hold them liable; the malicious prosecution and abuse of process are alleged to have occurred in federal court in New York. Defendants' relationship with Doe was as lawyers to their client, so it is reasonable for this Court to require Carter, if he wants to subject Defendants to jurisdiction here based on an attorney-client relationship, to show that Defendants did something *in Alabama* as part of representing Doe in her case against Carter. And that's exactly what Carter cannot show.

That also demonstrates why Carter cannot overcome the Eleventh Circuit's opinion in *Rowe*. Carter grandly declares that "this case is nothing like *Rowe*."[14] It is hard to take Carter seriously given these parallels:

| ***Rowe*** | **Undisputed Facts** |
|---|---|
| • "In short, plaintiffs seek to use the Georgia federal courts to obtain civil liability over Florida residents for actions that relate exclusively to | • A California resident seeks to hold Texas Defendants liable in Alabama for filings in New York federal court and a demand letter sent to New York. |

---

[14] Doc. 64 at 38.

|  |  |
|---|---|
| representation in a New York case." *Rowe*, 723 F. App'x at 873. | |
| • Plaintiff offered evidence that he met with a defendant in Georgia four times, including one "major case strategy meeting." *Id.* at 873. | • One Defendant met with Doe—not Carter—twice in Alabama, and only after the New York suit named Carter. |
| • Defendants called and emailed the plaintiff about the New York case while plaintiff was in Georgia. *Id.* | • Carter alleges phone calls between Defendants and Doe while Doe— though not Carter—was in Alabama. Doc. 32. |
| • Defendants took a deposition for the New York case in Georgia. *Id.* | • None of the litigation work for the New York case occurred in Alabama. Doc. 43-2 ¶¶ 12, 14-15, 19, 22. |
| • "[A]n out-of-state defendant's merely entering into a contract—such as one for legal representation—with a forum resident is insufficient to pass the minimum contacts test." *Id.* at 875. | • The *only* relationship Carter alleges between Defendants and Doe, the forum resident, is a contract for legal representation. Doc. 32. |
| • "The events and contacts giving rise to the litigation occurred, on the whole, in either New York or Florida." *Id.* at 876. | • The lawsuit was prepared in Texas and filed in New York against a California resident. Doc. 43-2 ¶ 12. |

Defendants could scarcely ask for a decision more on point and dispositive of Carter's case than *Rowe*. One could almost substitute the party names in this case for that one—and reach the same result.[15]

Nor is that the only similar decision in this circuit involving out-of-state lawyers. In *Beckham v. Baker & Hostetler, LLP*, plaintiffs sued their former lawyers for conflict of interest and fraud. 2023 WL 9957259, *1 (N.D. Ga. 2023). Plaintiffs alleged "regular" and "routine"

---

[15] The Eleventh Circuit spoke highly of the Tenth Circuit's reasoning in *Newsome*, in which that circuit noted the majority rule that an out-of-state lawyer working on an out-of-state matter for an in-forum client does *not* purposefully avail himself of the client's home forum's "laws and privileges." *Rowe*, 723 F. App'x at 875 & n.4 (referring to *Newsome* as "well-reasoned" and offering an "excellent" analysis of the caselaw) (quoting *Newsome v. Gallacher*, 722 F.3d 1257 (10th Cir. 2013)).

correspondence with the out-of-state lawyer while the plaintiffs were in Georgia, but the defendant offered evidence that he had never engaged in any negotiations, meetings, or conferences in Georgia, did not solicit business from the plaintiffs, and worked in Pennsylvania. *Id.* at *1. The court held that minimum contacts had not been established, citing *Rowe* and reasoning that the defendants' representation of the plaintiffs had "occurred in Virginia" and Philadelphia, not Georgia, and thus that *Rowe* was "on all fours with this case." *Id.* at *5-6. The "relevant events" all happened outside the forum state, and defendants' contacts with Georgia were "random or attenuated." *Id.* at *6.

And then there is *Thomas*. *See Thomas v. Brown*, 504 F. App'x 845, 848-49 (11th Cir. 2013) (holding there was no purposeful availment by a law firm of a forum where the firm had no office or property and where the firm had not marketed itself or conducted any of the legal work). As the Eleventh Circuit put it in *Thomas*, there were "no legal documents filed in Florida, no legal documents signed in Florida, no hearings in Florida, no depositions taken in Florida, and the . . . proceedings took place in Ohio." *Id.* at 848. This Court could substitute "Alabama" for "Florida" in that quote and "New York" for "Ohio"—and the same would be equally true here.

