**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| SHAWN COREY CARTER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIV. ACT. NO. 1:25-cv-86-TFM-MU |
| | ) | |
| ANTHONY BUZBEE, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

The case now comes before the Court pursuant to the following motions: (1) the Motion to Dismiss pursuant to Federal Rules of Procedure 12(b)(2), 12(b)(3), and 12(b)(6), filed by defendants Anthony Buzbee, David Fortney, and Anthony G. Buzbee LP (Doc. 43, filed June 4, 2025); (2) the Motion to Dismiss the Plaintiff's Second Amended Complaint pursuant to Federal Rule of Procedure 12(b)(6), filed by Defendant Jane Doe (Doc. 44, filed June 4, 2025); and (3) the Motion to Dismiss the Plaintiff's Second Amended Complaint pursuant to Federal Rules of Procedure 12(b)(2), 12(b)(3), and 12(b)(6), filed by defendants Antigone Curis and Curis Law PLLC (Doc. 56, filed July 2, 2025). The motions to dismiss are opposed by Plaintiff Shawn Corey Carter (Docs. 64, 65, 66, all filed July 23, 2025). The motions are further supplemented by Defendants Antigone Curis and Curis Law, PLLC (collectively, the "Curis Defendants"); Anthony Buzbee, David Fortney, and Anthony G. Buzbee LP (collectively, the "Buzbee Defendants"); and Jane Doe with their respective replies. (Docs. 70, 71, 72, all filed August 13, 2025). Finally, Plaintiff, with leave of Court, filed a Sur-Reply to the reply of the Buzbee Defendants. (Doc. 76, filed August 21, 2025).

Also pending before the Court are the Motions for Leave to Proceed Using a Pseudonym

(Doc. 2, filed March 3, 2025; Doc. 80, filed September 5, 2025). The request to allow Defendant Jane Doe to proceed using the pseudonym, while initially filed by Plaintiff, is now opposed (Doc. 83, filed September 12, 2025). Doe, with leave of Court, filed a Reply. (Doc. 87, filed September 19, 2025). Plaintiff filed a Notice of Supplemental Authority (Doc. 90, filed 3/18/26) providing additional support for his opposition to the use of a pseudonym.

For the reasons discussed below, the Buzbee Defendants' motion to dismiss pursuant to Rules 12(b)(2)-(3) (Doc. 43) is **DENIED**, but in the interest of justice, by separate order, the case will be transferred to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1406(a). As a result, the Curis Defendants' motion to dismiss this action under Rules 12(b)(2)-(3) (Doc. 44) is **DENIED as moot**. The motions to dismiss filed by all defendants pursuant Rule 12(b)(6) (Docs. 43, 44, 56) and the motions to proceed using a pseudonym (Docs. 2, 80) **REMAIN PENDING** for resolution by the gaining court.

## I.       PARTIES, JURISDICTION, AND VENUE

Plaintiff Shawn Corey Carter ("Plaintiff" or "Carter") – professionally known as Jay-Z – asserts claims against the individual defendants and the two defendant law firms for damages arising from a prior lawsuit filed by Doe in the United States District Court for the Southern District of New York alleging she was sexually assaulted by Plaintiff when she was a minor. *See generally* Doc. 32. Plaintiff alleges Doe's claims were false and that the defendants participated in a conspiracy to defraud and extort him. *Id.* Carter asserts causes of action for malicious prosecution, abuse of process, and civil conspiracy as to all defendants, and for defamation as to Doe. *See id.* at ¶¶137-182.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). However, personal jurisdiction and venue are challenged by the Buzbee Defendants

and Curis Defendants.  Jane Doe does not contest personal jurisdiction and resides in the Southern District of Alabama.

## II.    BACKGROUND

### A.    Allegations in the Second Amended Complaint

Plaintiff is a citizen and resident of California.  Doc. 32 at ¶14.   He alleges Jane Doe is a citizen of Alabama residing in this District who conspired with the remaining defendants (Doe's attorneys and their respective law firms) in an "extortion scheme" to "coerce [Plaintiff] into making a substantial payoff" by falsely accusing him of sexually assaulting Doe when she was a minor.  *Id.* at ¶¶4, 15.  Plaintiff alleges attorneys Anthony Buzbee (principal of Buzbee Law Firm) and David Fortney are citizens and residents of Texas.  *Id.* at ¶¶16-17.  Plaintiff alleges Buzbee Law Firm, a privately-held limited partnership, is organized under the laws of Texas with its principal place of business in Harris County, Texas.  *Id*. at ¶18.  He alleges the partnership consists of partners Anthony Buzbee and Services by AGB, LLC, which is a citizen of Texas and has only one member, Buzbee.  *Id*. at ¶18.  Plaintiff asserts the Buzbee Law Firm is deemed a citizen of Texas.  *Id*.   Plaintiff alleges Antigone Curis is a citizen and resident of New York and is the sole member of Curis Law, which was organized under New York law and operates its principal place of business in New York.  *Id.* at ¶¶19-20.  Plaintiff alleges Curis Law is deemed a citizen of New York.  *Id.* at ¶20.

According to Plaintiff's Second Amended Complaint (Doc. 32), Doe, Buzbee, Buzbee's employees and/or Buzbee's agents used the Buzbee Law Firm to orchestrate a conspiracy against Plaintiff.  *Id*. at ¶18.  Plaintiff alleges that in furtherance of their conspiracy to extort a payment from him, Doe, the Buzbee Defendants, and the Curis Defendants sent a demand letter to Plaintiff falsely accusing him of sexually assaulting Doe when she was a minor and filed a false lawsuit

against him in the United States District Court for the Southern District of New York (the "SDNY action"), following which Doe then "amplified her malicious lies to a global audience on NBC News." *Id.* at ¶¶4, 15. Plaintiff alleges Doe met with her lawyers in Alabama, communicated with them from Alabama, and conspired with them from Alabama to extort Plaintiff. *Id.* at ¶15.

Plaintiff alleges Buzbee "saw dollar signs" when Sean "Diddy" Combs was arrested on September 17, 2024, and charged with racketeering conspiracy, sex trafficking, and transportation to engage in prostitution. *Id*. at ¶¶29-30. Buzbee allegedly contacted attorney Andrew Van Arsdale of the AVA Law Group ("AVA Law") and Reciprocity Industries, LLC, to generate client leads and solicit claims against Combs and "anyone who attended the same party as Combs." *Id.* at ¶¶30-32. Plaintiff alleges the Buzbee Defendants, Reciprocity, and AVA Law entered into an agreement whereby Reciprocity Industries would generate client leads through targeted ads on television, Facebook, and Instagram pursuant to express instructions from the Buzbee Defendants; would conduct client intake; and then forward leads to AVA Law and the Buzbee Defendants. *Id*. at ¶¶32, 36.

Plaintiff alleges the Buzbee Defendants, through Reciprocity Industries, solicited potential plaintiffs in Alabama and elsewhere with targeted advertisements on Facebook and Instagram, which display ads to users based on criteria selected by the advertiser, including user location. *Id.* at ¶¶36 n.6, 38. Plaintiff further alleges the Buzbee Defendants set up a 1-800 number hotline encouraging anyone with a claim against Combs or who attended the same party as Combs to call. *Id.* at ¶39. Plaintiff alleges that in September and October of 2024, Buzbee posted on social media, participated in a press conference, and participated in a series of national news media interviews to generate claims against Combs and other alleged perpetrators. *Id*. at ¶¶41, 44-45.

According to the operative complaint, "upon information and belief," Doe retained AVA

Law on October 14, 2024, to pursue a claim against Combs and at some point hired the defendants, with whom she "hatched a scheme to extort a large payout from [Plaintiff]." *Id*. at ¶¶54, 64. Plaintiff alleges AVA Law sent a draft complaint to the Buzbee Law Firm, after which any interviews and vetting of Doe by the Buzbee Law Firm, if same occurred, necessarily took place while Doe was in Alabama and/or the investigator traveled to Alabama. *Id.* at ¶¶60-61.