Carter cannot meaningfully distinguish these cases. Representing a client who happens to live in Alabama by filing a New York lawsuit against a California plaintiff does not constitute purposeful availment of the market or legal system of Alabama. A few phone calls to Alabama are not enough, and a few meetings at the client's home for a lawsuit elsewhere are not enough. Defendants' work for Doe against Carter had nothing to do with Alabama. As in *Rowe* and *Thomas* and *Newsome* and *Beckham*, Defendants lack sufficient minimum contacts with this state.

> **d.    Carter concedes the connection element of due process by failing to address it.**

As Defendants' motion noted, the connection or nexus prong asks whether a defendant's forum contacts are sufficiently connected to the causes of action to satisfy due process. While a "strict causal relationship" between forum contacts and the claim is not required, there are "real limits" on the relatedness test, and the "affiliation" demanded between forum contacts and pleaded claims is "**principally**" to be some "activity or . . . occurrence that took place **in the forum**. *Ford*

*Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362, 370 (2021). A plaintiff's claims must "arise out of or relate to the defendant's contacts" with the forum. *Ford Motor Co.*, 592 U.S. at 359.

Though he devotes 20 pages to personal jurisdiction, Carter neglected to offer any argument on this element of the test, despite Defendants' motion addressing it.[16] This Court should thus take it as conceded by Carter that the substantial-connection element of the due-process test has not been met, and dismiss Defendants for lack of jurisdiction.[17]

**e.    No third party acted as Defendants' agent, so no one else's contacts may be imputed to Defendants.**

Carter seeks to invoke the rule that, if an agency relationship exists, the forum contacts of one actor may "really [be] the forum contacts of another" under the due-process test. *United States v. Mortgage Investors Corp.*, 987 F.3d 1340, 1355 (11th Cir. 2021); *see also Ex parte The HuffingtonPost.com, Inc.*, 376 So. 3d 432, 447 (Ala. 2022) (noting that the test of agency is the reservation of the "right of control over the means and method by which [a] person's work will be performed"). Carter insists that AVA Law Group or Reciprocity acted as Defendants' "agents" and solicited or targeted Alabama and Doe, making their contacts Defendants' contacts and clearing the purposeful-availment hurdle.[18]

But the evidence is all to the contrary. Carter bears the burden of showing an agency relationship existed as the party asserting it, *Lincoln Log Home Enters. v. Autrey*, 836 So. 2d 804, 806 (Ala. 2002), yet Defendants' declarations rebut the notion that AVA Law Group or Reciprocity were Defendants' agents, because the declarations explain that these Defendants never exercised control over how or where those third parties solicited for clients and that instead Defendants had only a contractual relationship with them. *Cf. Bluewater Trading LLC v.*

---

[16] Doc. 64 at 21-41.

[17] Carter's abandonment of this issue spells the end of his reliance on what he asserts were Defendants' other, unrelated contacts with Alabama through lawsuits or proceedings here that have nothing to do with Doe or Carter.

[18] Doc. 64 at 34.

*Fountaine Pajot, S.A.*, 335 F. App'x 905, 907 (11th Cir. 2009) (refusing to impute contacts to a defendant that did not "exercise control" over the other party).  Because it is undisputed that there was no agency relationship between Defendants and the third parties Carter points to, no one else's contacts with Alabama may be imputed to these Defendants.

## II.      THIS DISTRICT IS NOT A PROPER VENUE.

Carter's opposition does nothing to cure the fundamental venue defects identified by the Buzbee Defendants.  The Second Amended Complaint still fails to satisfy any prong of 28 U.S.C. § 1391(b).  Because the operative events underlying each claim occurred, if at all, in New York or Texas—not Alabama—this action must be dismissed or, at minimum, transferred under 28 U.S.C. § 1406(a).  *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013).

### a.      Carter cannot show that "a substantial part of the events" occurred in this District.

Section 1391(b)(2) confers venue only where "a substantial part of the events or omissions giving rise to the claim occurred."  The statute "does not authorize venue at the place of the plaintiff's choosing," and courts must focus on "those acts and omissions that directly gave rise to the cause of action."  *Press*, 2009 WL 211556, at *4-5; *see also Atl. Marine,* 571 U.S. at 56.

### 1.      The claims arise from litigation activities in New York, not Alabama.

All three counts against the Buzbee Defendants—malicious prosecution, abuse of process, and conspiracy—are premised on the filing and prosecution of *Doe v. Combs* in the Southern District of New York.[19]  Drafting pleadings, filing them with the SDNY clerk, serving process in New York, and litigating motions in the SDNY Action are the "events" that purportedly "give rise" to each claim.  None occurred in Alabama. The circumstances that Carter desperately claims were "planning" and "misconduct" cannot suffice as events rendering venue proper in this district under Section 1391(b)(2).

---

[19] Doc. 64 at ¶¶ 137-165.