Plaintiff alleges that just six days later, on October 20, 2024, Doe and the Defendants filed the SDNY action, *Doe v. Combs*, Civ. Act. No. 24-cv-7975, against Sean "Diddy" Combs, his business entities, and "Does 1-10." Doc. 32 at ¶68.[1] According to Plaintiff, Doe alleged in her original complaint that she was sexually assaulted at age 13 by Combs and "Celebrity A" at an afterparty following the Video Music Awards on September 7, 2000, in New York City. *Id*. at ¶¶71-72. Next, Doe and the Buzbee Defendants sent him a demand letter on November 5, 2024 alleging Plaintiff was the "Celebrity A" who sexually assaulted Doe when she was a minor as set forth in the SDNY action. *Id.* at ¶¶65, 74. Plaintiff alleges the demand letter contained many of the allegations from the SDNY suit and "implied that Doe would amend her complaint to add Carter if he refused to pay" and did not commit to a "confidential mediation." *Id.* at ¶¶74-76. In response, Plaintiff filed his initial lawsuit against Buzbee for extortion and intentional infliction of emotional distress in the California Superior Court, Los Angeles County, in the matter *Shawn Carter v. The Buzbee Law Firm, et al.*, No. 24SMCV05637 (the "California action"). Doc. 32 at ¶78.[2]

---

[1] Plaintiff alleges that the Buzbee and Curis Defendants filed 13 other suits against Combs and his business entities in state and federal courts in New York around this time period. Doc. 32 at ¶68 n.12.

[2] Buzbee and the Buzbee Law Firm filed a special motion to strike in the California action, which was granted on June 30, 2025. Plaintiff has since filed a notice of appeal to the California Second District Court of Appeal, Case No. B34798. *See* Docs. 74, 74-1, 74-2, and 74-3.

According to the Second Amended Complaint, Doe told Buzbee that Plaintiff did not sexually assault her, but Buzbee pushed Doe to proceed with the false story "in order to leverage a maximum payday." *Id.* at ¶¶5, 7. In particular:

> 5.  When their extortionate demand letter failed to yield the financial windfall they sought, and ***after*** Doe told Buzbee – with whom she had never spoken before he filed Doe's original complaint or sent the demand letter – that Mr. Carter "did not sexually assault [her]," Buzbee "pushed [her] towards going forward with the false story against Mr. Carter … to make the case better and get them [the lawyer's {*sic*} and her] more money…." Specifically: "Buzbee brought Jay-Z into it."

*Id*. at ¶5.

Doe amended the SDNY action to name Plaintiff as a defendant on December 8, 2024, identifying him as "Celebrity A." *Id*. at ¶79. According to the operative complaint, Attorney Curis' role in the conspiracy was to allow the Buzbee Defendants to improperly use her electronic credentials to file Doe's complaint against Plaintiff (which Buzbee signed), as they were not authorized to practice law before the U.S. District Court for the Southern District of New York. *Id*. at ¶19.

Plaintiff alleges that, although aware of the falsity of Doe's allegations, on December 10, 2024, Buzbee told TMZ that Doe was "not ruling out filing rape charges" against Plaintiff. *Id.* at ¶109. Plaintiff alleges Buzbee violated Alabama and Texas attorney disciplinary rules that prohibit a lawyer from presenting or threatening to present "criminal or disciplinary charges solely to gain an advantage in a civil matter." *Id*. at ¶83. Plaintiff also alleges Doe did not meet Buzbee or personally discuss her allegations with him until the second week of December 2024, when the Buzbee Defendants paid for Doe to travel from Alabama to their offices in Houston, Texas, to sit for an interview with NBC News set up by Fortney. *Id*. at ¶¶26, 82, 84. NBC broadcast portions of the interview, which was conducted with Fortney by Doe's side and with Doe's identity

concealed, on December 13, 2024. *Id.* at ¶84. NBC also published a story excerpting interviews with Doe. *Id.* Plaintiff alleges Doe lied in the interview with NBC and that Doe made new allegations concerning the assault that were not included in the amended SDNY complaint. *Id.* at ¶¶85-90. Plaintiff alleges Fortney traveled to Alabama with Doe after the interview "in furtherance of their conspiracy." *Id.* at ¶91.

Plaintiff contends that the Defendants knew Doe was unreliable, untruthful, and that her allegations against him were "easily refutable" through basic internet and public records searches, such that Plaintiff questions whether the Defendants filed the case without proper vetting or discovered the allegations were false and filed the lawsuit, anyway, because they never intended to litigate it. *Id.* at ¶¶92, 104. Plaintiff alleges that Doe participated in a follow-up interview in which NBC confronted her with evidence contradicting her account and Doe admitted she "made some mistakes" and was guessing as to the location where the rape occurred. *Id.* at ¶102.

On January 28, 2025, the District Judge presiding over the SDNY action ordered Buzbee to file proof of admission before that court by February 14, 2025. *Id.* at ¶110. Plaintiff alleges Buzbee then applied for admission, but was informed on February 13, 2025, that his application had been denied due to his filing pleadings in Doe's suit and twenty others without being admitted to that court. *Id.* at ¶112. At this point, according to the Second Amended Complaint, Buzbee "dispatched" Fortney to Alabama to meet with Doe that same day "for the express purpose of trying to cover up their conspiracy by deceiving Doe about the real reason for seeking dismissal of the SDNY case." *Id.* at ¶¶113-114. Plaintiff alleges that, "[u]pon information and belief, during that meeting, Fortney falsely, maliciously, and manipulatively told Doe that the case against Mr. Carter needed to be dismissed because Mr. Carter had made threats against Doe's life, and it was too dangerous to continue with the case," but that no such threats had actually been made. *Id.* at

¶115. Rather, according to Plaintiff, the Buzbee Defendants and Curis Defendants were "desperate to withdraw their fraudulent case to avoid being punished by the court for filing a false pleading without Buzbee even being admitted in the SDNY – jeopardizing their ability to continue" with the 20-plus other cases pending in that court.  *Id*. at ¶116.

Doe filed a voluntary dismissal with prejudice of the SDNY action on February 14, 2025. *Id*. at ¶117.  Plaintiff alleges that on February 21, 2025, Doe admitted to investigators in Alabama that she made up the story about Plaintiff and conspired with the Defendants to pursue false claims. *Id.* at ¶¶7-8, 118.[3]  Plaintiff further alleges that, upon learning about Doe's statement to investigators, the Buzbee Defendants' co-counsel called an attorney for Plaintiff and threatened that, if Plaintiff used Doe's statements to the investigators in Carter's pending California suit against Buzbee, Buzbee would issue a public statement by Doe that she had been threatened by Plaintiff's "people," the allegations in the SDNY action were true, and that she dismissed that suit only because she was afraid for her life.  *Id.* at ¶120.

Plaintiff alleges Doe's lawsuit and false allegations caused him to suffer actual and special damages, including damage to his reputation, threats of physical harm to him and his wife on social media, harm to businesses in which he has an ownership interest, denial of a personal credit line, and emotional harm.  *Id*. at ¶¶126-127, 131-135.

**B.      Procedural Background**

Plaintiff filed his Original Complaint in this action against the Buzbee Defendants and Doe on March 3, 3025, and moved for leave of court to proceed against Doe under a pseudonym.  Docs. 1, 2.  Plaintiff was granted leave to issue a summons to Doe using a pseudonym, and the Court

---

[3] Plaintiff alleges Doe later attempted to "backtrack and recant her statements" to the investigators by filing a declaration in the California action claiming investigators misrepresented her statements.  Doc. 32 at ¶8.

reserved ruling on the motion for leave until all parties had appeared and the matter was fully briefed.  Doc. 4.  Plaintiff filed his Amended Complaint on May 5, 2025, adding defendants Antigone Curis and Curis Law, PLC.  Doc. 29.  He subsequently filed his Second Amended Complaint, which is the operative complaint, after the Court ordered that he correct deficiencies in pleading citizenship of the defendants as relates to diversity jurisdiction.  Doc. 31.

Jane Doe filed her own motion for leave to proceed under her pseudonym with supporting exhibits on September 5, 2025.  *See* Docs. 80, 80-1, 80-2, 80-3, 80-4.  For their part, the Buzbee Defendants and Curis Defendants consent to Doe proceeding under a pseudonym.  *See* Docs. 79, 81.  Plaintiff now opposes Doe using a pseudonym.  Doc. 83.

The Buzbee Defendants and Curis Defendants moved to dismiss the Second Amended Complaint pursuant to Rules 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue, and all defendants filed motions to dismiss pursuant to Rule 12(b)(6) on the basis of failure to state a claim.  *See generally* Docs. 43, 44, 56; *see also* Docs. 70, 71, 72 (replies).  Plaintiff opposes the motions. *See generally* Docs. 64, 65, 66; *see also* Doc. 76 (sur-reply).  The motions are fully briefed and ripe for review.  The Court determines that no oral argument is necessary for their resolution at this time.