## 2. Alleged Alabama contacts are at most attenuated and post-hoc.

Carter highlights: (a) AVA/Reciprocity advertisements allegedly viewed in Alabama; (b) alleged telephone or email communications with Doe while she was in Alabama; and (c) two alleged short visits by Fortney after the SDNY Action was already on file—one to accompany Doe back home after an NBC interview and one immediately before voluntary dismissal.[20]   These limited contacts are, at best, attenuated or "after-the-fact" and do not constitute a "substantial part" of the events giving rise to the claims.   *See Press*, 2009 WL 211556, at *5-7 (no venue where defendants merely *served process* and *took a deposition* in the forum). The Eleventh Circuit has made clear that "fortuitous" or "attenuated" forum contacts do not satisfy § 1391(b)(2). *See Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1314-15 (11th Cir. 2018).

## 3. Conspiracy allegations do not transform tangential contacts into "substantial" events.

Carter argues that because the alleged conspiracy was "hatched" in Alabama, venue automatically follows.[21] This is not correct. Section 1391(b)(2) demands that the *events forming the gravamen of each substantive claim* occur in the district.  Here, the gravamen is the initiation and prosecution of the SDNY Action—events centered in New York, with none occurring in Alabama. *See id*.; *Press*, 2009 WL 211556, at *5-7.

Carter posits that the nonbinding case of *Kozel v. Kozel* No. 2:14CV1059, 2016 WL 11643578 (W.D. Pa. May 23, 2016) is the analysis this Court should apply.[22] *Kozel* involved a civil suit brought by Mr. Kozel against his ex-wife, his daughters, and their attorney, alleging civil conspiracy, malicious prosecution, abuse of process, and other claims based on the defendants' alleged scheme to manufacture sexual abuse allegations to extort him for additional child support money. *Id.* at *1-2. While it is true that *Kozel* held significant events occurred in South Carolina and venue was proper there, Carter's opposition omits the material fact that there was physical documentation that supported the notion that "pivotal events" took place in South Carolina. Mr.

---

[20] Doc. 64, PageID# 807-809.
[21] Doc. 64, PageID# 807-810.
[22] Doc. 64, PageID# 811.

Kozel's operative complaint referred to a clinical note written by his children's counselor at a South Carolina therapy facility that referenced the alleged sexual abuse. *Id.* at *3. In comparison, it is only Carter's erroneous, self-serving and conclusory assertions about what he alleges occurred that he contends shows that a substantial part of the events giving rise to the claims occurred in this district.[23] *Kozel* is not instructive in this instance.

### 4.    Phone calls and internet advertisements aimed at a resident do not satisfy § 1391(b)(2).

Courts routinely hold that telephone, email, or advertising contacts with a resident do not render venue proper where the core wrongful acts occurred elsewhere. *See Rowe*, 723 F. App'x at 876. Consequently, Carter's reliance on such incidental communications fails to show that a "substantial part" of the actionable events occurred in Alabama.

### b.    Carter's pendent-venue theory is unavailing.

Carter urges the Court to exercise "pendent venue" on the theory that, once venue is proper for any claim, the Court may hear all others.[24] Even if pendent venue was applicable, it is entirely discretionary and "cannot be used to override the statutory venue requirements where, as here, the plaintiff's chosen forum bears little connection to the operative facts." *See Press*, 2009 WL 211556, at *7. Allowing pendent venue in these circumstances would eviscerate § 1391(b)'s careful, claim-specific framework and invite precisely the forum-shopping that Congress sought to avoid.

### c.    Carter misconstrues the relevance of conspiracy "venue."

Carter conflates "conspiracy jurisdiction" with venue.[25] The concepts are distinct, and venue turns on where the substantive wrongs occurred. *See Atl. Marine*, 571 U.S. at 56. Conspiracy allegations cannot relocate venue when the alleged malicious prosecution and/or abuse of process is the filing and maintenance of a lawsuit in New York.

---

[23] Doc. 64, PageID# 808.
[24] Doc. 64, PageID# 812-813.
[25] Doc. 64, PageID# 810-812.

**d.      Dismissal or transfer is the proper remedy.**

Because venue is improper, the Court should either dismiss or transfer under § 1406(a). The logical transferee forums—where venue indisputably lies and where the events occurred—are (1) the Southern District of New York, where the SDNY Action was filed and litigated, or (2) the Southern District of Texas, where the Buzbee Defendants reside and work, and where they worked on the SDNY Action.  Carter has not shown, and cannot show, that venue in Alabama is proper under any subsection of § 1391(b).

Carter's attempt to anchor venue in this District rests on peripheral and post-dismissal contacts that are insufficient under § 1391(b).  The "substantial part" of the alleged malicious prosecution, abuse of process, and conspiracy occurred—if at all—in New York and Texas. Accordingly, the Court should dismiss for improper venue or transfer this action to a district where venue is proper.