## III.    STANDARDS OF REVIEW

### A.    Fed. R. Civ. P. 12(b)(2) – Lack of Personal Jurisdiction

A defendant may move to dismiss an action based on "lack of personal jurisdiction."  Fed. R. Civ. P. 12(b)(2).  "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  The district court has two options when a defendant files a Rule 12(b)(2) motion to dismiss for

lack of personal jurisdiction: "(1) hold an evidentiary hearing before trial to make factual findings about personal jurisdiction or (2) decide the motion to dismiss under a prima facie standard without an evidentiary hearing." *N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 1333 (11th Cir. 2025) (citation and quotations omitted); *see also Acrylicon USA, LLC v. Silikal GmbH*, 985 F. 3d 1350, 1364 (11th Cir. 2021) (citations omitted) ("While the plaintiff bears the burden of establishing personal jurisdiction, the plaintiff's burden of proof varies according to how the strict court chooses to proceed.")

"Whether the plaintiff satisfies the prima facie requirement is a purely legal question; the district court does not weigh evidence or make credibility determinations." *AcryliCon*, 985 F. 3d at 1364-65 (citations omitted).  A plaintiff seeking to establish personal jurisdiction over a nonresident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).  The Court accepts all uncontested factual allegations in the complaint as true.  *Acrylicon,* 985 F.3d at 1364.  When the defendant submits nonconclusory affidavits that controvert the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting the existence of personal jurisdiction.  *Louis Vuitton*, 736 F.3d at 1350.

"When the plaintiff's complaint and supporting evidence conflict with the defendant's nonconclusory affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *AcryliCon*, 985 F.3d at 1364.  The plaintiff meets its burden if he presents enough evidence to withstand a motion for directed verdict.  *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006).  If the court applies the prima facie standard, "[a]fter trial, if the defendant still believes personal jurisdiction is lacking, it may invite the district court to revisit personal

jurisdiction in light of the evidence produced at trial, at which time the court will impose a preponderance-of-the-evidence standard." *AcryliCon*, 985 F.3d at 1365.

"A federal district court in [Alabama] may exercise personal jurisdiction over a nonresident defendant to the same extent that [an Alabama state] court may, so long as the exercise is consistent with federal due process requirements." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). "Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000) (citing *Martin v. Robbins*, 628 So.2d 614, 617 (Ala. 1993)); *see also* Ala. R. Civ. P. 4.2 (permitting jurisdiction over nonresident defendants on any basis "not inconsistent with the constitution of this state or the Constitution of the United States"). The nonresident defendants generally must "have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (citation, internal quotation marks, and brackets omitted).

Personal jurisdiction may be either general or specific. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011). "When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

"Specific jurisdiction, on the other hand, depends on an affiliation between the forum and

the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires*, 564 U.S. at 919 (citation, quotation, and brackets omitted). Specific personal jurisdiction requires "that the defendant's conduct and connection to the forum are such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodsen*, 444 U.S. 286, 297 (1980). "[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum state." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Further, the "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285. The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (citation omitted).

**B.     Fed. R. Civ. P. 12(b)(3) – Improper Venue**

Federal Rule of Civil Procedure 12(b)(3) states that a party may seek to dismiss a case for improper venue. Further, 28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Rule 12(b)(3) and Section 1406(a) "authorize dismissal only when venue is 'wrong' or 'improper' in the forum in which it was brought." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). "This question—whether venue is "wrong" or "improper"—is generally governed by 28 U.S.C. § 1391 (2006 ed., Supp. V)." *Id.*

Section 1391 provides that a civil action may be brought it:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)

"When venue is challenged by a Rule 12(b)(3) motion, [a] plaintiff has the burden of showing that venue in the forum is proper." *Pritchett v. Paschall Truck Lines, Inc.*, 714 F.Supp.2d 1171, 1172 (M.D. Ala. 2010). "The facts as alleged in the complaint are taken as true, to the extent they are uncontroverted by defendants' affidavits." *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988). "The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004).

**C.      Fed. R. Civ. P. 12(b)(6) – Failure to State a Claim**

Pursuant to Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [*Twombly*, 550 U.S.] at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556."). Because a Fed. R. Civ. P. 12 (b)(6) motion questions the legal sufficiency of a complaint, in assessing the merits of the motion, the court must assume that

all the factual allegations set forth in the complaint are true.  *See, e.g.*, *United States v. Gaubert*, 499 U.S. 315, 327 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990); *but see also Iqbal*, 556 U.S. at 678, (citing *Twombly*, 550 U.S. at 555,) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, all factual allegations shall be construed in the light most favorable to the plaintiff.  *See, e.g.*, *Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 1382, 103 L. Ed. 2d 628 (1989).  Obviously, therefore, a district court may not resolve factual disputes when adjudicating a motion to dismiss.  *Page v. Postmaster Gen. and Chief Exec. Officer of the U.S. Postal Serv.*, 493 F. App'x 994, 995 (11th Cir. 2012) (citing, among other cases, *Lawrence*, 919 F.2d at 1529, for the proposition that, under Fed. R. Civ. P. 12(b)(6), the existence of disputed material facts precludes a district court from granting a motion to dismiss).  "'When considering a motion to dismiss . . . the court limits its consideration to the pleadings and all exhibits attached thereto.'"  *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) (quoting *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam)); *see also Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215-16 (11th Cir. 2012) ("Because the Ellis law firm's dunning letter and enclosed documents were attached to the Reeses' complaint as an exhibit, we treat them as part of the complaint for [Fed. R. Civ. P. 12(b)(6) purposes.").

## IV.    DISCUSSION AND ANALYSIS

The Court will first address the Buzbee Defendants and their motions related to personal jurisdiction and venue before turning to the Curis Defendants and their similar requests. The

Court notes that while personal jurisdiction and venue are separate analyses, there is a great deal

of overlap between the two.

**A.      Buzbee Defendants**

**1.          Personal Jurisdiction**

The Court first addresses whether the exercise of jurisdiction over the Buzbee Defendants

in Alabama violates due process.  The Court finds that it does not.

In support of their motion to dismiss for lack of personal jurisdiction, the Buzbee

Defendants included the declaration of David Fortney (Doc. 43-1, dated June 4, 2025 – the

"Fortney Declaration"), and the declaration of Anthony Buzbee (Doc. 43-2, dated June 4, 2025 –

the "Buzbee Declaration"), which assert the following additional facts relevant to the issue of

personal jurisdiction:

- Fortney and Buzbee are Texas citizens and residents.  (Doc. 43-1 at ¶3; and Doc. 43-2 at ¶3).

- Buzbee is the owner of Buzbee Law Firm, and Fortney is an attorney with the firm. (Doc. 43-1 at ¶2; and Doc. 43-2 at ¶3).

- Buzbee, Fortney, and the Buzbee Law Firm did not solicit in Alabama for potential clients for lawsuits against Carter or to represent Jane Doe; Doe signed up with AVA Law Group, who referred her to the Buzbee Law Firm.  (Doc. 43-1 at ¶5; and Doc. 43-2 at ¶5).

- Buzbee Law Firm had a contractual relationship with AVA Law Group but did not provide instructions to AVA as to how to advertise or solicit for potential clients, and Buzbee, Fortney, and the Buzbee Law Firm never gave instructions to target Alabama. AVA made its own decisions about how to seek clients.  Buzbee Law Firm never employed anyone to specifically target Alabama for potential client solicitation.  (Doc. 43-1 at ¶6; and Doc. 43-2 at ¶6).

- Online advertisements and solicitations for potential clients were conducted by AVA or its contractors, not by the Buzbee Firm. (Doc. 43-1 at ¶7; and Doc. 43-2 at ¶7).

- Buzbee Law Firm had an intake button for direct visitors to the firm's website for cases related to Sean "Diddy" Combs, but Doe did not access it.  (Doc. 43-1 at ¶7).

- Buzbee Law Firm never instructed Reciprocity Industries as to the solicitation of potential clients or other forms of advertising. The firm had no role in how Reciprocity Industries performed its work. (Doc. 43-1 at ¶8; and Doc. 43-2 at ¶8).