## III.    CARTER HAS STATED NO CLAIM UNDER NEW YORK LAW.

**a.      Carter's claims fail due to the preclusive effect of the recent ruling in the California Action.[26]**

On June 30, 2025, which was after the Buzbee Defendants filed their motion to dismiss, the Superior Court of the State of California for the County of Los Angeles, West District (the "California Court") entered an order dismissing all of Carter's claims against the Buzbee Defendants (the "California Order") in *Shawn Carter v. The Buzbee Law Firm and Anthony G. Buzbee* (Case No.: 24SMCV05637) (the "California Action").[27]   Although the claims in the California Action were different from the claims asserted in this action, they were based on many of the same allegations and issues.  For instance, just like in the present case, Carter based his claims in the California Action on the following allegations:

---

[26] Ordinarily, courts will not consider arguments raised for the first time in a reply brief. However, the Buzbee Defendants could not have made this argument in their motion to dismiss because, at that time, the California Order had not yet been entered.  Consequently, this argument is timely made.

[27] The defendants in the California Action were The Buzbee Law Firm and Anthony G. Buzbee, both of whom are defendants in this case.  Defendant Fortney was not a defendant in the California Action.

(1) the Buzbee Defendants' knew the allegations in the SDNY Action were false;

(2) the Buzbee Defendants failed to investigate Doe and her allegations or insufficiently investigated the allegations made by Doe before filing the SDNY Action;

(3) Doe admitted the Buzbee Defendants knowingly filed the SDNY Action with false allegations for an ulterior and improper motive;

(4) the Buzbee Defendants' pre-suit demand letter was extortionate; and

(5) the SDNY Action was dismissed without settlement or compromise.

However, the California Court thoroughly considered and unequivocally rejected these factual assertions on the merits.[28]  Because Carter's claims in this case are based on these assertions that have already been decided in the Buzbee Defendants' favor, Carter's claims fail due to issue preclusion.[29]

"In considering whether to give preclusive effect to a state court judgment under claim preclusion (or res judicata) or issue preclusion (or collateral estoppel), [federal courts] apply the law of the state whose court rendered the judgment." *Madura v. Countrywide Home Loans, Inc.*, 344 F. App'x 509, 517 (11th Cir. 2009) (citation omitted).  California law concerning issue preclusion (or collateral estoppel) is substantially similar to Alabama law:

> The doctrine of collateral estoppel or issue preclusion precludes relitigation of issues argued and decided in prior proceedings.  In order for issue preclusion to apply, the following elements must be met: (1) the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding; (2) the issue must have been actually litigated in the former proceeding; (3) the issue must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.  The "identical issue" requirement addresses whether "identical factual allegations" are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same. An issue is "actually litigated" if it was properly raised, submitted for determination, and determined in a

---

[28] The California Order is in the record as Exhibit 4 to the Doc. 64-1 (PageID# 861-925) (hereinafter, the "California Order").

[29] Issue preclusion is often also called "collateral estoppel."  For consistency and to avoid confusion, this brief will use the term "issue preclusion."

proceeding. An issue will be considered "necessarily decided" so long as the issue was not "entirely unnecessary" to the judgment in the prior proceeding. The party asserting issue preclusion has the burden of establishing the above elements. …

*Williams v. Drs. Med. Ctr. of Modesto, Inc.*, 319 Cal. Rptr. 3d 741, 753–54 (Cal. App. 5th 2024), *as modified* (Apr. 25, 2024) (cleaned up; internal citations and quotations omitted).

In the present case, issue preclusion applies to the above-referenced factual assertions because: (1) they are identical to those decided in the California Action; (2) they were actually litigated in the California Action; (3) they were necessarily decided in California Action; (4) the California Order was final and on the merits; and (5) Carter, the party against whom preclusion is sought, was the plaintiff in the California Action.

First, the ***exact*** same factual assertions that Carter has made to support his claims in the Second Amended Complaint were also made in the California Action and were decided against Carter and in the Buzbee Defendants' favor.

Second, the factual assertions were actually litigated in the California Action. As the California Order explains, Carter's burden in that action was to show merely that his complaint had "minimal merit" by submitting "admissible evidence showing that it can prevail."[30] All Carter needed to do was "put forward evidence that, if true, would establish [his] claim in light of all reasonable inferences," which were to be resolved in his favor."[31] However, after receiving briefing, evidence, and argument and conducting numerous evidentiary hearings, the California Court ruled against Carter and in favor of the Buzbee Defendants on these factual assertions.