- Neither Buzbee, Fortney, nor anyone else with the Buzbee Law Firm traveled to Alabama to meet with Doe before the demand letter was sent or before the SDNY suit was initially filed or amended to name Carter. (Doc. 43-1 at ¶¶10-11, 13; and Doc. 43-2 at ¶¶10-11, 13).

- The demand letter was not drafted in Alabama, discussed by the firm in Alabama, or sent from Alabama; it was drafted at the firm's offices in Texas and sent from Texas to counsel in New York. (Doc. 43-1 at ¶14; and Doc. 43-2 at ¶14).

- The Buzbee Law Firm's involvement in the drafting of the original SDNY complaint, which Fortney reviewed, took place in Texas, and he drafted the amended SDNY complaint in Texas. No part of those pleadings was prepared in Alabama. (*Id.* at ¶12).

- The amended SDNY complaint naming Plaintiff was drafted at the firm's Texas office while Jane Doe was in Texas. (Doc. 43-2 at ¶12).

- Fortney traveled to Alabama twice for purposes related to Jane Doe, and he met with Doe on both occasions. (Doc. 43-1 at ¶16).

- Buzbee never traveled to Alabama for purposes related to allegations in this lawsuit; he first met Doe in Texas. (Doc. 43-2 at ¶¶17-18).

- The NBC News interview did not take place in Alabama. (Doc. 43-1 at ¶17; and Doc. 43-2 at ¶17).

- Fortney has no knowledge of Buzbee ever going to Alabama for purposes related to Doe or this suit. (Doc. 43-1 at ¶19)

- The Buzbee Law Firm never hired an investigator to go to Alabama for any purpose related to Doe or the allegations related to this suit (Doc. 43-1 at ¶20; and Doc. 43-2 at ¶19).

- After the SDNY suit was filed and amended and after the demand letter was sent, Buzbee Law Firm sent an associate to Alabama to escort Doe from Alabama to Texas after Plaintiff's agents located Doe at her residence and harassed and frightened her. (*Id.* at ¶20).

- Fortney, Buzbee, and the Buzbee Law Firm have no office in Alabama, own no property in Alabama, and are not licensed to do business or practice law in Alabama. (Doc. 43-1 at ¶¶21-22; and Doc. 43-2 at ¶¶20-21).

- Buzbee Law Firm has no employees or agents in Alabama.  The firm is additional litigation counsel in one current suit in Alabama unrelated to Doe or the events of this suit.  (Doc. 43-1 at ¶21; Doc. 43-2 at ¶20).

- Fortney, Buzbee, and the Buzbee Law Firm have never appeared as counsel for Doe in an Alabama court or invoked Alabama's state or federal judicial systems related to Carter or the allegations in the Second Amended Complaint.  (Doc. 43-1 at ¶23; and Doc. 43-2 at ¶22).

### a.    This Court lacks general jurisdiction over Anthony Buzbee, David Fortney, and Anthony G. Buzbee LP.

Although Plaintiff does not expressly invoke general jurisdiction over the Buzbee Defendants, he does allege: the Buzbee Defendants have "continuous, systematic, and substantial contacts with the jurisdiction"; Buzbee, Fortney, and the Buzbee Law Firm derived significant revenue from Alabama; and that Buzbee had appeared as counsel of record in over a dozen Alabama suits since 1999.  Doc. 32 at ¶¶16-17, 27.  To the extent that Plaintiff attempts to argue that the Court has general personal jurisdiction over Buzbee, Fortney, and/or the Buzbee Law Firm, the allegations in the Second Amended Complaint do not contain any facts indicating the Buzbee Defendants are "essentially at home" in the State of Alabama, and general personal jurisdiction is improper as to Anthony Buzbee, David Fortney, and Anthony G. Buzbee LP d/b/a the Buzbee Law Firm.

### b.    The Court has specific jurisdiction over Anthony Buzbee, David Fortney, and Anthony G. Buzbee LP.

The Buzbee Defendants assert that the exercise of specific personal jurisdiction over them would offend due process, summarizing this litigation as a suit by a California resident against out-of-state defendants in Alabama concerning a lawsuit filed in New York and a demand letter sent from Texas to New York.  Doc. 43, PageID 576.  The Buzbee Defendants argue that the purposeful availment and relatedness prongs of the test for specific jurisdiction are not satisfied here, and, further that the exercise of jurisdiction over them would violate traditional notions of

fair play and substantial justice. *See generally* Doc. 43.

Plaintiff responds that this Court has specific personal jurisdiction over the Buzbee Defendants pursuant to a conspiracy theory of jurisdiction and based on the totality of their contacts with Alabama related to Doe. Doc. 64, PageID 786, 791. Plaintiff identifies the following alleged contacts as relevant:

- The Buzbee Defendants solicited Doe as a client while she resided in Alabama. Plaintiff further argues in support of this contact that the Buzbee Defendants' internet advertisements were reasonably calculated to reach Alabama. (Doc. 64, PageID 796) (citing the Second Amended Complaint, Doc. 32 at ¶¶35-36).

- The Buzbee Defendants communicated with Doe via telephone calls and emails to her in Alabama to discuss the conspiracy to extort Plaintiff. (Doc. 64, PageID 800) (citing Doc. 32 at ¶59, 61).

- The Buzbee Defendants interviewed Doe about her allegations while she was in Alabama and claim to have investigated her while she was in Alabama. (Doc. 64, PageID 800) (citing Doc. 32 at ¶61).

- Fortney and his associate contacted Doe in Alabama on November 4, 2024, to obtain her permission to send the November 5, 2024, demand letter. (Doc. 64, PageID 800) (citing Doc. 32 at ¶74).

- Fortney, on behalf of himself, Buzbee, and Buzbee Law Firm, traveled to Alabama to meet with Doe concerning the conspiracy on three occasions. (Doc. 64, PageID 802) (citing Doc. 32 at ¶17, 121; and the Fortney Declaration, Doc. 43-1 at ¶¶8-9, 20).

- The Buzbee Defendants arranged and paid for Doe to travel from Alabama to Texas to make defamatory statements in the NBC News interview. (Doc. 64, PageID 802-803) (citing Doc. 32 at ¶82).

- The Buzbee Defendants sent an associate to Alabama once during the conspiracy to escort Doe from Alabama to Texas. (Doc. 64, PageID 803) (citing the Fortney Declaration, Doc.43-1 at ¶20).

Plaintiff also points to the Buzbee Law Firm and/or Buzbee having moved for pro hac vice admission and filed at least ten lawsuits in Alabama courts since 1999. Doc. 64, PageID 804-805 (citing the declaration of Spencer Hahn attached to the Second Amended Complaint, Doc. 32-6,

and accompanying Exhibits 1-10).   The pro hac vice applications submitted with Hahn's Declaration indicate the Buzbee sought to appear before Alabama state and federal courts in four cases in 1999, and one case each in 2019 and 2023, while other attorneys with the Buzbee Law Firm sought admission to appear pro hac vice before Alabama state and federal courts in two additional cases in 2012 and one case in 2019.  Doc. 64-1, PageID 977-1051.

In specific jurisdiction cases, "we examine whether (1) the plaintiff's claims 'arise out of or relate to' one of the defendant's contacts with the forum state; (2) the nonresident defendant 'purposefully availed' itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of 'fair play and substantial justice.' "  *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1275 (11th Cir. 2022) (quoting *Louis Vuitton*, 736 F.3d at 1355).  "[T]he defendant must have 'purposefully availed' itself of the privilege of conducting activities—that is, purposefully establishing contacts—in the forum state and there must be a sufficient nexus between those contacts and the litigation." *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010).

### i.        Purposeful Availment

The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations and internal quotations omitted).  Two tests for purposeful availment may be applied in intentional tort cases: the "effects" test and the traditional minimum contacts test.  *Louis Vuitton,* 736 F.3d at 1356.  The "effects" test used by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984), generally requires a showing that the defendant: "(1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the

defendant should have reasonably anticipated." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1221 n.28 (11th Cir. 2009) (citations omitted). The effects test is not met here, as there is no allegation the defendants injured Plaintiff within the forum such that defendants should have reasonably anticipated causing injury within the forum.

Under the traditional minimum contacts test for purposeful availment, the court must "assess the nonresident defendant's contacts with the forum state and ask whether those contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357 (citation omitted). *"*In performing this analysis, we identify all contacts between a nonresident defendant and a forum state and ask whether, individually or collectively, those contacts satisfy these criteria." *Id.* (citation omitted). "[W]here the defendant deliberately has engaged in significant activities within a State ... or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there." *Burger King*, 471 U.S. at 475-76 (citation and quotation omitted).