Third, as explained in the California Order, the factual assertions were necessary to the California Court's decision in dismissing Carter's claims.[32]

Fourth, the California Order was final and on the merits.[33]

---

[30] California Order at p. 8 (PageID# 868).
[31] *Id.*
[32] *See generally* California Order (PageID# 861-925).
[33] *Id.*

And fifth, Carter, the party against whom preclusion is sought, was the plaintiff in the California Action.[34]

For these reasons, the findings by the California Court preclude Carter's claims in this case.

> **1.    The Buzbee Defendants did not have actual knowledge of the falsity of the allegations when the SDNY Action was filed.**

Carter insistently alleges the Buzbee Defendants "knowingly" filed "false" allegations in the SDNY Action.[35] The Buzbee Defendants have asserted that Carter's allegations are bare legal conclusions, unsupported by specific factual allegations, which should be ignored. *Ashcroft*, 556 U.S. at 678. Carter not only stands by his allegations, but now goes further, claiming the Buzbee Defendants also themselves "manufactured" false evidence.[36]

But Carter's allegations and arguments ignore the California Court's ruling that such allegations were not only conclusory, but were *also* unsupported by any admissible evidence.[37] "It is one thing to say that where there is an obvious and key reference that will conclusively determine whether the statement was true or not … it equates to willful ignorance not to look at all. *The court just cannot say such is the situation here.*"[38] Carter has not addressed the fact that he failed to offer sufficient allegations to suggest why or how the Buzbee Defendants knew that the SDNY Action's allegations were false.[39] Rather, Carter continues to rely on speculation and bare conclusion, which is insufficient to state a claim for malicious prosecution.

---

[34] *Id.*

[35] Doc. 64 at p. 1 ("filing of a knowingly false lawsuit in the [SDNY]"); *id.* at p. 3 ("sought to extort a large settlement with knowingly false allegations"); *id.* at p. 44 ("knowingly advanced false and sensational allegations of sexual assault"); *see also id.*at p. 46 (claiming the Buzbee Defendants "manufacture[d] or use[d] false evidence … to assist a client in advancing claims they know or should know to be false").

[36] *Id.* at p. 38 ("not only did the Buzbee Defendants know that the SDNY Action was false, but that it was also manufactured at Buzbee's direction."); *see also id.* at p. 40 ("an intentional lie they orchestrated").

[37] California Order at pp. 57-62 (PageID# 917-922).

[38] *Id.* at p. 60 (PageID# 920) (emphasis added).

[39] Doc. No. 43 at p. 29.

Carter has not only failed to adequately plead that the Buzbee Defendants "knowingly" filed "false" allegations in the SDNY Action; he has received a conclusive finding on the merits that such an assertion has no evidentiary support.  Consequently, this assertion by Carter is precluded by the California Order and cannot form the basis for any of Carter's claims in this action.

### 2. The Buzbee Defendants did not fail to investigate or insufficiently investigate Doe and her allegations before filing the SDNY Action.

Carter also maintains the untenable position that the Buzbee Defendants *should have known* of the purported falsity of the claims because of the alleged failure to conduct any investigation[40] or, alternatively, they conducted an insufficient investigation of Doe (and her mental health)[41] and her allegations before filing the SDNY Action. Now, Carter goes even further, accusing the Buzbee Defendants of perhaps even conducting such an investigation and then "ignor[ing] the damning exculpatory evidence they uncovered."[42]  Carter relies on these

---

[40] Doc. 64 at p. 1 ("without conducting even the most rudimentary investigation"); p. 3 ("failed to conduct even the most basic investigation"); *id.* at p. 5 ("the 'vetting' never actually occurred"); *id.* at p. 38 ("complete[ly] abdicat[ed] … the most basic professional responsibilities, including their failure to conduct any meaningful vetting of Doe's allegations"); *id.* at p. 39 ("fail[ed] to conduct even a basic investigation into Doe's allegations"); *id.* at p. 40 ("'could' have found [the truth] had they done their diligence"); *id.* ("even the most minimal investigation … would have immediately exposed Doe's story as a sham").

[41] *Id.* at p. 5 ("public records showed that Doe was suffering personal and financial hardships at the time, and had a history of mental health and substance abuse issues – including being in Mental Health Court 90 days before filing her lawsuit against Mr. Carter – as well as a record of making prior false allegations."); *id.* at p. 40 ("a basic search of online records would have revealed that Doe has a documented history of making false sexual assault allegations in other matters, as well as a history of mental health and substance abuse issues….").