The Buzbee Defendants rely on *Rowe v. Gary, Williams, Parteni, Watson & Gray, PLLC*, 723 F. App'x 871, 875 (11th Cir. 2018), and *Newsome v. Gallacher*, 722 F.3d 1257, 1279-80 (10th Cir. 2013), in support of their position that "an out-of-state lawyer's doing out-of-sate work for a forum client is not deemed to be a lawyer's availment of the forum's legal system" and it was merely "happenstance" that Doe lives in Alabama. Doc. 43, PageID 571-572. They assert that the few alleged contacts with Alabama were attenuated and fortuitous. *Id.*, PageID 572. They emphasize that they did not solicit Doe by taking any action directed to Alabama and did not direct any other entity to do so. *Id.* (citing the *Fortney and Buzbee Declarations*, Docs. 43-1 and 43-2).

Fortney and Buzbee deny targeting Alabama to solicit potential plaintiffs against Carter and maintain that it was their communications with AVA Law that led Doe to retain them as her counsel. *Id.* (citing Docs. 43-1, 43-2). They cite *Thomas v. Brown*, 504 F. App'x 845, 848 (11th Cir. 2013), in support of their argument that there is no purposeful availment where the out-of-state lawyer working on out-of-state litigation does not solicit work in the forum state. Doc. 43, PageID 572.

Plaintiff seeks to distinguish this case from *Rowe* and *Thomas* on the grounds that the Buzbee Defendants marketed to, and solicited for, potential clients (including Doe) in the forum state; the Buzbee Defendants "purposefully injected themselves into Alabama" through "materially stronger" connections than were present in *Rowe*, including meeting with Doe at least three times in Alabama during the two-month pendency of the suit and communicating with her by phone exclusively when she was in Alabama; and the Buzbee Defendants participated in the Alabama legal market for decades. Doc. 64, PageID 793-795.

In support of his arguments, Plaintiff cites to the following paragraphs from the Second Amended Complaint:

17.    ….Additionally, Fortney traveled to Alabama on at least two occasions for "purpose[s] related to the facts alleged in th[is] Complaint" and "[o]n both occasions [he] met with [his] client, Ms. Doe" in furtherance of their conspiracy to extort Mr. Carter. (Affidavit of David Fortney, dated April 4, 2025, ECF No. 21-1 (the "Fortney Aff.") at ¶¶8-9).

       ***

59.    The conspiracy against Mr. Carter was, therefore, hatched within the Southern District of Alabama as it arose out of the activities directly related to and arising from contacts with Doe in the Southern District of Alabama. Indeed, Doe only traveled to Texas once and all of her other communications with her co-Defendants occurred while she was in the Southern District of Alabama.

       ***

Page 21 of 38

61.     Buzbee has since testified that, after he received the draft complaint from AVA Law, the Buzbee Law Firm "also engaged in further rigorous due diligence to investigate the veracity and legal viability of [Doe's] claim" which included "[a]t least two attorneys [who] interviewed the plaintiff and fact-checked various aspects of her account." (Jan. 2025 Buzbee Decl., at ¶ 7).  Upon information and belief, Doe was in the Southern District of Alabama when the Buzbee Defendants allegedly interviewed Doe.  The Buzbee Law Firm "also engaged a retired police detective to gather facts about elements of Jane Doe's claims" (Declaration of Anthony Buzbee, dated March 11, 2025 (the "Mar. 2025 Buzbee Decl."), at ¶ 11) which, assuming truthful, would have had to include contacting individuals in and/or the investigator travelling to the Southern District of Alabama.

        ***

74.     A few weeks after filing her complaint, Doe and the Buzbee Defendants sent Mr. Carter an extortionate demand letter dated November 5, 2024, containing false allegations of vile conduct by Mr. Carter.  The Buzbee Defendants claim that Fortney and an associate at the Buzbee Law Firm received Doe's permission to send the demand letter on a phone call, which upon information and belief, occurred while Doe was in the Southern District of Alabama on or around November 4, 2024.

        ***

121.    Fortney traveled to Alabama to convince Doe to drop her suit.  He did this by falsely telling Doe that she could "get in a lot of trouble," and indeed that Mr. Carter was going to kill her.  Of course, all allegations about Doe's life being threatened by Mr. Carter's "people" and her newly claimed reasons for dropping the lawsuit are, and always were, false.  When Buzbee, Fortney and their New York co-counsel said them, they knew that these statements were false and ultimately Doe knew that each of these statements was false as well.

Doc. 32 (brackets and parentheticals in original)(footnote omitted).

In *Rowe v. Gary, Williams, Parteni, Watson & Gary, P.L.L.C.*, the plaintiffs were former clients who sued the defendant law firm in a Georgia federal court for alleged fraudulent misrepresentation and legal malpractice in connection with the defense of a prior New York lawsuit.  723 F. App'x at 873.  The plaintiffs/former clients were citizens of Georgia and Mississippi, while the defendants were Florida residents and citizens.  *Id.*  During the course of the multi-year underlying litigation in New York, one litigation strategy meeting and one

deposition took place in Georgia. *Id*. at 876. Rowe was present in Georgia during some phone and email discussions about the New York litigation, but he also spoke to the attorney defendants while in New York and in the firm's Florida office. *Id*.

In concluding that the contacts with the forum were too random or attenuated to properly support personal jurisdiction, the *Rowe* court distinguished the case from *Diamond Crystal Brands, Inc.*, 593 F.3d 1249, 1269 (11th Cir. 2010), in which the non-forum defendant "purposefully engag[ed] in fourteen such transactions in just six months," creating "a substantial and ongoing relationship with a Georgia manufacturer." 723 F. App'x at 876. The *Rowe* court also observed that "an out-of-state defendant's merely entering into a contract—such as one for legal representation—with a forum resident is insufficient to pass the minimum contacts test." 723 F. Appx at 875. The *Rowe* court cited with approval *Newsome*, 722 F.3d 1257. In *Newsome*, the Tenth Circuit adopted the majority position that "an out-of-state attorney working from out-of-state on an out-of-state matter does not purposefully avail himself of the client's home forum's laws and privileges, at least not without some evidence that the attorney reached out to the client's home forum to solicit the client's business." *Newsome*, 722 F.3d at 1280–81. The *Newsome* court left the door open for "other distinguishing factors" that could constitute purposeful availment by an out of state attorney, which the court declined to list. *Id*.

Similarly, in *Thomas v. Brown*, the Eleventh Circuit found that Ohio attorneys sued by shareholders of their former Florida client did not have sufficient contacts with Florida on the basis that the underlying litigation was in Ohio, the attorneys did not seek out the client's representation or market themselves to Florida, no bills were mailed to Florida, no legal documents were signed or filed in Florida, no hearings or depositions took place in Florida, and the attorneys never traveled to Florida for the case. 504 F. App'x 845 (11th Cir. 2013). The mere fact that the client was a

Florida corporation and the defendant attorneys spoke on the phone to client representatives in Florida "d[id] not establish that Defendants would have 'fair warning' that their activities related to this matter would subject them to the jurisdiction of Florida." *Id.* at 849 (citing *Burger King Corp.*, 471 U.S. at 472).

*Rowe* and *Thomas* are distinguishable from the present case. The uncontroverted factual allegations of the Second Amended Complaint as to the Buzbee Defendants, which the Court takes as true for purposes of the motion to dismiss, go beyond an out-of-state attorney's merely entering into a contract for legal representation of an Alabama plaintiff and engaging in routine communications with the client in Alabama. Rather the allegations are that of a conspiracy – both between Doe and the Buzbee Defendants and separately between the Buzbee Defendants themselves and without Doe's knowledge and affirmatively misrepresenting matters to her. Put simply, Plaintiff does not allege that jurisdiction is established based on a traditional attorney-client relationship, but rather conspirators – some of whom happen to be attorneys and their law firms.