[42] *Id.* at p. 3; *id.* at p. 5 (speculating that the Buzbee Defendants "either the 'vetting' never actually occurred, or the vetting revealed the falsity of Doe's allegations and the Buzbee Defendants proceeded anyway"); *id.* at p. 41 ("The Buzbee Defendants either deliberately ignored these damning facts or, even more egregiously, discovered them and chose to proceed anyway.").

unsupported speculative musings, which are unsupported by any allegations in the amended pleading, as a substitute for lack of probable cause and a proxy for malice.[43]

However, the California Court, too, considered Carter's assertions and rejected them, finding: "Carter cannot show that Buzbee did nothing at all."[44] Moreover, the California Court discussed, at length, the question of whether the Buzbee Defendants *should have done more* to investigate – in other words, "whether there is some obligation that a lawyer has to investigate a client's factual assertions before bringing suit or making a statement in public assuming that those assertions are not patently frivolous on their face in order to avoid a [tort] suit."[45]

The California Court answered its own question by, first, recognizing: "the court cannot say that as a general matter a lawyer has some obligation to do an investigation to determine whether a client is telling the truth before making statements about the case."[46] Requiring as much, the California Court reasoned, would likely have a chilling effect on the attorney-client relationship.[47] Second, the court held that not only was there no evidence to "show that Buzbee did nothing at all,"[48] but also: "Without more, then, [Carter's assertion] the [Buzbee Defendants'] [alleged] failure to do what NBC did (assuming Buzbee would have obtained the same information) is *not enough to show malice*."[49] "[T]he court cannot say that Buzbee's statement that clients were vetted is enough to allow the court to infer actual malice because the vetting process was not all that Carter might wish it were."[50]

---

[43] *Id.* at p. 39 ("The Buzbee Defendants' failure to conduct even a basic investigation into Doe's allegations shows that they lacked probable cause to bring the SDNY Action."); *id.* at pp. 40-41.

[44] California Order at p. 61 (PageID# 921).

[45] *Id.* at p. 58 (PageID# 918).

[46] *Id.* at p. 60 (PageID# 920).

[47] *Id.*

[48] *Id.* at p. 61 (PageID# 921).

[49] *Id.* (emphasis added); *see also id.* at p. 61 (Instead, such an assertion "gets in just too deeply into second-guessing after the fact the extent of the investigation.").

[50] *Id.*

Similarly, here, this Court should reject Carter's assertion that the Buzbee Defendants failed to investigate or insufficiently investigated Doe's allegations as sufficient to state the claims he asserts in this case. Carter's claims are legally untenable and factually unsupported, as the California Court also held. This Court should not permit Carter to rely on these rejected assertions.

### 3. Doe did not "confess" that she or the Buzbee Defendants lacked probable cause or filed the SDNY Action with malice.

Carter heavily relies in his opposition brief (as he did in the California Action) on a recorded interview with investigators (tied to Carter) in which Carter insists that Doe "*admitted* that her accusations against Mr. Carter were fabricated and that she was pressured by Buzbee to include [Carter] in the SDNY Action for the purpose of increasing the case's value and extracting a larger settlement."[51] In his brief, Carter maintains that this "smoking gun confession *alone* is … sufficient to show that the Buzbee Defendants lacked probable cause"[52] to support his malicious prosecution claim.

However, the California Court characterized the recording and Doe's purported "confession" as unreliable,[53] contradictory,[54] and the process by which the recording was obtained "distasteful."[55] Ultimately, the California Court excluded the recording as inadmissible.[56] As to Carter's claim that Doe "admitted" wrongdoing, the California Court found: "the transcript is not

---

[51] Doc. 64 at p. 2 (emphasis added); *see also id.* at p. 3 ("Doe has admitted that the Buzbee Defendants knew the allegations were fabricated…."); *id.* at p. 8 ("Doe has since admitted … that her allegations … were fabricated, and that she had been encouraged by the Buzbee Defendants to proceed with the false claim against Mr. Carter for their mutual financial gain."); *id.* at p. 26 ("Doe[] confess[ed] to investigators that the SDNY Action was a sham"); *id.* at p. 38 ("Doe admits that Mr. Carter did not assault her and that her allegations about him were false."); *id.* at p. 61 ("As Doe later confessed, the purpose of filing the SDNY Action was to use it to extort large sums of money from Mr. Carter[.]").

[52] *Id.* at p. 38 (emphasis added).

[53] California Order at p. 19 (PageID# 879) ("[T]he transcript … casts doubt on the reliability of her statements.").

[54] *Id.* ("Doe's own statements on Carter's involvement are contradictory").

[55] *Id.* at p. 33 (PageID# 893).

[56] *Id.* at pp. 13-30 (PageID# 873-890); *id.* at p. 30 (PageID# 890).

as clear as either party would like it to be[.]"[57] Specifically, and while referencing this pending action, the California Court said: "Carter has recently submitted [this] evidence related to what he claims to be an admission . . . but th[i]s [C]ourt does not see it that way."[58]

The California Court also ruled: "a lawyer who [initially] believes the client … will defeat a malicious prosecution suit."[59] In other words, as the court explained: "[T]he law will protect a lawyer who is bringing a suit to vindicate a client's rights even if it is later shown that the client was lying and that a reasonable investigation by the lawyer might have so revealed."[60] Therefore, Carter's position that the Buzbee Defendants should have done more after learning of the alleged falsity of the claims in the SDNY Action and failed to do so, and therefore are separately liable for malicious prosecution and/or abuse of process, should also be rejected.