"It is well settled that advertising that is reasonably calculated to reach the forum may constitute purposeful availment of the privileges of doing business in the forum." *U.S. S.E.C. v. Carrillo,* 115 F.3d 1540, 1545 (11th Cir. 1997) (citations omitted). Here, the Buzbee and Fortney Declarations do not deny that online advertising and solicitation took place, including social media posts targeting potential plaintiffs with claims related to Sean "Diddy" Combs. Rather, the Buzbee and Fortney Declarations counter Plaintiff's allegation that they specifically *targeted* Alabama residents, as opposed to residents of other states, and further state that they contracted out the work of advertising and solicitation. Docs. 43-1 and 43-2 at ¶5-8. The firm did have a website with an intake button for cases related to Combs that was accessible to Alabama residents, although the

Fortney Declaration states that Doe did not click the intake button.  Doc. 43-1 at ¶7.  They do not dispute that Buzbee posted on social media, participated in a press conference, and participated in a series of national news media interviews to generate claims against Combs and others.  *See* Doc. 32 at ¶¶41, 44-45 and Docs. 43-1 and 43-2.

"Although physical presence in the forum is not a prerequisite to jurisdiction, [ ] physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact."  *Walden*, 571 U.S. at 285 (citations and internal citations omitted).  The Buzbee and Fortney declarations do controvert Plaintiff's allegation that the Buzbee Defendants sent an investigator to Alabama to vet Doe's claims, but Plaintiff also alleges Fortney traveled to Alabama on at least two occasions to meet with Doe concerning her case and in furtherance of the conspiracy to extort Plaintiff.  Doc. 32 at ¶¶17, 121; Doc. 43-1 at ¶20; and Doc. 43-2 at ¶19.  Fortney admits traveling to Alabama to meet with Doe on two occasions.  Doc. 43-1 at ¶18.  The Buzbee Declaration also acknowledges that the Buzbee Law Firm sent an associate to escort Doe from Alabama to Texas at one point.  Doc. 43-2 at ¶19.

With respect to the Fortney's second meeting with Doe, Plaintiff alleges that Buzbee "dispatched" Fortney to Alabama with the "express purpose of trying to cover up their conspiracy by deceiving Doe about the real reason for seeking dismissal of the SDNY case."  Doc. 32 at ¶114. The Fortney and Buzbee Declarations do not address this allegation, and the Court accepts as true for purposes of the motion to dismiss that Fortney, at the direction of his employer, traveled to Alabama to meet with Doe, at which time Fortney made fraudulent misrepresentations to Doe in order to induce her to voluntarily dismiss her lawsuit against Plaintiff.  Following this meeting with Fortney in Alabama, Doe voluntarily dismissed the SDNY lawsuit the very next day.  Doc. 32 at ¶117.  Plaintiff further alleges the Buzbee Defendants paid for and arranged a trip for Doe

from Alabama to Texas in order that Doe could participate in the NBC News interview arranged by Buzbee for the purpose of making defamatory statements about Plaintiff. Doc. 32 at ¶¶82, 84.

These circumstances qualify as "other distinguishing factors" referenced by the Tenth Circuit in *Newsome*, 722 F.3d at 280-81, that constitute purposeful availment in the context of attorneys representing out-of-state forum clients in out-of-state litigation. While it is true that "entering a contract with a citizen of another state, standing alone, does not automatically satisfy the minimum contacts test," these contacts are akin to the "plus" factors that connect a defendant to the forum jurisdiction when evaluating a contractual relationship for minimum contacts. *See Diamond Crystal*, 593 F.3d at 1268. As discussed before, the fact the Buzbee Defendants are attorneys is not the primary issue alleged by Plaintiff. Rather, at issue is their role as conspirators who attempted to extort Plaintiff through improperly filed lawsuits and a public pressure campaign despite their knowledge of the falsity of such allegations.

### ii.      "Arising Out of" or Relatedness

"Personal jurisdiction does not require 'a strict causal relationship between the defendant's in-state activity and the litigation.'" *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304, 1311 (11th Cir. 2025) (quoting *Ford Motor*, 592 U.S. 351, 362 (2021)). The "arise out of or relate to" prong "contemplates that some relationships will support jurisdiction without a causal showing." *Id.* at 362. The Court must "focus on the essential foundation of specific jurisdiction—whether there is a strong relationship among the defendant, the forum, and the litigation." *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023) (quoting *Ford Motor*, 592 U.S. at 365) (cleaned up).

The Buzbee Defendants assert that meetings with Doe in Alabama after the demand letter was sent and the amended complaint naming Plaintiff had already been filed in the SDNY action

are simple "after-the-fact" meetings and, further, that the "key events" of the malicious prosecution and abuse of process claims are alleged to have occurred elsewhere. (Doc. 43, p. 9-10). Although this line of argument is relevant to the venue question addressed below, the Buzbee Defendants would have the Court impose a stricter standard of causation than is required for personal jurisdiction. Direct causation is not required. *Ford Motor*, 592 U.S. 362. The Plaintiff's claims " 'arise out of or relate to' at least one of the defendant's contacts with the forum." *Louis Vuitton*, 736 F.3d at 1355. The nexus between the Buzbee Defendants' contacts with Alabama and the causes of action against these defendants in the Second Amended Complaint is "close enough to support specific jurisdiction." *See Ford Motor*, 592 U.S. at 371.

### iii.     Traditional notions of fair play and substantial justice

The Court having found that there were sufficient minimum contacts with Alabama, "the question that remains is whether this is 'one of those rare cases in which minimum requirements inherent in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction . . . .' " *U.S. S.E.C. v. Carrillo*, 115 F.3d 1540, 1547 (11th Cir. 1997) (quoting *Asahi Metal Ind. Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 116 (1987) (Brennan, J., concurring)). In addition to minimum contacts and a sufficient nexus, "the exercise of jurisdiction must also comport with traditional notions of fair play and substantial justice." *Diamond Crystal*, 593 F.3d at 1274 (citing *Burger King*, 471 U.S. at 476). Because the first two prongs of the specific jurisdiction test are met, the Buzbee Defendants have the burden to show that the exercise of jurisdiction would conflict would traditional notions of fair play and substantial justice. *Diamond Crystal*, 593 F.3d at 1267.

The defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Oldfield v. Pueblo De Bahia Lora, S.A.*,

558 F.3d 1210, 1221 n.29 (11th Cir. 2009) (citation and internal quotation marks omitted).  The Court ordinarily considers the following factors: "the burden on the defendant"; "the forum's interest in adjudicating the dispute"; "the plaintiff's interest in obtaining convenient and effective relief"; and "the judicial system's interest in resolving the dispute."  *SkyHop Techs.,* 58 F.4th at 1231 (citations omitted).

The Buzbee Defendants assert that Alabama has only an attenuated connection to the dispute and that other states have a greater interest in the case.  Doc. 43, PageID 576.  They point out that Plaintiff alleges they abused the legal process of New York and caused him harm in California based on actions in Texas and New York.  *Id.*  They argue that Alabama is not a convenient forum for them or the Plaintiff, and that the matter can be disposed of more efficiently in a state with a greater interest in the case.  Doc. 43, PageID 577.

In response, Plaintiff asserts that Alabama has an interest in conspiracy that took place in Alabama and in which a resident in a participant.  Doc. 64, PageID 816.  Plaintiff further points out that the Buzbee Defendants serve the legal market and advertise here.  Doc. 64, PageID 805.  Plaintiff points out that Buzbee and/or the Buzbee Law Firm have previously represented clients in federal and state court lawsuits in Alabama since 1999 and should reasonably anticipate being haled into court to defend actions taken on behalf of their Alabama clients.  Doc. 64, PageID 817.

The Buzbee Defendants have not demonstrated that personal jurisdiction in Alabama would be unreasonable.  They have not shown they would be significantly burdened by litigating in Alabama, especially in light of their travels here in connection with Doe's case and/or other personal injury cases filed in Alabama courts and their argument that the Southern District of New York (which is no closer to Texas) is a more appropriate venue, addressed below.   Additionally, "modern transportation and communication have made it much less burdensome for a party sued

to defend himself in a State where he engages in economic activity." *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957); *see also Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir. 1996) ("The burden on the defendants occasioned by litigating outside Michigan is not slight, but modern methods of transportation and communication reduce this burden significantly.").   The Court finds that its exercise of personal jurisdiction over the Buzbee Defendants does not offend traditional notions of fair play and substantial justice.   Nonetheless, while Alabama has an interest in the dispute and it meets the criteria for establishing jurisdiction, the Court also determines that New York has an equal interest and is a better forum given the jurisdictional concerns with the Curis defendants.