**4.    The Buzbee Defendants' pre-suit demand letter was not extortionate.**

It is clear that the mere filing of a civil action is not enough for an abuse of process claim,[61] yet Carter erroneously maintains that the complaint in the SDNY Action was "intentionally vague, designed to create fear and speculation."[62] The cases cited by Carter[63] all deal with civil actions where the complaints in issue contained so many additional allegations that the courts characterized them as "a perversion of the action from its lawful and proper purposes[.]"[64] The same cannot be said for the SDNY Action in this case, and even Carter does not assert as much. Rather, Carter alleges the opposite, claiming the action was "intentionally vague to create leverage," "designed to stir up publicity and speculation," and "instill fear in Mr. Carter[.]"[65]

---

[57] *Id.*

[58] *Id.* at p. 33 (PageID# 893) n. 5.

[59] *Id.* at p. 58 (PageID# 918).

[60] *Id.* at p. 59 (PageID# 919).

[61] Doc. 43 at pp. 43-45.

[62] Doc. 64 at p. 4.

[63] *Id.* at p. 58.

[64] *Id.* (quoting *Cardy v. Maxwell*, 169 N.Y.S.2d 547, 549-50 (Sup. Ct. 1957).

[65] *Id.* at p. 59.

Moreover, even though this is not a case involving a claim for extortion—and the California Order dismissed Carter's extortion claim against the Buzbee Defendants—Carter uses some variation of the term "extort" more than fifty (50) times in his brief. Despite an adverse ruling in the California Action, specifically finding the pre-suit demand letter the Buzbee Defendants sent to him was "*not extortion*,"[66] Carter still maintains, here, that the letter was extortionate.[67]

Instead, by holding that the litigation privilege protected the pre-suit demand letter, such that it could not, as a matter of law, form the basis of Carter's defamation claim in the California Action[68] or support an extortion claim, the California court reasoned:

> No matter how Carter characterizes the Letters, *the Court has a hard time seeing them as extortion as a matter of law on their face*.[69] … If Carter refused mediation, then defendants threatened to file a civil case, which is pretty much what every pre-litigation demand letter does.[70] … [S]elling silence for money in the civil context is not extortion; it is a settlement with a non-disclosure element.[71] … [T]he Letters really cannot be read any other way—the Letters are protected. ***The Letters offer a confidential settlement of a scandalous civil lawsuit… [T]hat is not extortion***.[72]

This Court should also reject Carter's assertion that the pre-suit demand letter is enough to state a claim for abuse of process[73] or form the basis of a conspiracy as "extortionate."[74]

---

[66] California Order at p. 4 (PageID# 864), 38 (PageID# 898).

[67] Doc. 64 at pp. 3-4; *id.* at p. 44 (asserting the pre-suit demand letter was "timed … with the explicit goal of coercing Mr. Carter into paying 'something of substance' to avoid public exposure and further damage."); *id.* at p. 45 (alleging the letter "ma[de] it clear that unless [Carter] agreed to a 'confidential mediation' and paid 'something of substance,' the Buzbee Defendants would publicly sue him.").

[68] *Id.* at p. 48.

[69] *Id.* at p. 36 (emphasis added).

[70] *Id.* at p. 37.

[71] *Id.*

[72] *Id.* at p. 38 (emphasis added).

[73] *See* Doc. 64 at pp. 59-61.

[74] *Id.* at pp. 4, 64.

### 5.    The SDNY Action was resolved as a "walkaway compromise."

Carter also repeatedly, but baselessly, asserts that the SDNY Action was dismissed "without settlement."[75] But as previously shown, this is a demonstrably incorrect statement.[76] In particular, an email exchange between counsel for Carter and counsel for Doe and Buzbee confirms that the dismissal was the result of a compromise and settlement.[77]

In attempting to assert that Doe's dismissal of the SDNY Action was not on the merits, Carter alleges that the dismissal of the SDNY Action was based on various procedural issues[78] that had nothing to do with a "favorable" determination in his favor. But as the California Court recognized, "the dismissal is not as pure as Carter might wish."[79]   The California Court reasoned:

> It is one thing for Doe to dismiss the case on the eve of a dispositive motion; perhaps if a dismissal with prejudice occurs the day before the summary judgment hearing or after a tentative order granting summary judgment is made, one can presume that there was no merit to the case at all. But there is evidence that Buzbee has presented (in the form of an email exchange between counsel) that the dismissal here was more in the nature of a negotiated "stand down" than a concession that the case had no merit to start.[80]

The California Court concluded that Doe's withdrawal of the SDNY Action appeared to be a "walkaway settlement"[81]; in other words, a mixture of procedural and practical considerations of

---

[75] *Id.* at p. 52.  A core element of a claim for malicious prosecution under New York law is a favorable termination of the underlying proceeding in the plaintiff's favor. *See Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 198 (2000).