### 2.   Venue

The requirements of §1391(b)(1) and (3) are not met on the face of the Second Amended Complaint, and the Court's analysis focuses on whether venue is proper under §1391(b)(2). With respect to venue under § 1391(b)(2), "[o]nly the events that directly give rise to a claim are relevant," and "of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003). Further, "only those acts and omissions that have a close nexus to the wrong" are considered. *Id.* at 1372.   In *Jenkins Brick*, the Eleventh Circuit rejected a "minimum contacts" approach to venue.  321 F.3d at 1372 ("We do not believe, for example, that a defendant's attendance at sales meetings is an 'event giving rise to a claim' for breach of a covenant not to compete.").

The Buzbee Defendants contend venue is not proper under § 1391(b)(2) because none of their alleged actionable conduct in relation to the malicious prosecution and abuse of process claims occurred in Alabama and no overt act in furtherance of the conspiracy took place in

Alabama. Doc. 43, PageID 583-585. They acknowledge in their Reply that a transfer under 28 U.S.C. § 1406(a) to either the Southern District of New York (where the underlying action was filed and litigated) or to the Southern District of Texas (where they reside and worked on the SDNY suit) is an alternative to dismissal. Doc. 71, PageID 1160.

In response, Plaintiff points to the allegations in the Second Amended Complaint that "upon information and belief, and unless specifically alleged otherwise, Doe was physically present in this District at all relevant times" and "Doe conspired with her attorneys to extort Mr. Carter from Alabama." Doc. 64, PageID 808 (citing Doc. 32 at ¶ 15). He then attempts to bootstrap onto these speculative and conclusory allegations in order to argue in his Opposition that Jane Doe was in Alabama during her conversations in which Buzbee suggested she claim Plaintiff raped her and lawyers at the firm told her if she pursued Plaintiff she would "get a payout." Doc. 64, PageID 808 (citing Exhibit 3 to the Second Amended Complaint, *Declaration of James Butler*, Doc. 32-3 at ¶8). Finally, he points to his allegation in his Second Amended Complaint that Doe gave the Buzbee Defendants permission to send the demand letter during a phone call that, upon information and belief, took place while Doe was in Alabama. Doc. 64, PageID 808 (citing Doc. 32 at ¶74).[4] Plaintiff asserts that these communications in which the Buzbee Defendants and Doe confected their plan to falsely accuse Carter constitute a substantial part of the events giving rise to the claims. Doc. 64, PageID 807-808. Alternatively, Plaintiff argues the Court should exercise pendent venue. Doc. 64, PageID 813.

In addressing the propriety of venue, the Court asks: (1) what acts or omissions by the Buzbee Defendants "gave rise" to Plaintiff's claims for malicious prosecution, abuse of process,

---

[4] Plaintiff also argues that Doe approved the original SDNY complaint against Sean Combs and Celebrity A in this venue. He does not cite to any allegation in the Second Amended Complaint or any evidentiary submission in support of this contention.

and conspiracy to maliciously prosecute Plaintiff and abuse process and (2) of those acts giving rise to the claims, did a "substantial part" of them take place in Alabama?  *See Jenkins Brick*, 321 F.3d at 1372.  The elements of a claim for malicious prosecution of a civil action under New York law[5] are: "(1) prosecution of a civil action against the plaintiff, (2) by or at the instance of the defendant, (3) without probable cause, (4) with malice, (5) which terminated in favor of the plaintiff, and (6) causing special injury."  *Teller v. Galak*, 162 A.D.3d 959, 960, 80 N.Y.S.3d 106 (2018) (N.Y. App. Div. 2018) (citation omitted).

Here, the underlying suit at the heart of Plaintiff's malicious prosecution claim was filed and litigated in the U.S. District Court for the Southern District of New York.  Plaintiff has not carried his prima facie burden of showing that a substantial part of the events or omissions giving rise to the claim occurred in this District.  *See Rubber Resources, Ltd. v. Press*, Civ. Act. No. 8:08-cr-1730, 2009 WL 211556, *2, 2009 U.S. Dist. LEXIS 5678 (M.D. Fla. Jan. 27, 2009) (holding that a Florida district court was an improper venue where the events giving rise to the malicious prosecution claim were the initiation of a lawsuit and subsequent summary judgment in favor of the plaintiff in Missouri, as a deposition taken in Florida did not give rise to the claim or constitute a substantial part of events); *see also Kapordelis v. Danzig*, 387 F. App'x 905, 906-907 (11th Cir. 2010) (plaintiff's arrest and detention in New York did not give rise to his claim the government

---

[5] The parties agree that Alabama's choice of law framework applies in this diversity action. Pursuant to Alabama's *lex loci delicti* approach to conflicts of law and the holding of *Ex parte U.S. Bank Nat. Ass'n*, 148 So. 3d 1060, 1070 (Ala. 2014), the law of the state where the antecedent suit was terminated in favor of the complaining party applies to malicious prosecution claims.  Here, the antecedent suit was litigated in the Southern District of New York, and the parties implicitly agree that New York law governs Plaintiff's malicious prosecution claim.  *See* Doc. 43, PageID 582; Doc. 44, PageID 637; Doc. 56, PageID 743; and Doc. 64, PageID 814 (all citing New York law).  Therefore, the Court will assume New York law applies.  *See Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012) ("If the parties litigate the case under the assumption that a certain law applies, we will assume that law applies.").

maliciously prosecuted and convicted him in Georgia or, without more, constitute a substantial part of the events underlying the claim "when viewed alongside everything else that happened" elsewhere).

Although Plaintiff argues that communications to fabricate the false claims against him were directed to Doe in this District, the allegations to support this argument are largely speculative and conclusory. To the extent the allegation about Doe's communication of her consent to send the demand letter is sufficiently well-pleaded, there is not a close enough nexus between this allegation and Plaintiff's malicious prosecution claim. Likewise, Plaintiff's allegations concerning advertising and trips to the District by the Buzbee Defendants or their agents do not have a sufficiently close nexus to support venue, as they took place after the original and amended complaints were filed in the SDNY action. Although the meeting in this District wherein Fortney allegedly manipulated Doe into voluntarily dismissing the SDNY action is certainly relevant to the Buzbee Defendants' assertion that the malicious prosecution claim fails because the dismissal was made pursuant to a settlement or compromise (*see* Doc. 43, PageID 599), that meeting did not directly *give rise* to the malicious prosecution claim.

Plaintiff's abuse of process claim faces an even greater venue hurdle. A claim for abuse of process under New York law requires: "(1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi,* 469 N.E.2d 1324, 1326 (N.Y. 1984).[6] "[T]he institution of a civil action by summons and complaint is not legally considered process capable of being abused." *Id.* "The gist of the action for abuse of process lies in the improper use

---

[6] The parties implicitly agree that New York law governs the issue of whether the Second Amended Complaint states a claim for abuse of process. *See* Doc. 43, PageID 607; Doc. 44, PageID 644; Doc. 56, PageID 745; and Doc. 64, PageID 834 (all applying New York law).

of process after it is issued." *Williams v. Williams*, 246 N.E.2d 333, 335 (N.Y. 1969) (citation omitted). An abuse of process claim requires "an unlawful interference with one's person or property under color of process in order that action for abuse of process may lie." *Id.* "Settlement attempts, however coercive or overbearing, do not alone directly involve the judicial process and thus cannot suffice to form the basis for an abuse of process claim." *Tsafatinos v. Ward*, 676 N.Y.S.2d 748, 753 (N.Y. Civ. Ct. 1998), *aff'd,* 691 N.Y.S.2d 820 (N.Y. Sup. App. Term 1999) (citation and internal quotations omitted).

Here, Plaintiff does not allege any abuse of process in this District. *See generally* Doc. 32. He does not identify any abuse of process in the Southern District of Alabama in his opposition. *See generally* Doc. 64. Rather, he argues that venue is proper as to all of his claims against the Buzbee Defendants under pendent venue because the conspiracy claim is properly venued in this District. Doc. 64, PageID 813. The Court observes that its sister courts in this circuit have generally applied pendent venue in cases where the properly-venued claim is federal. See *Evans v. Bearback, LLC,* Civ. Act. No. 5:20-cv-172, 2020 WL 8366982, *2 n. 6, 2020 U.S. Dist. LEXIS 249331 (N.D. Fla. Nov. 6, 2020) (stating that this appears to be the majority approach and observing that there are no Supreme Court or Eleventh Circuit cases on point); *Nissei ASB Co. v. R&D Tool & Eng'g Co.*, Civ. Act. No. 1:18-CV-553-TCB, 2018 WL 9961069, *4, 2018 U.S. Dist. LEXIS 230469 (N.D. Ga. Nov. 9, 2018) (collecting cases); and *Vulcan Mktg., Inc. v. United Furniture Indus. Bolivia, S.A.*, Civ. Act. No. 2:09-cv-571, 2010 WL 11566476, *5 n. 3, 2010 U.S. Dist. LEXIS 153182 (N.D. Ala. Feb. 1, 2010) ("More critically, the pendent venue doctrine applies only when a court's federal question jurisdiction is invoked; here, the plaintiff has invoked the court's diversity jurisdiction."). Even if the Court were inclined to apply pendent venue, Plaintiff fares no better in his efforts to show that his civil conspiracy claim is properly venued.