[76] *See* Doc. 43 at pp. 34-36.

[77] Doc. 43 at. Pp. 34-36 and Doc. 43-3.

[78] Doc. 64 at pp. 41-43, 52-57.

[79] California Order at p. 62 (PageID# 922).

[80] *Id.*

[81] *Id.* at p. 6 (PageID# 866).

all parties.[82] The California Court expressly ruled: "dismissal does not give rise to an inference of actual malice, even viewing the evidence in Carter's favor."[83]

In sum, the California Court's finding on this factual assertion conclusively establishes, for preclusion purposes, that the SDNY Action was the result of a compromise and settlement – and therefore, not a termination in Carter's favor.

### b.    Carter's civil conspiracy claim fails.

In seeking to maintain his civil conspiracy claim, Carter insists that the Buzbee Defendants' position is that lawyers are "absolutely immune" from conspiring from their clients.[84] That was not and is not the Buzbee Defendants' position, as Carter then goes on to acknowledge.[85]

Rather, New York law is clear that a claim for civil conspiracy cannot be maintained where—as here—there is no showing of fraud, collusion, or of a malicious or tortious act, or other acts "which go beyond the ordinary relationship of attorney and client and outside the duties which each owes to the other."[86] Other than relying on the already-rejected suggestion that Doe's "confession" proves the supposed agreement among the Defendants to extort Carter, and the already-dismissed claim that the pre-suit demand letter is extortionate at all, Carter has no other allegations or claims to support this cause of action.

---

[82] *Id.* at p. 63 (PageID# 923) ("The point is not to conclude one way or the other what motivated Doe to drop the litigation in New York. It is only to say that the dismissal does not give rise to an inference of actual malice, even viewing the evidence in Carter's favor.").

[83] *Id.*

[84] Doc. 64 at p. 62.

[85] *Id.* at p. 63 ("Indeed, the Buzbee Defendants' own cases make clear that 'the mere fact that one is an attorney acting in a provisional capacity does not make him absolutely immune from responsibility for his wrongful acts.") (quotation and citations omitted).

[86] Doc. 43 at pp. 50-51 (quoting *Dallas v. Fassnacht*, 42 N.Y.S. 2d 415, 416 (Sup. Ct. 1943)).

Also, Carter incorrectly asserts Defendants "*each had their own independent motive* for conspiring to defame and extort[87] Mr. Carter,"[88] which he proposes takes this attorney-client relationship out of the usual one. However, this position is disingenuous as Carter has said, elsewhere in his brief, that Defendants' alleged acts were for their "*mutual* financial gain."[89] This puts the supposed conspiracy within the New York rule that an attorney cannot conspire with his client so long as "he does not do anything beyond his duties to his client."[90] For these reasons, the civil conspiracy claim must be dismissed.

## CONCLUSION

All claims asserted in the Second Amended Complaint against Defendants Anthony Buzbee, David Fortney, and Anthony G. Buzbee LP should be dismissed.

Respectfully submitted,

*/s/ Matthew R. Jackson*
MATTHEW R. JACKSON (JACKM7882)
AARON G. MCLEOD (MCL053)
BLAKE T. RICHARDSON (RIC105)
*Attorneys for Anthony Buzbee, David Fortney, and Anthony G. Buzbee LP*

**OF COUNSEL:**
Adams and Reese LLP
11 N. Water Street, Suite 23200
Mobile, Alabama 36602
(251) 433-3234 Main
(251) 438-7733 Fax
matt.jackson@arlaw.com
aaron.mcleod@arlaw.com
blake.richardson@arlaw.com

---

[87] The California court dismissed Carter's claims for both defamation and extortion, therefore, these claims cannot, as a matter of law, form the foundation of the purported conspiracy.

[88] Doc. 64 at p. 64 (emphasis added).

[89] *Id.* at p. 8.

[90] Doc. 50 at p. 50 (quoting *Dallas v. Fassnacht*, 42 N.Y.S. 2d at 416).

## CERTIFICATE OF SERVICE

I hereby certify that on August 13th, 2025, I served a copy of the foregoing upon all counsel of record via this Court's CM/ECF System.

*/s/ Matthew R. Jackson*
OF COUNSEL