As an initial matter, civil conspiracy is not an independent cause of action. *Williams v. Williams*, 53 N.Y.S.3d 152, 153 (N.Y. App. Div. 2017). "To state a claim for civil conspiracy, a plaintiff must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 714 F. Supp. 3d 310, 339 (S.D.N.Y. 2024).[7] The " 'overt act' typically must be an affirmative act." *Ritchie Cap. Mgmt., L.L.C. v. Gen. Elec. Cap. Corp.,* 121 F. Supp. 3d 321, 339–40 (S.D.N.Y. 2015), *aff'd,* 821 F.3d 349 (2d Cir. 2016) (citations omitted); see also *Hoffman v. Halden,* 268 F.2d 280, 295 (9th Cir.1959), *overruled in part on other grounds, Cohen v. Norris,* 300 F.2d 24 (9th Cir.1962) ("[I]t is the overt act which moves the conspiracy from the area of thought and conversation into action and causes the civil injury and resulting damage.")

The Court does not lose sight of the fact that the primary torts allegedly committed by the Buzbee Defendants and to which the civil conspiracy claim is tethered are claims for malicious prosecution and abuse of process. The Court must determine whether Plaintiff has alleged that a substantial part of the events or omissions giving rise to the civil conspiracy to maliciously prosecute plaintiff and abuse judicial process occurred in the Southern District of Alabama. The Buzbee Defendants assert that plaintiff has failed to allege any overt acts in furtherance of the conspiracy by the Buzbee Defendants in this District. Doc. 43, PageID 586. Again, Plaintiff points to communications to and from Doe in this District to support his argument that a substantial part of events took place in this District. Doc. 64, PageID 829.

---

[7] The parties implicitly agree New York law governs the issue of whether Plaintiff's Second Amended Complaint states a claim for civil conspiracy. *See* Docs. 43, PageID 612-613; Doc 44, PageID 661; Doc. 56, PageID 746; and Doc. 64, PageID 838 (all citing New York law).

Bare allegations that "[u]pon information and belief, and unless specifically alleged otherwise, Doe was physically present in this District," "Doe conspired with her attorneys to extort Mr. Carter, from Alabama," and "[i]n furtherance of the conspiracy, Doe met with her attorneys in Alabama, communicated with them about the matters at issue from Alabama, kept in contact with them while she was in Alabama, and conspired with them to extort Mr. Carter in and from Alabama" do not satisfy Plaintiff's prima facia burden to show that venue is proper. Doc. 32 at ¶15. Beyond the allegation that, "upon information and belief" Doe gave the okay to send the demand letter while she was in Alabama (Doc. 32 at ¶74), Plaintiff does not allege *facts* in his Second Amended Complaint to support his assertion that communications constituting overt acts in furtherance of the conspiracy took place in this District.

Again, the trips to Alabama by Fortney and the other Buzbee Law Firm associate took place after the original and amended SDNY complaints had already been filed and the demand letter had been sent. The allegation that Fortney visited Alabama to mislead Doe and induce her to voluntarily dismiss the SDNY action cannot reasonably be described as an overt act to further advance the alleged conspiracy to maliciously prosecute Plaintiff, but to the extent that it could, it would not lead the Court to conclude that a substantial part of the events giving rise to the civil conspiracy claim took place in this District. Finally, Plaintiff does not allege any facts concerning overt acts in furtherance of a conspiracy to abuse court-issued process in this District. Plaintiff has not made a prima facie showing that "a substantial part" of the events giving rise to the civil conspiracy claim occurred in the Southern District of Alabama. *See* 28 U.S.C. § 1391(b)(2). For this reason, pendent venue is not warranted.

### 3. Dismissal or Transfer

Because venue is improper in the Southern District of Alabama, the case must be dismissed

or transferred under 28 U.S.C. § 1406(a), which provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." The decision whether to transfer a case "is left to the sound discretion of the district court." *Pinson v. Rumsfeld*, 192 F. App'x 811, 817 (11th Cir. 2006). The Buzbee Defendants acknowledge that transfer under §1406(a) is an alternative to dismissal and that the Southern District of New York is a proper venue. Doc. 71, PageID 1160. Based upon the allegations, all defendants would presumably be subject to that court's jurisdiction as the Curis Defendants are citizens and Doe availed herself to the jurisdiction with the SDNY action.

Even if the Court were to dismiss the case without prejudice, Plaintiff's attempt to refile in a proper venue may be time-barred.[8] This would be an unduly harsh result. "If by reason of the uncertainties of proper venue a mistake is made, Congress, by the enactment of s 1406(a), recognized that 'the interest of justice' may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962).

Although Doe is a citizen and resident of the Southern District of Alabama, severance and transfer of the claims against the Buzbee and Curis Defendants would not be in the interest of justice or judicial economy. Plaintiff would be required to litigate the same issues in two separate

---

[8] Under New York law, the tort of malicious prosecution is subject to a one-year statute of limitations that begins to run upon favorable termination of the underlying suit. *Sage v. Neil H. Greenberg & Assocs., P.C.*, 196 N.Y.S.3d 775, 778 (N.Y. App. Div. 2023). While the Court does not reach the issue of whether the voluntary dismissal of the SDNY suit was a termination in favor of Plaintiff as required to state a claim for malicious prosecution, the Court observes that the notice of voluntary dismissal was filed on February 14, 2025. Plaintiff's abuse of process claim is also governed by a one-year statute of limitations. *Busiello v. Whelan*, 240 N.Y.S.3d 409, 412 (N.Y. App. Div. 2025).

courts, and the claims and conduct alleged are too intertwined.  The allegations should be taken together as a whole and not piecemeal.  Therefore, transfer of the entire action is appropriate for both the interests of justice <u>and</u> for judicial economy.  The Court finds that this case could have originally been brought in the United States District Court for the Southern District of New York and it is in the interest of justice this case should be transferred there pursuant to §1406(a).

**B.    Curis Defendants**

The Court need not perform a full analysis of the Curis Defendants' motion to dismiss pursuant to Rules 12(b)(2)-(3) since the case is being transferred to the Southern District of New York because it could transfer this action even without personal jurisdiction as to the defendants. "The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not."  *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962).  Based upon the allegations and the citizenship of the Curis Defendants, it seems clear that the transfer would resolve any deficiencies in personal jurisdiction and venue as to those defendants as well.  Therefore, the Curis Defendants' motions to dismiss as they relate to Rule 12(b)(2)-(3) are denied as moot.

**C.    Remaining motions**

All Defendants filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  *See* Doc 43 at PageID 590-618; Doc. 44; Doc. 56 at PageID 743-47.  Also pending are the two motions to proceed using a pseudonym for the Jane Doe defendant.  *See* Docs. 2, 80. These motions are held in abeyance and left for resolution by the transferee court.  This is especially appropriate given that New York law appears to govern this case.

## V.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** this case is **TRANSFERRED** to the United States District Court for the Southern District of New York under 28 U.S.C. § 1406(a). The Buzbee Defendants' motion to dismiss pursuant to Rules 12(b)(2)-(3) (Doc. 43) is **DENIED in part** and the Curis Defendants' motion to dismiss pursuant to Rules 12(b)(2)-(3) (Doc. 56) is **DENIED in part as moot**.  The motions to dismiss pursuant to Rule 12(b)(6) (Docs. 43, 44, 56) and the motions to proceed using a pseudonym (Docs. 2, 80) **REMAIN PENDING** for resolution by the transferee court.

The Clerk of Court is **DIRECTED** to effectuate the transfer of this case to the Southern District of New York as noted above.

**DONE** and **ORDERED** this 31st day of March 2026.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE